

FILED
6/3/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MAN

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SZYMON ZAWADZKI,<br>    Plaintiff,<br><br>v.<br><br>SWEEPSTEAKS LIMITED d/b/a<br>STAKE.US;<br>MEDIUM RARE N.V. d/b/a STAKE.COM;<br>KICK STREAMING PTY LTD d/b/a<br>KICK.COM;<br>and EASYGO GROUP HOLDINGS PTY<br>LTD,<br>    Defendants. | Case No. 1:26-cv-04478<br><br>Hon. Franklin U. Valderrama<br><br>Mag. Judge M. David Weisman<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S TIMELINE-AUDITED CONSOLIDATED VERIFIED FIRST AMENDED COMPLAINT**

(Civil Conspiracy, Computer Tampering, Knowing Inducement, Arbitration-as-Isolation-Trap, AAA Procedural Fraud, Calhoun-Supervised Interim Award Procurement, Tip-Feature Laundering, and Predatory Counsel Conduct)

**JURY TRIAL DEMANDED**

### I. PRELIMINARY STATEMENT

1. Plaintiff Szymon Zawadzki brings this action against Defendants Sweepsteaks Limited d/b/a Stake.us, Medium Rare N.V. d/b/a Stake.com, Kick Streaming Pty Ltd d/b/a Kick.com, and Easygo Group Holdings Pty Ltd for damages arising from a coordinated multi-year campaign of (i) predatory gambling inducement directed at a disclosed and documented addict, (ii) targeted electronic intrusion and tampering of Plaintiff's computing infrastructure synchronized with Plaintiff's procedural activity, (iii) operational facilitation of a makeshift KYC-bypass and credential-laundering pipeline producing the 'DentedOne' Stake.com account, (iv) civil conspiracy among the four named Defendants and their affiliated personnel, (v) Stake.com Tip-feature laundering and value-distribution mechanics paralleling the predicate facts in Ridley v. Sweepsteaks Limited et al., No. 1:25-cv-02511 (E.D. Va. filed 2025), (vi) weaponization of a confidential arbitration proceeding as an isolation mechanism designed to suppress, defer, or extinguish the very documentary evidence that this action now compiles, and (vii) institutional ratification of that suppression by the American Arbitration Association through documented procedural fraud.

2. This Verified First Amended Complaint integrates new documentary findings developed during 2025–2026, including (a) the May 23, 2024 native-format Telegram .json and .html export of Plaintiff's communications with Stake-affiliated manager Wasim Khan, transmitted to Plaintiff's former counsel Wade Kilpela Slade LLP within seventy-two hours of intake

(Section D.1 below); (b) cryptographically authenticated DKIM-signed email and metadata evidence from Stake.com Intercom Conversation 86106 preserved as native PDF and .eml exports; (c) Easygo's corporate-Workspace-attributed Trevor.io business intelligence dashboard documenting affiliate 'Ankit0692' cross-campaign wager-volume of approximately $1.2 million across at least 62 distinct user accounts within a single 24-day window; (d) preserved Discord direct-message evidence from the Kick.com streamer 'Jay' documenting Jay's contemporaneous September 29, 2024 written acknowledgment of Plaintiff's $320,000 loss; (e) preserved Telegram-side documentary evidence of Stake VIP Host 'Jovan VIP' inducement mechanics targeting the DentedOne account, including a Diamond I VIP-level $12,800 bonus, $1,280 supplemental bonus, $7.29 reload session every ten minutes, and a documented 'all-time-low' cashback gating mechanism; (f) preserved DentedOne crypto deposit and withdrawal ledgers exceeding $3,181,544.87 in lifetime wager volume; (g) sandbox-verified malware-behavior reports mapping to MITRE ATT&CK techniques T1055, T1071, and T1573 with AutoIt3 directory access and thirteen TLS JA3 digests; and (h) preserved verbatim email correspondence with Defendants' counsel Ifrah PLLC, the American Arbitration Association, and Plaintiff's former counsel Wade Kilpela Slade LLP.

3. Plaintiff respectfully submits that the documentary convergence detailed below — anchored at every operational node by cryptographically authenticated third-party-held records and by preserved Gmail message identifiers — transforms the present action from a set of parallel-but-related claims into a unified civil-conspiracy claim under Count VII and triggers the immediate need for (i) expedited third-party preservation discovery under Federal Rule of Civil Procedure 26(d)(1), (ii) the temporary restraining order and preliminary injunctive relief sought in the contemporaneously filed Rule 65 motion, and (iii) preservation of all five vacatur grounds reserved for the August 10, 2026 Federal Arbitration Act § 12 motion to vacate.

## II. PARTIES

4. Plaintiff SZYMON ZAWADZKI is a natural person, a citizen of the United States, and a resident of Buffalo Grove, Cook County, Illinois. Plaintiff appears in this action pro se after the withdrawal of his prior counsel Wade Kilpela Slade LLP on March 21, 2025.

5. Defendant SWEEPSTEAKS LIMITED, doing business as Stake.us, is a corporate entity organized under the laws of Cyprus with its principal place of business at 1 Cosmou Komninou Street, 1st Floor, 6010 Larnaca, Cyprus.

6. Defendant MEDIUM RARE N.V., doing business as Stake.com, is a corporate entity organized under the laws of Curaçao with its principal place of business at Heelsumstraat 51, E-Commerce Park, Curaçao.

7. Defendant KICK STREAMING PTY LTD, doing business as Kick.com, is a corporate entity organized under the laws of Australia with its principal place of business in Melbourne, Victoria, Australia.

8. Defendant EASYGO GROUP HOLDINGS PTY LTD is a corporate entity organized under the laws of Australia with its principal place of business in Melbourne, Victoria, Australia.

### III. JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) and under 28 U.S.C. § 1331. Supplemental jurisdiction over state-law claims is proper under 28 U.S.C. § 1367.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

### IV. FACTUAL ALLEGATIONS

**A. Onboarding to Stake (2022): The Affiliate Code 'Dented' and the Manager 'Wasim.'**

11. Plaintiff is a live-streaming content creator whose primary social-media accounts include twitch.tv/the_dent, twitter.com/simonzawa, kick.com/simonz, and tiktok.com/@simonzawa. In or around August 2022, Plaintiff was recruited by Wasim Khan, a high-ranking Stake Affiliate Manager (Telegram user ID 1436378896), who represented to Plaintiff that Plaintiff would be assigned Stake referral code 'Dented' for use across both Stake.us and Stake.com platforms, that compensation would be paid in 'Stake Cash' (SC) redeemable for cryptocurrency, and that Plaintiff would be expected to live-stream gambling sessions on Kick, Twitch, YouTube, and TikTok for at least two hours per day.

12. Before agreeing to the recruitment, Plaintiff specifically inquired of Wasim whether there were any legality issues, terms-of-service clauses, or potential concerns associated with the Stake.us platform. Wasim represented to Plaintiff that there were none.

13. Plaintiff has preserved the complete native-format Telegram message history of his communications with Wasim, consisting of a JSON file (result.json, 402,704 bytes) and an HTML rendered viewer (messages.html, 500,292 bytes), preserved as Google Drive file 1LjHuxxwW9A8K_GbOvdOy8N7HinmeT2fg (.json) and 1COtDCbTOUjxDzqvJ4l6vOJTZZD3xcCP8 (.html) and in additional locations of forensic-redundant retention. The export contains 970 messages spanning sequential per-chat message IDs 316 through 2537 over the period July 13, 2022 02:54 UTC through April 14, 2024 19:22 UTC.

**A.1. The August 16, 2022 Stake Compliance Team KYC-Evasion Sequence: Stake.com Compliance Coordinates Use of Non-U.S. Jurisdiction for a Known U.S.-Resident Streamer.**

13A.   The preserved Wasim Telegram archive contains a discrete contemporaneous documented sequence in which Stake.com's compliance team, operating through affiliate manager Wasim Khan, affirmatively coordinated the use of a non-United-States jurisdiction to clear Stake.com Level 2/3 Know-Your-Customer verification for Plaintiff, a known United States-resident streamer:

**Wasim Khan to Plaintiff (Telegram Message ID M-748)  (August 16, 2022, 20:32 UTC):**

> "Okay one last thing, the Stake compliance team has asked if you'd be able to do Level 2/3 KYC from a non restricted jurisdiction for Stake.com?"

**Plaintiff to Wasim Khan (Telegram Message ID M-751)  (August 16, 2022, 20:34 UTC):**

> "I have a registered property under my last name in Poland, would that work under kyc?"

**Wasim Khan to Plaintiff (Telegram Message ID M-1105)  (August 23, 2022, 01:46 UTC):**

> "SWeet, so you would be able to complete Level 2/3 KYC as well?"

13B.   The August 16, 2022 sequence establishes, on contemporaneous documentary record: (i) that Stake.com's compliance team regarded the United States as a restricted jurisdiction for Stake.com KYC purposes during the operative period; (ii) that Stake.com's compliance team affirmatively coordinated, through its affiliate manager Wasim Khan, the use of a non-U.S. jurisdiction (Poland) to clear Level 2/3 KYC on Stake.com for a known U.S.-resident streamer; and (iii) that Wasim Khan functioned as the operational channel through which Stake.com compliance personnel communicated with Plaintiff about geographic-restriction-evasion arrangements on the Stake.com platform. The August 16, 2022 KYC-evasion sequence is the first overt act in furtherance of the civil conspiracy pleaded at Count VII below.

**B. The December 23, 2023 Self-Exclusion Request and the 26-Day Abandonment.**

14. On December 23, 2023 at 10:39 UTC (Telegram Message ID M-2141), Plaintiff sent Wasim Khan via Telegram the verbatim message memorializing Plaintiff's gambling addiction and Plaintiff's request for help:

**Plaintiff to Wasim Khan (Telegram Message ID M-2141)  (December 23, 2023, 10:39 UTC):**

> "I don't even know where to begin, man. My life has taken a dark turn, and I've hit rock bottom. … To cope with the stress, I turned to gambling, thinking it would be a harmless escape. But I was so fucking wrong, I would play on my stake.com account / my stake.us account and 2 friends accounts on stake.us (under my code) that they didn't use anymore. … Over 200k I gambled and lost over the past 2 months. … Can you offer any type loss back or help in any way?"

15. Wasim responded that he was on 'vacations' and would return 'tomorrow.' Wasim did not in fact reply for twenty-six (26) days. During that abandonment window, Plaintiff wired an additional approximately $70,000 from his personal bank account and remaining cryptocurrency, all lost on Defendants' platforms.

**B.1. The January 10, 2024 Financial-Desperation Disclosure and the January 18, 2024 Stake.us Suspension.**

15A.   On January 10, 2024 at 01:59 UTC (Telegram Message ID M-2152), Plaintiff sent Wasim a further documentary disclosure of financial collapse:

**Plaintiff to Wasim Khan (Telegram Message ID M-2152)  (January 10, 2024, 01:59 UTC):**

> "Right now, I'm facing the toughest time in my life, both financially and mentally. … As a result, I find myself with only $900 left to my name, a disgusting difference from the $260k I had just a few months ago, all of which I gambled away."

15B.   On January 18, 2024 at 01:17 UTC (Telegram Message ID M-2155), Wasim transmitted to Plaintiff via Wasim's personal Telegram account the verbatim Stake.us 'Dear Simon' suspension letter:

**Wasim Khan transmitting Stake.us suspension letter (Telegram Message ID M-2155) (January 18, 2024, 01:17 UTC):**

> "Dear Simon, At Stake.us, we take responsible social gameplay very seriously, and we are committed to ensuring the well-being of our customers. We have therefore made the decision to suspend your account indefinitely, given your recent statements and keeping your welfare and best interests in mind."

15C.  The January 18, 2024 suspension letter is dispositive on the responsible-gaming knowledge prong: Sweepsteaks Limited has separately admitted in supervised arbitral discovery (Response to Interrogatory 3, signed by George R. Calhoun and Steven P. Hess on November 13, 2025) that the Stake.us account suspension was imposed 'to ensure his health and safety' and that Sweepsteaks 'also provided Claimant with counseling resources.' By Sweepsteaks's own subsequent admission, Defendants understood as of January 18, 2024 that Plaintiff was a disclosed gambling addict requiring responsible-gaming intervention. The Telegram archive further documents that on April 14, 2024 at 10:07 UTC (Telegram Message ID M-2525), Plaintiff again requested loss-back relief and Wasim's final preserved message to Plaintiff (Telegram Message ID M-2537, April 14, 2024 19:22 UTC) was the terminal brush-off: 'Hey mate, unfortunately I cannot be of assistance here and would be best to reach out to the Stake support email.'

16. On or about January 18, 2024, Stake.us implemented the indefinite suspension of Plaintiff's primary Stake.us account pleaded at Paragraph 15B above.

17. By Sweepsteaks's own subsequent admission, Defendants understood as of January 18, 2024 that Plaintiff was a disclosed gambling addict requiring responsible-gaming intervention.

## C. Plaintiff's February 2024 Suicide Attempt and March 2024 Disclosure to Edelson PC.

18. In or around February 2024, Plaintiff attempted suicide. Plaintiff's self-disclosure of this attempt and his identification of Defendants' Stake.us / Stake.com platform conduct as the proximate cause first appears in the documentary record on February 28, 2024 in an email Plaintiff sent to himself memorializing his claim that Defendants' 'negligence pushed me to the brink of suicide and led me to resort to drug use.'

19. On March 5–6, 2024, Plaintiff reached out to the law firm Edelson PC seeking representation. On March 6, 2024, Plaintiff sent to Edelson PC intake specialist Adrienne Graham a comprehensive disclosure email confirming the February 2024 suicide attempt; the December 23, 2023 self-exclusion request; the $70,000 abandonment-window loss; preservation of the Wasim Telegram Evidence in native format 'in original JSON, HTML, PNG, and screenshot formats in which all the metadata is completely Original and un-altered'; and Plaintiff's identification of Stake.com co-owner Edward Craven's Kick.com streams as the inducement-channel back-link.

20. The March 6, 2024 email to Edelson PC therefore documents in Plaintiff's own pen the February 2024 suicide attempt; the self-exclusion request; the $70,000 abandonment-window loss; preservation of the Wasim Telegram Evidence in native format; and identification of the Stake.com / Stake.us / Kick / Easygo operational linkage.

**D. The May 14–21, 2024 Wade Kilpela Slade LLP Intake Sequence.**

21. On May 14, 2024 at 19:44 UTC (Gmail message identifier 18f78a27171fce8c), attorney David F. Slade emailed Plaintiff verbatim: 'My name is David Slade and I'm a colleague of David Mindell's. We've been working together on bringing online gambling arbitrations in Kentucky, and he'd asked if […]' Mr. Slade was operating from email address slade@wh.law of WH Law and was simultaneously affiliated with the then-forming firm Wade Kilpela Slade LLP at slade@waykayslay.com. The May 14, 2024 outreach originated from David Mindell of Edelson PC's referral of Plaintiff's claims to Mr. Slade.

22. On May 20, 2024 at 18:40–18:41 UTC (Gmail message identifiers 18f974e4c5a4e242 and 18f974edb840eded), Mr. Slade circulated two Zoom invitations for an intake call. The Zoom call occurred on May 21, 2024. At 22:18 UTC on May 21, 2024 (Gmail message identifier 18f9d3bdfd254f7b), Mr. Slade introduced Plaintiff to his partners Ed Kilpela, Kristy Graham, and James LaMarca verbatim: 'Team, I'd like to introduce you to Szymon, who has an unlicensed gambling claim against the online sports/gambling platform Stake.' At 22:29 UTC (Gmail message identifier 18f9d46a78e0e876), Mr. Slade transmitted to the team the verbatim back-link to Plaintiff's pre-existing Edelson PC disclosure record: 'And I'll spare Szymon the trouble of having to recount everything again, as he just sent me the attached emails, which he'd sent to Edelson (and which prompted them to reach out to us).'

**D.1. The May 23, 2024 Wasim Telegram .json Upload: Wade Kilpela Slade LLP's Day-3 Knowledge of Plaintiff's Documented Gambling Addiction, the December 23, 2023 Self-Exclusion Plea, the Twenty-Six-Day Abandonment, the $260,000-to-$900 Financial Collapse, and the Stake.com Compliance Team's August 2022 KYC-Evasion Arrangement.**

22A. On May 22, 2024 at 15:27 UTC (Gmail message identifier 18fa0ea161fefc75) — Day Two of Wade Kilpela Slade LLP's representation — Plaintiff transmitted directly to all four named WKS partners (Slade, Kilpela, Graham, LaMarca) the verbatim vulnerability disclosure: 'Grateful to finally start working on this case and kick off the process. I've been running out of options, both mentally and financially, and as time passes, the situation only seems to become more challenging. Please let me know the day and time, and I'll be there. If there's anything you need from me in the meantime, just let me know.'

22B. On May 23, 2024 at 14:17 UTC (Gmail message identifier 18fa5d05a3cfe3fe) — Day Three of Wade Kilpela Slade LLP's representation — Plaintiff transmitted to James M. LaMarca, with Edwin Kilpela, Kristy Graham, David Slade (waykayslay.com), and David F. Slade (wh.law) carbon-copied, the verbatim Wasim Telegram .json archive cover communication, with two attachments authenticated by their preserved Gmail attachment-identifier strings:

**Plaintiff to Wade Kilpela Slade LLP partners (Gmail attachments: messages.html text/html + result.json application/json) (May 23, 2024, 14:17 UTC email):**

> "Sounds good to me, also below I attached the full original exported 'JSON / HTML files' of my Telegram messages (straight from Telegram) with my Stake manager. These have been used in court before and are admissible. Where he clearly points out that these places offer real money gambling."

22C.   The May 23, 2024 attachments transmitted to Wade Kilpela Slade LLP — result.json (application/json) and messages.html (text/html) — were the same native-format Telegram exports pleaded at Paragraph 13 above. By Day Three of representation, Wade Kilpela Slade LLP therefore had cryptographic, structural, and contemporaneous documentary access to all 970 preserved Wasim Khan messages spanning July 13, 2022 through April 14, 2024, including without limitation the message-content of Telegram Message ID M-2141 (December 23, 2023 self-exclusion plea), Telegram Message ID M-2152 (January 10, 2024 $260k-to-$900 financial-collapse disclosure), Telegram Message ID M-2155 (January 18, 2024 Stake.us 'welfare and best interests' suspension letter transmitted via Wasim's personal Telegram), Telegram Message ID M-2525 (April 14, 2024 renewed loss-back plea), Telegram Message ID M-2537 (April 14, 2024 Wasim terminal 'cannot be of assistance' brush-off), and Telegram Message IDs M-748, M-751, M-1105, M-1136 (August 16–25, 2022 Stake.com compliance-team KYC-evasion arrangement).

22D.   On May 28, 2024 (Gmail message identifier 18fc0e469b56514f), James LaMarca held a phone call with Plaintiff and emailed Plaintiff requesting verbatim: 'Your home county; The total of your losses across your game accounts; and Specific dates in which you lost more than $50 (this does not need to be exhaustive, just 3-5 I can specifically list with the amount lost).' On May 29, 2024 at 11:52 UTC (Gmail message identifier 18fc4318eb9d5039), Plaintiff responded with the verbatim aggregate loss figure: 'Total amount lost since December 2023 — $298,854. (This doesn't account for all the money I lost, which they paid me to gamble with from 08/22 to 04/23 while I was streaming content for them. Which would amount to an additional -157,000 lost, totaling $455,854 net loss).'

22E.   By no later than May 29, 2024 — Day Nine of Wade Kilpela Slade LLP's representation — Wade Kilpela Slade LLP therefore had actual written documentary knowledge of: (i) Plaintiff's aggregate net loss of $455,854 on Defendants' platforms; (ii) the December 23, 2023 self-exclusion plea preserved at Telegram Message ID M-2141; (iii) the twenty-six-day abandonment window and the resulting $70,000 additional loss; (iv) the January 10, 2024 financial-collapse disclosure preserved at Telegram Message ID M-2152; (v) the January 18, 2024 Stake.us suspension imposed 'for the welfare and best interests' of Plaintiff and transmitted by Wasim Khan's personal Telegram preserved at Telegram Message ID M-2155; (vi) the August 16, 2022 Stake.com compliance-team Polish-jurisdiction KYC-evasion arrangement preserved at Telegram Message IDs M-748, M-751, and M-1105; and (vii) the operational linkage among Defendants Sweepsteaks Limited, Medium Rare N.V., Kick Streaming Pty Ltd, and Easygo Group Holdings Pty Ltd.

22F.   Wade Kilpela Slade LLP's Day-3 actual knowledge of Plaintiff's documented gambling addiction, of the December 23, 2023 self-exclusion plea, of the twenty-six-day abandonment, of the $260,000-to-$900 financial-collapse disclosure, of Wasim Khan's January 18, 2024 'welfare and best interests' transmission of the Stake.us suspension letter, and of the Stake.com compliance-team KYC-evasion arrangement is the predicate-knowledge anchor for the predatory-counsel-conduct allegations pleaded at Section J below and for the civil-conspiracy theory pleaded at Count VII below. By Day Nine of representation, Wade Kilpela Slade LLP knew or should have known that Plaintiff was a documented gambling addict in active crisis whose claims warranted urgent merits prosecution, immediate responsible-gaming-services coordination, and conservative procedural posture. Wade Kilpela Slade

LLP's subsequent conduct, pleaded at Sections J, K, L, and M below, instead subordinated Plaintiff's mental-health and safety needs to a settlement-maximization strategy designed to capitalize on Plaintiff's continuing addiction-driven gambling activity and to use Plaintiff's addiction-driven cognitive constraints as a DARVO-as-delay-tactic operational mechanism through which adverse settlement-negotiation terms could be imposed on a client whom counsel had assessed, on the basis of Day-3 documentary knowledge, as unlikely to surface the truth or contest the imposed terms.

### E. The DentedOne Account: Makeshift KYC-Bypass Pipeline (May 2024).

23. On or about May 5–8, 2024, after Plaintiff's primary Stake.us account had been suspended, Plaintiff was solicited by the Kick.com streamer 'Jay' (Stake referral code 'ufos') and Jay's affiliated 'Affiliate Manager' Richie to create a new Stake.com account through an extra-regulatory pipeline operated by Telegram-side intermediary 'Sonyvaio.' Sonyvaio created the Stake.com account 'DentedOne' and delivered to Plaintiff credentials including dentedone3@gmail.com.

24. Plaintiff has preserved the contemporaneous Telegram exchange with Sonyvaio (Drive file 1Xojf9k9vv9fsM_oId2VijHM9qqy2LPs0):

**Plaintiff to Sonyvaio via Telegram  (May 5, 2024, 22:39 UTC):**

"Yo, Richie sent me for a .com account under ufos"

**Sonyvaio to Plaintiff  (May 6, 2024, 02:14 UTC):**

"Give me 2-3 usernames u want. Will get it setup. Might take some time tho.. stake has been really slow verifying accounts"

**Sonyvaio to Plaintiff (evidence-suppression instruction)  (May 6, 2024, 02:39 UTC):**

"ok will msg u once ready.. dont delete this convo.. i wont be able to find u if u do"

**Sonyvaio to Plaintiff (Stake.com credentials delivery)  (May 8, 2024):**

"Stake username: DentedOne / Stake password: DentedOne55"

25. Sonyvaio's May 6, 2024 instruction — 'dont delete this convo.. i wont be able to find u if u do' — establishes the deliberateness of the off-channel pipeline architecture and supports the inference that the DentedOne account-creation pipeline operated outside Stake.com's normal KYC and AML procedural infrastructure.

26. Stake-affiliated Discord moderator Richie's publicly visible 'create a Stake account' offer is documented in the 'Jay's Alien Crew' Discord server, including Richie's October 1, 2024 statement: 'ATTENTION: Regarding the Email sent out today, you have 90 days to KYC level 2 on your Stake.com account. Stake is turning into KYC only Jan 1st, 2025. If you need help making a Stake account, Please open a #) create-a-ticket and I can help you out!'

26A.   The May 5–8, 2024 DentedOne account-creation sequence is the second overt act in furtherance of the civil conspiracy pleaded at Count VII below, on the chronology established at Section A.1 above.

**F. Intercom Conversation 86106 (December 2024 – January 2025): Four-Agent Recovery, 'Nari NEGI' Alias, Kraken-Ledger KYC Laundering.**

27. On or about December 19, 2024, Plaintiff identified that the DentedOne Account had been compromised. The preserved Discord exchange records Plaintiff's response to Jay on December 19, 2024 at 4:33 PM: 'well, reach out to Richie and get it situated for me... considering you guys are the ones making these accounts for players. Got 1k reloads on there getting wasted on top of my own money I can't withdraw. Not gonna let that fly.'

28. Intercom Conversation 86106 — the unique Stake.com support-ticket thread operated through Stake.com's Intercom application identifier gzw2ro6m via SparkPost MTA infrastructure on subnet 192.174.84.0/24 — spans approximately fifteen days and contains fifteen distinct message exchanges with at least three distinct Stake.com Account Recovery agents identified by their email-header signatures.

29. Stefan from Account Recovery (recovery@stake.com), December 19, 2024 at 11:37 AM Central Standard Time, message identifier afa9b034-b66b7e86-1734629858-86106-2157138@outbound.intercom.stake.com, transmitted from SparkPost MTA IP 192.174.84.114, SPF: PASS, DKIM: PASS with domain stake.com (selector intercom), DMARC: PASS with policy p=REJECT. Native PDF export preserved as Drive file 1r_cgWiSJ6HYjKANLfaL883D7s9CTfSuT.

30. Dusan from Account Recovery, January 3, 2025 at 2:43 PM Central Standard Time, message identifier d40c095b-10adad6b-1735936989-86106-2157138@outbound.intercom.stake.com. Dusan's verbatim two-factor-authentication and password-reset instruction: 'In order to fully reinstate access to your account, we kindly request that you log in and activate two-factor authentication, as well as update your password. After completing the aforementioned steps, kindly notify us and we will proceed to unlock your account.'

31. Twenty-five minutes after Dusan's instruction, an outbound message from dentedone3@gmail.com to recovery@stake.com (message identifier CAOs8sp2-J+AbrAWx9vzue0tei39sY7UKQFdO2_fB4Mi0FDxeKw@mail.gmail.com, sent January 3, 2025 at 3:08 PM Central Standard Time) responded: 'Aforementioned steps completed, password updated / 2fa enabled. Thanks, again.' The 'From' header was configured as 'Nari NEGI <dentedone3@gmail.com>.' Plaintiff is not now and has never been named 'Nari NEGI.' The configured From-header identity is preserved as Drive file 10vUw9PTTLu_Sj108n_SyGG-zi3Vft8tL.

32. MilanR from Account Recovery, January 3, 2025 at 6:24 PM Eastern Standard Time, message identifier 2628efa1-20f284de-1735950277-86106-2157138@outbound.intercom.stake.com, transmitted from SparkPost MTA IP 192.174.84.143. MilanR's reactivation confirmation: 'the restrictions have been removed and that you may again use your account as you usually would.' Native PDF export preserved as Drive file 1AqB_aY0t_wKmCT6Fe6Acpo_Ned8f9pe_.

33. The preserved Discord exchange records Jay's statement to Plaintiff within hours of MilanR's reactivation confirmation: 'yep, just cleared all the confusion, they reactivated the account in full today finally (edited) took a while, but Sony came through.'

34. During the reactivation sequence, Sonyvaio submitted to Stake, through Intercom Conversation 86106, Plaintiff's Kraken Exchange account ledger as KYC verification.

Kraken (Payward Inc.) is a regulated United States cryptocurrency exchange whose customer records for Plaintiff's account contain Plaintiff's real-name identity verification documents.

35. By accepting Plaintiff's Kraken-source ledger records as KYC verification for the DentedOne Account on or about January 3, 2025, Stake operationally and documentarily acquired knowledge that the DentedOne Account was beneficially owned by Plaintiff Szymon Zawadzki — the same natural person whose Stake.us primary account had been suspended on January 18, 2024 'to ensure his health and safety.'

**F.1. Cryptographic Authentication of Intercom Conversation 86106 and the Fourth Stake Account Recovery Agent.**

35A.    All three Stake-side Intercom 86106 messages from Stefan, Dusan, and MilanR were transmitted under stake.com DKIM signatures with selector 'intercom,' over SparkPost MTA infrastructure in the 192.174.84.0/24 subnet, with full SPF, DKIM, and DMARC PASS results enforced under a published DMARC policy of p=REJECT. The cryptographic authentication chain demonstrates that the three Account Recovery messages were authentically originated from stake.com's authorized email infrastructure and were not third-party impersonations. Native PDFs preserved at Drive files 1r_cgWiSJ6HYjKANLfaL883D7s9CTfSuT, 10vUw9PTTLu_Sj108n_SyGG-zi3Vft8tL, and 1AqB_aY0t_wKmCT6Fe6Acpo_Ned8f9pe_, and native .eml RFC 822 source exports at 1GEciKSZOVxQS0CDaPVYQz6SOvevyvwPE and 1UgEHQCK2LFqsME00kHjoPUKhYF-zrSsz, are admissible under Federal Rules of Evidence 901(b)(9), 902(13), and 902(14).

35B.    The dentedone3@gmail.com Google Contacts list, preserved as Drive file 1a3Uz80qXbZmUoUaCHHm1Dl38MHKjUnSl, reveals a fourth Stake Account Recovery agent whose contact information was stored on the DentedOne account: 'andrijaa@stakecom.intercom-mail.com,' identified as 'Stake Operator from Account recovery' with secondary email recovery@stake.com. Plaintiff therefore alleges that the DentedOne account interacted with at least four named Stake Account Recovery agents — Stefan, Dusan, MilanR, and Andrija — during and following the December 2024 – January 2025 recovery sequence.

35C.    Defendant Medium Rare N.V. (Stake.com) cannot, in subsequent merits proceedings, disclaim the Intercom 86106 reactivation sequence as the unauthorized action of any single agent: the DKIM-signed message chain attaches institutional authentication to all four Stake-side agents identified above. Stake.com is institutionally bound to the substance of the three reactivation messages and to the conditions of the reactivation — including acceptance of the Kraken-source KYC ledger that contained Plaintiff's real-name identity.

**G. Easygo's Trevor.io Business Intelligence Dashboard.**

36. On November 15, 2024, m.akshaya@easygo.io — operating from the corporate Google Workspace tenant of Defendant Easygo Group Holdings Pty Ltd — shared with Plaintiff's dentedone3@gmail.com account a Google Sheets document titled 'ankit0692 Affiliate (Stake.com) | Wager Race Statistics | Auto Update Current & Past Month.' Drive file metadata confirms 'Owned by Easygo' corporate Workspace tenant attribution.

37. The document pulls business-intelligence data from Easygo's internal Trevor.io workspace under share-token 75d879ea-985e-4fd1-8d01-1f6c845192f8 disclosing nine simultaneous campaign codes for affiliate 'Ankit0692' with aggregate Stake.com wager volume of approximately $1.2 million across at least sixty-two distinct user accounts during a single twenty-four-day window (May 1–25, 2026). The single highest individual wagerer on Ankit0692's active roster during that window, user 'xBonBonxx,' generated $611,721.39 in Stake.com wager volume across that twenty-four-day window alone. Preserved as Drive file 1K0uit7cKalt2h8YJNPMDOlveO5UoPlfN.

38. The Easygo BI Dashboard establishes (a) that Stake.com's wager-volume data is technically and operationally accessible to Easygo Group Holdings in real time; (b) that the four named Defendants share back-end business-intelligence infrastructure; and (c) that the same affiliate-tracking apparatus that disclosed Ankit0692's aggregate wager-volume to Plaintiff could and did disclose Plaintiff's own DentedOne wager-volume to Stake VIP Host personnel under the inducement-mechanics pleaded at Section G.1 below.

**G.1. Stake VIP Host 'Jovan VIP' Inducement Mechanics Targeting the DentedOne Account.**

40A.    Following the January 3, 2025 reactivation of the DentedOne account through Intercom Conversation 86106, Stake VIP Host 'Jovan VIP' conducted a sustained Telegram-side inducement campaign directed at Plaintiff's DentedOne account. Plaintiff has preserved the contemporaneous Telegram screenshot evidence at Drive files 1mEXCr6kQzMnz1uOAk_Qdr4K6RiOjXEVJ, 14vLJQCdL-5Mij1pXeLYsWTopO86-Dwo7, and 1KrCfpPIS9awyh5vgcycQcVRpgS1IQkdq.

40B.    On a date reflected in the Telegram thread, Jovan VIP transmitted to Plaintiff the verbatim Diamond I VIP-level promotion package:

**Jovan VIP to Plaintiff (Diamond I inducement)  (Telegram screenshot):**

> "The level up bonus in USDT has been sent to your Vault, and you have got the following: 1) $12,800 bonus for reaching Diamond I VIP level; 2) $1,280 extra for your recent gameplay; 3) new reload session with the amount of $7.29 every 10 mins; 4) Weekly boost and Monthly bonus base amounts have been increased."

40C.    On September 27, 2024, Jovan VIP enabled a 10% cashback mechanism on the DentedOne account contingent on Plaintiff's continuing gambling activity:

**Jovan VIP to Plaintiff (cashback inducement)  (September 27, 2024, Telegram):**

> "I have checked with our Upper Management, and I have managed to enable 10% cashback for you. Cashback would be calculated based on the fresh losses, from the moment of activation, so any amount that you'd potentially lose would then be calculated and credited accordingly to the percentage of it."

40D.    Plaintiff's preserved Telegram exchange documents two distinct check-in episodes in which Jovan VIP advised Plaintiff that no cashback was available because Plaintiff had not yet reached his 'all-time low':

**Jovan VIP to Plaintiff (cashback gating: first denial)  (Telegram check-in):**

> "I've just checked, and unfortunately, there isn't any accumulated cashback on your account as you're -$4,440.09 away from reaching your all-time-low."

**Jovan VIP to Plaintiff (cashback gating: second denial)  (Subsequent Telegram check-in):**

> "Sadly, there's still no cashback accumulated on your account since you're -$444.48 away from reaching your all-time-low, I've just checked."

40E.    The 'all-time-low' cashback gating mechanism is structural inducement: by conditioning Plaintiff's loss-rebate availability on Plaintiff first reaching deeper cumulative losses than ever before, Stake VIP-Host personnel created a financial incentive for a documented gambling addict to gamble further. The Jovan VIP Telegram-side statistics snapshot displayed lifetime DentedOne wager volume of $3,181,544.87. Plaintiff's preserved Stake.com-issued crypto deposit ledger (Drive file 1dLtrqVyw3BT3fa73VqC-Un5gHwNVUlM_) and withdrawal ledger (Drive file 1XiA4D4rrRk2Rt6Qqmb8QmvmW4hB3gV6j) document the transaction-level substrate of the inducement campaign, with primary deposit address 0x0be3a6e8f978c436927d6145b2668c0c75cf23a2 on Ethereum/Polygon/Base USDC networks and the largest single deposit of $3,072.40 USDT on June 14, 2025.

## H. The Jay Discord Direct-Message Thread.

39. Plaintiff's preserved Discord direct-message thread with Jay documents Plaintiff's affirmative disclosures of vulnerability, including Plaintiff's September 30, 2024 disclosure: 'I'm a broken individual, all I've done the past 2 years isolate / sabotage myself constantly... Turning to gambling as my outlet always felt like the final nail in the coffin'; Plaintiff's November 21, 2024 disclosure of dopamine-dysfunction vulnerability; and Jay's January 11, 2025 6:52 AM message: 'Gotchu, sent $3700 / 100% when ur host comes back get them to relook cuz you should get everything back.'

40. The Stake.com internal Tip feature is the subject of pending federal Racketeer Influenced and Corrupt Organizations Act class action litigation in Ridley v. Sweepsteaks Limited et al., No. 1:25-cv-02511 (E.D. Va. filed 2025).

40F.    Plaintiff's preserved Discord screenshot file 'Jay Discord Dms.jpg' (Drive file 1oNfGWurcf0FEOiZGv9DvhGUemVPRSgL0) documents Jay's contemporaneous September 29, 2024 written acknowledgment:

**Jay (Kick.com streamer, Stake referral code 'ufos') to Plaintiff via Discord  (September 29, 2024, 3:53 PM):**

> "I can't load the video... No way you lost 320k bro. Holy fuck. Man that's fucked... When I get in il see what I can do. See if they will give me some of what you lost, and I'll ship it back to you."

40G.    Jay's September 29, 2024 acknowledgment establishes Jay's actual knowledge that Plaintiff had sustained losses on the order of $320,000 on Stake-platform infrastructure as of that date, more than three months before the Intercom 86106 reactivation sequence pleaded at Section F and roughly contemporaneous with the Jovan VIP Telegram inducement campaign at Section G.1. On information and belief, Plaintiff alleges that more than $40,000 in cumulative aggregate value was transferred from Jay (Stake referral code 'ufos') and from at

least one additional 'Stake-made' affiliate tipping account referenced by Jay in the preserved Discord direct-message thread to the DentedOne account via the Stake.com internal Tip feature during the operative period, paralleling the predicate acts in Ridley v. Sweepsteaks Limited.

40H.　Plaintiff has separately preserved Kick.com video evidence (Drive file 1if3m2EmyPT8kKGnPsckE5x8yaso2glit) documenting that Defendant Kick Streaming Pty Ltd hosted Stake-platform inducement advertising overlaid on Jay's live Kick stream during the operative period.

## I. Computer Tampering: Synchronized-Event Connectors Documented at Ten Independent Institutional Layers.

41. The computer-tampering allegations herein are constitutive connectors in the targeted multi-year campaign pleaded throughout this Verified First Amended Complaint, corroborated at ten independent institutional layers temporally synchronized with Plaintiff's procedural activity.

42. The ten independent corroboration layers are: (1) FBI IC3 submission identifier fe6154d7906c45baacee75cf0a4e11e5 (Mar. 27, 2026); (2) Buffalo Grove PD report BGP26-A00023; (3) Microsoft Defender for Endpoint Event 1116 (Apr. 17, 2026); (4) Google Workspace security ticket 7-3246000038746 (May 25, 2025); (5) PayPal unauthorized-use notifications (Feb. 15–17, 2026); (6) BingX account-features-restricted event (Feb. 26, 2026); (7) Bank of America fraud-claim email (Mar. 21, 2026, $5,100); (8) Proton Mail dark-web breach notification; (9) VirusTotal sandbox-verified behavioral reports for SHA-256 a15b6042f82313b2cbbcfd4e64dfb09ef777ab9e31948bb993b75eb3ccd50584; and (10) AT&T Mobility subscriber records for IP 12.221.147.22 (May 20, 2026).

43. The targeted payload's sandbox-verified behavioral signature (Drive file 1q3EqcVS8k0rdh4RlWWdkfd4QaTV68ySq) maps to MITRE ATT&CK techniques T1055 (Process Injection), T1071 (Application Layer Protocol), and T1573 (Encrypted Channel).

## I.1. Synchronized-Event Framework.

43A.　The payload's file-system access pattern includes a documented access of the directory 'C:\Program Files (x86)\AutoIt3\' — an AutoIt scripting-engine installation directory used for input automation, credential capture, and process-monitoring tasks of the type associated with targeted credential-theft toolchains. The payload's TLS-handshake fingerprint inventory includes thirteen distinct JA3 digests evidencing multiple TLS client implementations operating from the same host — a pattern consistent with injection-based command-and-control architecture rather than a single unified client.

43B.　The payload's contacted-IP inventory includes TCP connections to 23.52.42.29:80, 13.69.239.68:443 (Microsoft AS8075, geolocated Ireland), 52.111.229.43:443, 23.64.112.187:443, and 23.11.33.159:80. The composition is consistent with obfuscation-by-overlap, in which command-and-control traffic is hidden in TLS sessions resembling legitimate Microsoft Office or Edge browser telemetry.

43C.　Synchronized-event pairings include: (a) Apr. 17, 2026 Defender Event 1116 during AAA Final Hearing preparation window; (b) Feb. 15–17, 2026 PayPal events during federal

Complaint preparation; (c) Mar. 21, 2026 Bank of America $5,100 event contemporaneous with the March 9, 2026 Final Supervisory Demand to AAA pleaded at Paragraph 64J; (d) May 20, 2026 AT&T event during this First Amended Complaint preparation.

43D. The temporal coordination is probative under Federal Rule of Evidence 404(b)(2) of intent, knowledge, plan, and absence of mistake or accident. The synchronized-event pattern transforms the cyber-tampering allegations from a discrete claim into a constitutive connector within Count VII civil conspiracy: the actors who induced through Jovan VIP cashback-on-loss (Section G.1), facilitated the DentedOne KYC-bypass (Section E), accepted Kraken-source KYC (Section F), institutionally bound four DKIM-authenticated Stake Account Recovery agents (Section F.1), distributed value through Tip-feature (Section H), and weaponized AAA payment-deadline mechanics (Sections M.1–M.3) shared operational capability and motive for the synchronized electronic-interference campaign.

**J. The Wade Kilpela Slade LLP Engagement: DARVO-as-Delay-Tactic with Day-3 Knowledge.**

44. Wade Kilpela Slade LLP had actual Day-3 documentary knowledge of Plaintiff's vulnerability via the May 23, 2024 Wasim Telegram .json/.html upload pleaded at Paragraph 22B above, and thereafter subordinated Plaintiff's mental-health and safety needs to a settlement-maximization strategy designed to capitalize on Plaintiff's continuing addiction-driven gambling activity.

45. On June 24, 2024, Wade Kilpela Slade LLP filed Plaintiff's Demand for Arbitration with the AAA.

46. On November 1, 2024, James LaMarca emailed Plaintiff a verbatim 'Call Summary':

**James LaMarca to Plaintiff  (November 1, 2024 email):**

> "While you have lost approximately $500,000 this year, only roughly $250,000-300,000 occurred before the filing of the arbitration. We are going to pursue settlement talks with Stake and will counter their $10,000 opening offer with $225,000 and see where it goes from there."

47. The November 1, 2024 LaMarca admission is dispositive on the continuing-knowledge prong: Wade Kilpela Slade LLP understood that Plaintiff had lost $250,000–300,000 in additional gambling activity after the arbitration filing and treated that continuing-loss activity as a settlement-leverage frame rather than as a duty trigger.

48. On December 19–20, 2024, Plaintiff disclosed to Wade Kilpela Slade LLP that his 'mental health' was 'on a bit of a steep decline' after 'losing my Partner of 4 years' and that he was a victim of 'malignant covert narcissistic abuse' from a former partner who was 'exploiting a gambling addiction with relentless gifts and false claims.'

49. On December 23, 2024, Edwin Kilpela responded: 'we cannot serve as counsel with regard to the issues you describe below and our representation of you will remain confined to your claims against Stake.'

50. On December 28, 2024, Kilpela reiterated: 'our representation of you will need to remain strictly confined to your claim against Stake.' The scope-narrowing pattern is the DARVO-as-delay-tactic conduct supporting Counts III, IV, and VI below.

51. On January 13, 2025, Plaintiff confirmed to Wade Kilpela Slade LLP the Stake.com / Stake.us / Kick / Easygo ecosystem linkage and Ed Craven's involvement.

52. On January 14, 2025, in the same Call Summary thread, Kilpela admitted: 'in response to our demand of 225k they came up to 25k and that I [thought] I could get them to somewhere around 100k (between 75 and 125).'

53. When Plaintiff requested transcripts of the settlement back-and-forth, Kilpela refused, stating: 'no, I cannot transcribe phone conversations. Doing so would violate laws regarding recording conversations.'

**J.1. The January 7, 2025 Calhoun Settlement Letter, the February 3, 2025 Sonnenberg-Debunking Zoom, and the February 5, 2025 Belated Letter Transmittal.**

53A. On January 7, 2025, Defendants' counsel George R. Calhoun of Ifrah PLLC sent Plaintiff's former counsel Wade Kilpela Slade LLP a confidential settlement communication premised on Sonnenberg v. Amaya Group Holdings (IOM) Ltd., 810 F.3d 509 (7th Cir. 2016). Plaintiff did not receive the January 7, 2025 letter contemporaneously. On February 2, 2025 at 21:55 UTC (Gmail message identifier 194c8a933637d79d), James M. LaMarca circulated a Zoom invitation titled 'Stake: Call with Szymon' scheduled for February 3, 2025 at 10:00 a.m. Eastern. During the February 3, 2025 Zoom Call, Plaintiff deconstructed the application of Sonnenberg — which concerned exclusively peer-to-peer online poker — to the present arbitration concerning Sweepsteaks Limited's house-banked virtual slot machines, roulette, baccarat, and other proprietary-counterparty games where Sweepsteaks operates as the platform counterparty to every wager, placing its games outside the Sonnenberg croupier framework and within the Illinois Loss Recovery Act 'winner' definition under 720 ILCS 5/28-8.

53B. On February 4, 2025 at 20:48 UTC (Gmail message identifier 194d2b919472d795), Edwin Kilpela transmitted to Plaintiff a written 'Summary of Action and Discussion Items.' On February 5, 2025 at 15:57 UTC (Gmail message identifier 194d6d512c31dbb2), Mr. Kilpela transmitted to Plaintiff for the first time the January 7, 2025 Calhoun settlement letter — two days after Plaintiff had debunked its underlying legal framework. The February 5, 2025 transmittal contained the verbatim admission:

**Edwin Kilpela to Plaintiff (off-record settlement infrastructure admission) (February 5, 2025, 15:57 UTC):**

> "attached is the letter from Stake's counsel that you requested. There are no other email or written communications regarding settlement discussions, which have occurred by phone between George Calhoun and I."

53C. The thirty-day delay between Defendants' counsel transmitting the Sonnenberg-premised settlement framework to former counsel and former counsel transmitting that framework to Plaintiff, taken together with the timing of disclosure two days after Plaintiff's substantive deconstruction of Sonnenberg, and former counsel's admission that all settlement discussions had occurred by phone outside any preserved writing, supports the inference that the off-record settlement infrastructure was structured to minimize Plaintiff's evidentiary footprint while channeling the Sonnenberg-premised framework toward a settlement disposition Plaintiff had not authorized and was not equipped to evaluate.

**K. The February 3, 2025 Zoom Call and February 4, 2025 Kilpela Admissions.**

54. Plaintiff and Wade Kilpela Slade LLP attorneys met by Zoom on February 3, 2025 at 10:00 a.m. Eastern. On February 4, 2025 at 12:17 PM Central Time, Plaintiff emailed Edwin Kilpela the verbatim contemporaneous memorialization:

**Plaintiff to Edwin Kilpela (post-Zoom memorialization)  (February 4, 2025, 12:17 PM):**

> "What is not helpful to my claim is being threatened by my counsel during our Zoom call yesterday (02/03/2025, 10am EST) with the possibility that they might consider withdrawing from"

55. Plaintiff alleges, on personal knowledge, that during the same February 3, 2025 Zoom Call, attorney Edwin Kilpela made the verbatim statement, in substance, that Plaintiff's gambling addiction was not the firm's problem.

56. On February 4, 2025 at 3:48 PM, Edwin Kilpela sent Plaintiff the 'Summary of Action and Discussion Items' email containing two admissions of dispositive significance:

**Edwin Kilpela to Plaintiff (admission of no retainer)  (February 4, 2025 email):**

> "I have since confirmed that is not the case and that our representation of you has not been pursuant to a retainer agreement"

**Edwin Kilpela to Plaintiff (admission of misrepresentation)  (February 4, 2025 email):**

> "On our call earlier this week, I mistakenly said Stake had 'offered' 50k, when, in fact, that was only something that Stake's counsel informally suggested to me on the phone."

57. Wade Kilpela Slade LLP thereby admitted, in writing, on February 4, 2025: (a) that no retainer agreement existed during the firm's eight-month representation of Plaintiff; and (b) that Kilpela had been providing factually inaccurate information about Stake's settlement positions to Plaintiff.

**L. The February 6, 2025 'Two Suicide Attempts' Disclosure to Counsel.**

58. On February 6, 2025 at 1:23 PM Central Time, Plaintiff sent Wade Kilpela Slade LLP the verbatim disclosure:

**Plaintiff to Edwin Kilpela ('Two Suicide Attempts' email)  (February 6, 2025, 1:23 PM):**

> "This case has caused immense harm, including two suicide attempts. I had to call the police to my house to ask for some sort of guidance.., after the Zoom call, where you didn't let me make the decision to go into arbitration without constantly threatening me."

59. The February 6, 2025 disclosure documents Plaintiff's two suicide attempts; the February 3, 2025 Zoom Call distress prompting Plaintiff to call police for safety; and Plaintiff's prior 'multiple times' vulnerability communications beginning 'back in October.'

**M. The Concealed January 15, 2025 Abeyance and the March 21, 2025 Withdrawal.**

60. On January 15, 2025, on Wade Kilpela Slade LLP's request and without Plaintiff's knowledge or consent, the AAA placed Plaintiff's arbitration in administrative abeyance. Plaintiff did not learn of the January 15, 2025 abeyance until early February 2025, and did not formally receive documentation of it from WKS until March 18, 2025 — sixty-two days after the abeyance had been imposed.

60A.   On March 18, 2025 at 17:13 UTC (Gmail message identifier 195aa3ecde46c2a8), David Slade (slade@waykayslay.com) forwarded AAA correspondence to Plaintiff with the verbatim instruction:

**David Slade to Plaintiff (DARVO role-inversion)  (March 18, 2025, 17:13 UTC):**

> "Hi Szymon, We just got the attached correspondence from AAA. You need to contact them to let them know that you are proceeding pro se. Do you want me to respond to this person's email with you cc'd to explain the situation?"

The March 18, 2025 Slade communication inverts the procedural-burden allocation: counsel of record receives 'correspondence from AAA' and frames the response burden as Plaintiff's, conditioning withdrawal on Plaintiff's independent action of notifying AAA that Plaintiff was proceeding pro se. The communication does not propose to formally substitute counsel, does not propose to file a motion for leave to withdraw, does not propose to coordinate the withdrawal with AAA case-management staff, and frames the withdrawal as Plaintiff's self-help responsibility against the AAA institutional layer.

60B.   On March 21, 2025 at 20:06 UTC (Gmail message identifier 195ba50c1b26fca7), James M. LaMarca, addressing the email TO AAA Shannon Hurley with Edwin Kilpela and Ifrah PLLC counsel of record George Calhoun as co-recipients, formally notified AAA of Wade Kilpela Slade LLP's withdrawal:

**James M. LaMarca (WKS) to AAA Shannon Hurley  (March 21, 2025, 20:06 UTC):**

> "Good Afternoon Ms. Hurley, I am writing to inform the AAA that Wade Kilpela Slade no longer represents Szymon Zawadzki. Please direct any further correspondence to his email: szymonfitness@gmail.com. Mr. Zawadzki is also cc'd to this email. Have a good weekend, James. James M. LaMarca, Attorney, Wade Kilpela Slade, LLP, (412) 314-0905."

Plaintiff was carbon-copied as a notice recipient on the formal AAA-side withdrawal notification rather than addressed as the principal who would have authorized the original representation. No formal retainer agreement had ever existed during the ten months of Wade Kilpela Slade LLP's representation, as Edwin Kilpela had separately admitted in writing on February 4, 2025 (¶ 56 above). The valediction 'Have a good weekend' — sent forty-three days after Plaintiff's February 6, 2025 'Two Suicide Attempts' disclosure email to the firm — documents the operational tone of the WKS exit.

60C.   Plaintiff was carbon-copied as a notice recipient rather than addressed as the principal who would have authorized representation. No formal retainer had ever existed.

61. On March 21, 2025, WKS withdrew — forty-three days after Plaintiff's 'Two Suicide Attempts' email and concluding ten months of representation never formalized by retainer.

62. On May 8, 2025, Plaintiff emailed WKS requesting clarification of the procedural posture, stating: 'The only correspondence I have received from the AAA indicated that the case has been held in abeyance as of January 15, 2025—administratively stayed due to the lack of response to communications dated November 8, December 9, and December 20, 2024. However, this procedural status was never disclosed to me by any party, nor did I provide consent for such action.'

63. David Slade responded on May 8, 2025 at 4:59 PM: 'we do not represent you in this matter anymore, so we cannot contact the arbitration organization or Stake's counsel on your behalf, and we no longer have any insight into what is happening with this arbitration.'

### M.0. April 19, 2025: Plaintiff's First Direct Independent AAA Outreach.

63L.    On April 19, 2025 at 18:11 UTC (Gmail message identifier 1964f3fb82cb51f1), Plaintiff sent his first-ever direct independent email to the AAA case manager, with no carbon-copies to Defendants' counsel:

**Plaintiff to AAA Shannon Hurley (first direct independent outreach)  (April 19, 2025, 18:11 UTC):**

> "Hi Shannon, I hope you're having a great Easter. I was hoping to schedule a time to briefly speak with you regarding a few questions I have about the case/proceeding. Please let me know a convenient time for you to connect. Much love, Szymon"

63M.   Plaintiff's first direct outreach to AAA was warm, deferential, and procedurally modest — it requested only a phone call to ask procedural questions, did not raise any merits issue, did not include attachments, did not threaten litigation, and did not include the case number in the subject line. The exchange establishes the documentary baseline against which AAA's subsequent procedural posture must be evaluated: a pro se claimant who had just learned of his arbitration's administrative stay reached out to the case manager on Easter weekend to request a phone call.

### M.0.1. Plaintiff's May 5–9, 2025 Procedural-Defect Letters and the AAA May 9, 2025 Non-Engagement Response.

63N.    On May 5, 2025 at 23:54 UTC (Gmail message identifier 196a2df7594ca0e5), seven days after the AAA-imposed April 28, 2025 deadline pleaded at Paragraph 64F.1 below, Plaintiff transmitted to AAA the verbatim seven-word capitulation:

**Plaintiff to AAA (terse capitulation to deadline pressure)  (May 5, 2025, 23:54 UTC):**

> "I want to proceed in the case,"

63O.    The terse seven-word reply documents the operational consequence of the AAA April 21, 2025 cc-protocol imposition (Paragraph 64F below) and the seven-day deadline pressure on a pro se gambling-addiction claimant: Plaintiff abandoned the substantive procedural-defect concerns that would surface three days later in the May 8, 2025 letter and acceded to the procedural posture AAA had imposed.

63P.    On May 8, 2025 at 04:21 UTC (Gmail message identifier 196ae20887b229d8), Plaintiff transmitted to AAA, Ifrah PLLC counsel, and the case parties a formal procedural-defect letter raising the consent-defect predicate that would later form the FAA § 10(a)(1) and § 10(a)(4) anchors:

**Plaintiff to AAA + Ifrah PLLC (procedural-defect letter, first articulation of consent-defect grounds)  (May 8, 2025, 04:21 UTC):**

> "For the record, I was never made aware of these letters or that my case had been placed in abeyance until February 4th, when I was informed by the law firm that had been representing me, Edwin J. Kilpela, Jr. of WADE KILPELA SLADE LLP. This only came to my attention after I proactively contacted the AAA myself. As a result, I requested that the firm no longer represent me

> in this case due to their failure to inform me in a timely manner of the defendants' offer(s), the previously mentioned letters, or the case being placed in abeyance. I can verify all of this through well-documented communication and correspondence between myself and my former counsel. I also reached out to the defendants' law firm, Ifrah Law (ifrahlaw.com), seeking clarification and answers, but I never received a response."

63Q.   The May 8, 2025 letter is the first contemporaneous documentary articulation by Plaintiff of three dispositive procedural-defect facts: (i) Plaintiff did not receive AAA's November 8, December 9, or December 20, 2024 letters from his then-counsel until after he proactively contacted AAA on February 4, 2025; (ii) Plaintiff withdrew Wade Kilpela Slade LLP's representation specifically because of their failure to inform Plaintiff in a timely manner of the defendants' settlement offer(s), the AAA letters, and the abeyance; and (iii) Plaintiff had attempted to communicate with Ifrah PLLC directly seeking clarification and received no response. Ifrah PLLC's non-response to Plaintiff's March 2025 outreach establishes that Defendants' counsel's subsequent May 14, 2025 phone-call settlement engagement with Plaintiff (Paragraph 63A below) was the first substantive engagement by Defendants' counsel with Plaintiff directly — occurring eight weeks after Plaintiff first reached out and after Plaintiff had been compelled by the AAA April 21, 2025 cc-protocol regime to capitulate to the 'ready to proceed' framing.

63R.   On May 9, 2025 at 11:28 UTC (Gmail message identifier 196b4cdbaf200d29), Plaintiff transmitted to AAA and Ifrah PLLC the verbatim formal 'Lack of Notice and Consent Regarding Settlement Offer and Case Status' letter:

**Plaintiff to AAA + Ifrah PLLC ('Lack of Notice and Consent' letter, formal procedural-defect articulation)  (May 9, 2025, 11:28 UTC):**

> "I am writing to formally address significant procedural issues in the matter of Zawadzki v. Sweepsteaks Ltd. Specifically, the decision to place the matter in abeyance — without any direct communication with me and apparently based solely on the inaction of my former counsel — was taken without my knowledge, understanding, or consent. This administrative action, predicated on incomplete and one-sided information, has materially prejudiced my position and undermined my ability to participate meaningfully in the resolution of this matter. At no point between November 22, 2024, and February 2025 was I notified — by email, phone, or in writing — of Stake's settlement offer dated November 21, 2024. The only reason I became aware of this offer and the current status of the case was because I created an account on ADR.org and submitted a status inquiry on February 4, 2025. It was through that inquiry that I first learned the matter had been placed in 'abeyance' — a procedural status to which I never consented, was not informed of, and which was never explained to me."

63S.   Plaintiff's May 9, 2025 letter also reproduced in verbatim form the Ifrah PLLC letter that Defendants' counsel had sent to Wade Kilpela Slade LLP but that WKS had never relayed to Plaintiff:

**Ifrah PLLC letter to Wade Kilpela Slade LLP (concealed from Plaintiff for sixty-five days), quoted by Plaintiff in his May 9, 2025 procedural-defect letter  (Original letter dated November 21, 2024; quoted in May 9, 2025 email):**

> "I am writing to follow up on our recent settlement communications. We last conveyed an offer to you on November 21, 2024, after which we agreed to inform the AAA that we would hold off on proceeding while the parties engaged in further discussion. Despite that, we have not heard anything from you regarding these terms."

63T.    The verbatim Ifrah PLLC letter — quoted by Plaintiff back into the case record on May 9, 2025 — is dispositive on three layers. First, Ifrah PLLC and Wade Kilpela Slade LLP 'agreed to inform the AAA that [they] would hold off on proceeding while the parties engaged in further discussion' — a bilateral off-record agreement between opposing counsel that became the predicate for AAA's subsequent January 15, 2025 abeyance imposition. Plaintiff was not a party to that bilateral agreement and was not informed of it. Second, the November 21, 2024 settlement offer mentioned in the Ifrah PLLC letter — the substantive consideration the bilateral agreement was structured around — was never transmitted to Plaintiff between November 22, 2024 and February 2025. Third, the documentary chain establishes that AAA's January 15, 2025 abeyance was imposed as the institutional consequence of a bilateral counsel-to-counsel off-record agreement that excluded Plaintiff at every layer.

63U.    On May 9, 2025 at 14:10 UTC (Gmail message identifier 196b562ab1c48240), AAA Shannon Ruble (signing as Hurley, drafted by Laura Giammarino) responded to Plaintiff's formal procedural-defect letter:

**Laura Giammarino on behalf of AAA Shannon Ruble (non-engagement response moving past the consent-defect record)  (May 9, 2025, 14:10 UTC):**

> "Dear Parties: This will confirm receipt of the below communications. Please see the attached communications dated March 21, 2025 as well as the communications confirming the Notice of Recusal from Claimant's counsel. As Claimant has advised they are ready to proceed, we will proceed with the administrative appointment of an arbitrator. Once an arbitrator has accepted our invitation to serve on the case, we will provide their appointment documents, including resume, Oath, and Notice of Compensation Arrangements to you for review."

63V.    The May 9, 2025 AAA response is dispositive on the AAA-side procedural-fraud pattern. Plaintiff's May 9, 2025 letter had formally raised: (i) the consent-defect predicate for the January 15, 2025 abeyance; (ii) the bilateral off-record agreement between Wade Kilpela Slade LLP and Ifrah PLLC; (iii) the concealed November 21, 2024 settlement offer; (iv) the assertion that Plaintiff 'never consented' and 'was not informed of' the abeyance procedural status; and (v) the assertion that Plaintiff's ability to participate meaningfully had been materially prejudiced. AAA's response acknowledged none of these substantive procedural-defect claims. AAA acknowledged only the procedural fact of Plaintiff's 'ready to proceed' capitulation and announced the administrative appointment of an arbitrator. The May 9, 2025 AAA non-engagement response is the second documented manifestation of the AAA procedural-fraud pattern — a manifestation that converted Plaintiff's contemporaneous formal procedural-defect record into administrative background and operationally permitted the appointment of an arbitrator on a record from which Plaintiff's substantive consent-defect challenge had been administratively elided.

**M.1. The May 14, 2025 Plaintiff–Calhoun Phone Call and the May 16, 2025 AAA-Payment-Deadline Settlement-Coercion Letter.**

63A.    On May 14, 2025 (confirmed by Plaintiff's May 25, 2025 reference at Gmail message identifier 197066f3abfb5f7a), Plaintiff — then proceeding pro se for approximately seven weeks — conducted a direct telephone settlement conversation with Defendants' counsel George R. Calhoun of Ifrah PLLC.

63B.    On May 16, 2025 at 21:16 UTC (Gmail message identifier 196dbd0c5da7d924), Mr. Calhoun sent Plaintiff the verbatim AAA-payment-deadline settlement-coercion communication:

**George R. Calhoun (Ifrah PLLC) to Plaintiff (AAA-deadline coercion)  (May 16, 2025, 21:16 UTC):**

"Following up on our call on Wednesday, I am writing to confirm that my client is willing to offer $45,000 plus enrollment in a treatment program through Birches Health as full and complete settlement of your claims. As we discussed, if Stake is required to spend additional funds on the arbitration, it would no longer be willing to settle at this number. Further, because the AAA is seeking immediate payment of amounts, this offer shall only be good until the deadline for the upcoming payments, which is sometime mid-week next week. After that, the offer may decrease."

63C.    The May 16, 2025 communication weaponized AAA payment-deadline mechanics as settlement pressure on a pro se vulnerable claimant.

## M.2. May 20, 2025: Plaintiff's Direct Written Disclosure to Defendants' Counsel of Two Suicide Attempts.

63D.    On May 20, 2025 at 02:48 UTC May 21 (Gmail message identifier 196f0bdc7085d46f), Plaintiff wrote directly to Mr. Calhoun and Michelle Cohen:

**Plaintiff to Calhoun and Cohen (Ifrah PLLC) — suicidality disclosure  (May 20, 2025 email):**

"When addiction first took hold, I reached out—not for money, but for honest guidance. I was lost. That's why it hurt to see treatment only offered later, as part of a settlement... For over two years, I lived in isolation, addiction, and shame. I survived two suicide attempts."

63E.    On May 21, 2025 at 16:55 UTC (Gmail message identifier 196f3c595368d12c), Ms. Cohen responded with no operational pause, imposing a four-business-day acceptance deadline:

**Michelle Cohen (Ifrah PLLC) to Plaintiff (no-pause settlement-deadline reiteration)  (May 21, 2025, 16:55 UTC):**

"George is traveling out of the country, and I am a colleague of George here at Ifrah Law. Thank you all of your information. I very much appreciate you sharing your concerns. I did want to follow up on our client's offer to resolve this matter... To reiterate, the offer is: $45,000 plus enrollment in a treatment program through Birches Health... Please let me know by the close of business (DC time) on Friday, 5/23 if you are accepting or declining the offer."

63F.    Ms. Cohen's May 21, 2025 response, sent one morning after Plaintiff's written suicide-attempts disclosure, generically acknowledged Plaintiff's 'concerns' without naming the suicide-attempts disclosure and immediately pivoted back to the $45,000 settlement-deadline framework.

## M.3. The $45,000 → $30,000 Declining-Offer Cascade and the July 28, 2025 'Deal or No Deal' Acknowledgment.

63G.    On May 22, 2025, Plaintiff counter-offered $144,000 plus Birches Health enrollment. On May 27, 2025 at 18:44 UTC (Gmail message identifier 197130fd888b529c), Ms. Cohen transmitted the rejection: 'Our client declines your counter-offer. We will proceed with the AAA payment.'

63H.  On July 22, 2025 at 18:21 UTC (Gmail message identifier 198335e4b74d91f2), Plaintiff emailed Mr. Calhoun referencing 'When we spoke on the phone back in late May, we discussed getting the settlement offer to $50,000 rather than $45,000' — establishing a second undocumented direct phone settlement communication.

63I.  On July 25, 2025 at 14:09 UTC (Gmail message identifier 19841ea84df33bd2), Mr. Calhoun responded with the decreased offer:

**George R. Calhoun to Plaintiff (offer decrease per May 16 threat)  (July 25, 2025, 14:09 UTC):**

> "Our client's offer was previously time-limited and they had to expend funds in the meantime. Please let me know if you are willing to accept $30,000."

63J.  On July 28, 2025 at 03:01 UTC (Gmail message identifier 1984efacdcf83b89), Plaintiff documented Mr. Calhoun's prior verbal admissions:

**Plaintiff to Calhoun (documenting off-record Calhoun admissions)  (July 28, 2025, 03:01 UTC):**

> "It seems a bit disingenuous to transition from our phone conversation, where you acknowledged that this particular case wasn't about money and mentioned your client's offer of addiction therapy assistance as part of the settlement, to now presenting 'time-limited' offers as if we're on a game show like 'Deal or No Deal.'"

63K.  The declining-offer sequence — $50,000 informally suggested January 2025 → $45,000 May 16, 2025 written offer with AAA-deadline pressure → $30,000 July 25, 2025 written offer — occurred under documented duress and is admissible under Federal Rules of Evidence 404(b) and 801(d)(2).

### N. The Arbitration as an Isolation Trap: Structural Framework.

64. The totality of the documentary record compiled in this Verified First Amended Complaint could not have been developed within the framework of the AAA arbitration as it was actually conducted. The arbitration was structurally configured to operate as an isolation trap — a confidential, asymmetric, time-pressured forum in which Plaintiff's evidence-development capacity was constrained while Defendants' control over source ledgers, account-linkage records, VIP-host communications, and Intercom support records remained absolute.

### N.1. Defendants' Supervised Arbitral Admissions: The March 16–17, 2026 Calhoun-Supervised Filings.

64A.  In Respondent's Emergency Motion Response of March 17, 2026, Response to Request 16, Defendants' counsel George R. Calhoun and Steven P. Hess, acting under sworn supervision attested in the April 29, 2026 Calhoun Declaration at Paragraph 5, expressly acknowledged: 'His complaint concerning the administration of the case through the AAA rather than the courts is a complaint that his counsel acted without his authority. That is an issue between Claimant and his former counsel and does not alter the fact that this proceeding is the appropriate and agreed forum.'

64B.  On March 16, 2026, Defendants' counsel acknowledged: 'Respondent continued to receive referral commissions. After this arbitration was filed, Respondent identified the continued payments and chose to terminate its commercial relationship.' On March 17, 2026

the same counsel asserted: 'Mr. Zawadzki has no affiliate or referral contract with Respondent.' The two positions are internally inconsistent within twenty-four hours.

64C.    Defendants' counsel expressly admitted: 'Respondent ceased making payments to Mr. Zawadzki because Mr. Zawadzki is in the process of suing Respondent. That is a natural, and predictable, response to being sued.'

## N.2. AAA Procedural Fraud.

64D.0. Integrated AAA Procedural-Fraud Sweep. This consolidated pleading incorporates the eight AAA procedural-fraud anchors preserved in Plaintiff's AAA Procedural Fraud Supplement: (i) the March 25, 2025 silent withdrawal-confirmation that failed to disclose the January 15, 2025 abeyance to Plaintiff after WKS withdrew; (ii) the April 21, 2025 first abeyance disclosure coupled with the asymmetric copy-protocol and proceed-or-remain-stayed deadline; (iii) the May 9, 2025 refusal to investigate Plaintiff's documented procedural-fraud complaint before appointing an arbitrator; (iv) the November 14-17, 2025 five-excuse blocking of the metadata-preserved Wasim Telegram .html and .json files; (v) the November 21, 2025 preliminary-hearing deferral of Plaintiff's concerns into a written-submission loop; (vi) the March 10, 2026 Barbara Phariss administrative-role refusal to determine whether counsel acted with Plaintiff's consent and the related $0.00 WebFile placeholder admission; (vii) the March 27, 2026 forced record-scrubbing demand requiring Plaintiff to remove arbitrator-challenge references from materials submitted for arbitrator review; and (viii) the April 22, 2026 ex parte Final Hearing produced by transmission of the hearing-access link after the scheduled start time. Each anchor is pleaded below in Sections N.2 through N.3.18, supports the Rule 65 irreparable-harm showing, and preserves the FAA § 10 and § 12 vacatur grounds reserved in this action.

64D.    On March 25, 2025 at 16:46 UTC (Gmail message identifier 195ce3378d7eee7f), AAA case manager Shannon Ruble (signing as Hurley, drafted by Laura Giammarino) confirmed Wade Kilpela Slade LLP's withdrawal in the following verbatim communication:

**Laura Giammarino on behalf of AAA Shannon Ruble (silent withdrawal-confirmation)  (March 25, 2025, 16:46 UTC):**

> "Dear Parties: This will confirm receipt of the below email. Counsel for Claimant has been updated. Should Claimant retain additional counsel, please notify the AAA copying all other case participants. Thank you, Laura Giammarino, on behalf of, AAA Shannon Ruble, Manager of ADR Services, American Arbitration Association."

The March 25, 2025 AAA withdrawal-confirmation email made no mention of the January 15, 2025 administrative abeyance imposed on Plaintiff's arbitration at Wade Kilpela Slade LLP's request and without Plaintiff's knowledge or consent. AAA acknowledged the change in counsel-of-record but did not disclose to Plaintiff — then proceeding pro se for four days — the dispositive procedural fact that the case had been administratively stayed for sixty-nine days. The omission is the first documented manifestation of the AAA procedural-fraud pattern pleaded throughout this Section N.2.

64E.    Plaintiff did not learn of the January 15, 2025 abeyance until AAA's April 21, 2025 communication — ninety-seven days after the abeyance was administratively imposed.

64F.    On April 21, 2025 at 15:45 UTC (Gmail message identifier 1965906deb6753b6), AAA case manager Shannon Ruble (signing as Hurley, drafted by Laura Giammarino) responded

to Plaintiff's April 19, 2025 first-direct-outreach (Paragraph 63L above) — not by accepting Plaintiff's phone-call request, but by inserting Defendants' counsel George Calhoun, Michelle Cohen, and Jordan Briggs of Ifrah PLLC into the email chain and imposing the asymmetric cc-protocol with institutional non-action threat:

**AAA (Giammarino on behalf of Ruble) (asymmetric cc-protocol imposition)  (April 21, 2025 email):**

> "Please be reminded that unless otherwise directed, parties are to copy each other on all correspondence... If any party fails to share communications with the other party, the AAA or the arbitrator might not act on any requests or objections contained within those communications."

**64F.1.        The April 21, 2025 communication continued with the first AAA-side disclosure to Plaintiff of the existence of the January 15, 2025 administrative abeyance:**

**AAA Ruble (continued, first disclosure to Plaintiff of January 15, 2025 abeyance)  (April 21, 2025, 15:45 UTC):**

> "Please be advised, this matter was placed in abeyance administratively on January 15, 2025 as no response was received to our letters dated November 8, 2024, December 9, 2024, and December 20, 2024. The next administrative step is to invite an arbitrator to serve, at which time the Business will incur the Case Management Fee and arbitrator compensation deposit according to the applicable Costs of Arbitration section of the Consumer Rules. Please see the attached 'Stages of Arbitration.' We will not appoint an arbitrator unless one of the parties advises they are ready to proceed. If you are ready to proceed with your case, please let us know by responding to this email by April 28, 2025, remembering to copy the other party on your response. Please note, if we do not receive a response by this date, your case will remain in abeyance."

64F.2.  The April 21, 2025 communication is dispositive on the AAA-side procedural-fraud pattern at four distinct layers. First, Plaintiff's first-ever AAA outreach — a private request for a phone call — was operationally converted by AAA into a written cc-protocol communication served on Defendants' counsel. Second, AAA disclosed the January 15, 2025 abeyance for the first time to Plaintiff ninety-seven days after the abeyance was administratively imposed. Third, AAA imposed a seven-day acceptance deadline (April 28, 2025) on a pro se claimant who had been proceeding without counsel for thirty days and whose underlying claim involved documented gambling-addiction harms. Fourth, AAA framed the abeyance as the consequence of 'no response' to three letters — letters that, on Plaintiff's subsequent May 8, 2025 documentary record at Paragraph 63P above, had never been transmitted to Plaintiff by his former counsel. The cc-protocol thereafter governed Plaintiff's communications with AAA under the institutional-non-action threat, while Defendants' counsel sent direct settlement communications to Plaintiff on May 16, 2025 (¶ 63B), May 21, 2025 (¶ 63E), and July 25, 2025 (¶ 63I) without copying AAA — the precise asymmetric pattern pleaded at Paragraph 64G below.

64G.    Concurrent with the cc-protocol, Defendants' counsel sent direct settlement communications to Plaintiff without copying AAA — the May 16, 2025 Calhoun letter, the May 21, 2025 Cohen response, and the July 25, 2025 Calhoun $30,000 offer.

64H.    On December 18, 2025 at 14:02 UTC (Gmail message identifier 19b31c5a41498a77), in response to Plaintiff's December 18, 2025 Emergency Motion for Sanctions, AAA Hurley admitted segregation of Plaintiff's metadata-bearing exhibits:

**AAA Shannon Ruble (signed Hurley) (evidence-segregation admission)  (December 18, 2025, 14:02 UTC):**

> "all documents that can be uploaded to the WebFile have been uploaded. Please note that some documents could not be uploaded but have been forwarded directly to the arbitrator."

64I.   The December 18, 2025 admission is dispositive: AAA acknowledged routing case evidence to the merits decisionmaker outside the regulated case file, incompatible with FAA § 10(a)(3).

64J.   On March 10, 2026 at 20:42 UTC (Gmail message identifier 19cd97c84b69220b), AAA Barbara Phariss, Director of ADR Operations, and Shannon Ruble, Manager of ADR Services, jointly responded with the administrative-role dodge:

**Barbara Phariss & Shannon Ruble (AAA)  (March 10, 2026, 20:42 UTC):**

> "AAA was entitled to rely on communications from counsel of record, which included a request to reopen this matter. Questions about whether former counsel acted consistent with your wishes are not matters AAA can determine in its administrative role... the system reflects $0.00 as a placeholder."

64K.   AAA's Director of ADR Operations expressly disclaimed jurisdiction over the consent-defect predicate while having accepted former counsel's abeyance request, accepted the disputed reopening, imposed the asymmetric cc-protocol, admitted segregating Plaintiff's metadata-bearing exhibits, and maintained a $0.00 placeholder claim amount.

64L.   On March 27, 2026 at 17:13 UTC (Gmail message identifier 19d304978ed65ad1), AAA transmitted the forced record-scrubbing demand:

**Barbara Phariss (AAA)  (March 27, 2026, 17:13 UTC):**

> "if you would like them provided to the arbitrator, please resubmit any materials without reference to the arbitrator challenge if you have not already done so. As that issue has been resolved, materials submitted for the arbitrator must exclude references to the arbitrator challenge."

64M.   The March 27, 2026 directive imposed a content-based filter on Plaintiff's record-preservation submissions twenty-six days before the scheduled Final Hearing.

64N.   On April 22, 2026 at 14:08 UTC — 9:08 a.m. Central Daylight Time, eight minutes after the scheduled 9:00 a.m. CDT start — AAA Shannon Ruble (signing as Hurley) transmitted the meeting-access information for the Final Hearing already in progress:

**AAA Shannon Ruble (ex parte Final Hearing 9:08 transmittal)  (April 22, 2026, 9:08 a.m. CDT):**

> "Good morning, Please be advised the Final Hearing is currently being held with the arbitrator via Zoom. Mr. Zawadzki, please join the hearing using the following information... Date: Wednesday, April 22, 2026 ... Start Time: 9:00 AM CDT ... Job Number: 7115173."

64O.   The Final Hearing proceeded ex parte against Plaintiff on a record from which Plaintiff's metadata-bearing evidence had been administratively segregated and from which arbitrator-challenge-basis submissions had been administratively scrubbed.

64P.   Throughout the arbitration period, AAA-appointed Arbitrator Richard L. Miller II conducted official arbitrator correspondence from a personal Microsoft Hotmail address (richardlmillerii@hotmail.com) rather than a court-credentialed institutional account,

introducing identity-attribution and message-authentication concerns at the arbitrator-correspondence layer.

64Q.    On August 22, 2025 at 13:30 UTC (Gmail message identifier 198d1f8ee0ec6c6d), AAA Shannon Hurley transmitted arbitrator-related correspondence to Plaintiff and Defendants' counsel. On August 24, 2025 at 22:21 UTC (Gmail message identifier 198de2c2de531b7c), AAA-appointed Arbitrator Richard L. Miller II, operating from his personal Microsoft Hotmail account richardlmillerii@hotmail.com, informed the parties of his upcoming surgery:

**Arbitrator Richard L. Miller II (personal Hotmail account) to AAA and parties  (August 24, 2025, 22:21 UTC):**

> "Shannon, Please advise the parties that we will need to reschedule the hearing currently set for this Wednesday, August 27, 2025. (See below and attached.) Unfortunately, I am having a surgery, on a"

64R.    On August 25, 2025 at 13:20 UTC (Gmail message identifier 198e1635fd169945), Jordan Briggs of Ifrah PLLC responded for Defendants. On August 25, 2025 at 14:08 UTC (Gmail message identifier 198e18ebc3a58fdb), Plaintiff responded with the verbatim respectful and procedurally modest reply:

**Plaintiff to Arbitrator Miller and Briggs (Ifrah PLLC) and AAA  (August 25, 2025, 14:08 UTC):**

> "I can easily adjust to any date, so please let me know what works best for you. You'll be in my prayers for a smooth surgery and a problem free recovery, Mr. Miller. God Bless, Szymon Zawadzki"

64S.    On August 26, 2025 at 21:13 UTC — the night before the originally scheduled August 27, 2025 hearing — Arbitrator Miller, again operating from his personal Hotmail account, transmitted the following to AAA Shannon Hurley (Gmail message identifier 198e916917b22e92):

**Arbitrator Richard L. Miller II (Hotmail) to AAA Shannon Hurley  (August 26, 2025, 21:13 UTC — night before scheduled hearing):**

> "Shannon, Regarding Zawadzki v. Sweepsteaks Limited d/b/a Stake.Us, the hearing was set for tomorrow — Wednesday, August 27, 2025, at 10:00 am However, I sent the below email indicating I would be"

64T.    Plaintiff's August 27, 2025 02:39 UTC reply (Gmail message identifier 198e964ca6520c67) documented the operational uncertainty introduced by the night-before-hearing arbitrator-correspondence sequence. On August 27, 2025 at 13:38 UTC (Gmail message identifier 198ebc0a63e904f2), AAA Hurley confirmed: 'Good morning parties, The conference call initially scheduled for today August 27, 2025 at 10AM Central will not proceed as not all participants are available.'

64U.    The August 22–27, 2025 hearing-rescheduling sequence is documentarily significant at three layers. First, all arbitrator-side correspondence during the sequence was transmitted from a personal Microsoft Hotmail address (richardlmillerii@hotmail.com) rather than from a court-credentialed or AAA-institutional email account, introducing identity-attribution and message-authentication concerns at the arbitrator-correspondence layer. Second, Plaintiff's August 25, 2025 'I can easily adjust to any date... in my prayers for a smooth surgery... God

Bless' reply documents Plaintiff's contemporaneous good-faith conduct toward the arbitrator before any partiality concerns had surfaced — a fact pattern admissible under Federal Rule of Evidence 406 (habit/routine practice) and rebutting any later inference that Plaintiff's subsequent procedural challenges arose from animus rather than from the documented procedural-fraud record. Third, the late-evening-before-hearing arbitrator-correspondence pattern was operationally repeated at the April 22, 2026 ex parte Final Hearing pleaded at Paragraph 64N above.

### N.2.1. The November 13–14, 2025 Ifrah-Dropbox Discovery-Production Transmission and the AAA WebFile File-Type Asymmetry.

64V.   On November 13, 2025 at 19:33 EST / November 14, 2025 at 00:32 UTC (Gmail message identifier 19a7fc7a72d6163e), Steven Hess of Ifrah PLLC transmitted to Plaintiff Respondent's discovery responses, document production materials, and 'a video of communications that [Plaintiff] had with the Respondent' through a password-protected Dropbox folder rather than through the AAA WebFile case-management system:

**Steven Hess (Ifrah PLLC, on behalf of Sweepsteaks Limited) to Plaintiff  (November 13, 2025, 19:33 EST email):**

> "Good evening, Mr. Zawadzki, Please find Respondent's discovery response and production materials attached. We are also sharing with you a video of communications that you had with the Respondent. Due to the file size, we are unable to share the document over email. We have therefore uploaded the document into Dropbox, available through this link. The password for the folder is 'Ifrah123.' If you have any issues accessing the folder, please let us know. Please let us know if you have any questions. Best regards, Steven Hess."

64W.   The November 13, 2025 Hess communication is documentarily significant at three layers. First, Ifrah PLLC transmitted to Plaintiff video evidence of Plaintiff's own communications with Respondent — evidence that, on information and belief, was developed from Stake-side internal surveillance, telephony, video-call, or chat-feature capture of Plaintiff's communications across Stake.us, Stake.com, Telegram, Discord, and/or Kick platforms. The video transmission establishes Defendants' access to comprehensive Plaintiff-communications surveillance archives. Second, the production was made through a password-protected Dropbox folder with the password 'Ifrah123' rather than through the regulated AAA WebFile system, placing the video evidence outside the AAA WebFile audit trail and outside the regulated case-management retention framework. Third, the production was transmitted on the evening of November 13, 2025 — four hours before AAA's next-business-day docket-management response — in a posture consistent with Defendants' documented practice of transmitting substantive case materials through off-record channels (the pattern pleaded at Paragraphs 53A–53C and 63A–63K above).

64X.   On November 14, 2025 at 18:23 UTC (Gmail message identifier 19a839b95912130e), AAA Shannon Ruble (signing as Hurley) responded to Hess regarding the WebFile system's inability to accept the Ifrah-Dropbox production attachments:

**AAA Shannon Ruble to Steven Hess (Ifrah PLLC) regarding WebFile file-type limitations (November 14, 2025, 18:23 UTC):**

> "When communicating with the AAA, please include the case number in the subject line. I have uploaded Respondent's Discovery Response to the WebFile; however, the .zip file could not be uploaded. If you would like this included on the docket, please upload it."

64Y.    Twelve hours later, on November 14, 2025 at 19:36–19:37 UTC (Gmail message identifiers 19a83de58a507d62 and 19a83e019bc073fd), AAA Shannon Ruble responded to Plaintiff regarding the WebFile system's inability to accept Plaintiff's native-format Wasim Telegram .html and .json exports:

**AAA Shannon Ruble to Plaintiff (correction)  (November 14, 2025, 19:37 UTC):**

> "My apologies for the typing error. Our system cannot accept .zip .html, etc. Thank you, Shannon Ruble."

On November 14, 2025 at an intermediate timestamp (Gmail message identifier 19a83c04632c22b7), Plaintiff converted and re-submitted the Wasim Telegram exports in Microsoft Word format; AAA accepted the conversion and uploaded it.

64Z.    The November 14, 2025 WebFile file-type-asymmetry sequence is documentarily significant at four layers. First, the AAA WebFile case-management system architecturally cannot accept .zip, .html, or .json file types. Second, the architectural limitation applies symmetrically to Defendants' .zip surveillance-video production AND to Plaintiff's native-format Wasim Telegram .html and .json exports — the precise documentary substrate of Sections A through B.1 above containing the verbatim December 23, 2023 self-exclusion plea, the January 10, 2024 financial-collapse disclosure, the January 18, 2024 Stake.us suspension letter, and the August 16, 2022 Stake.com compliance-team KYC-evasion arrangement. Third, AAA permitted Plaintiff to convert his native-format .json/.html exports to a Microsoft Word format for re-submission; the Word-format conversion, however, strips the cryptographic provenance and structural metadata that establish the native-format files' authenticity under Federal Rules of Evidence 901(b)(9) and 902(13). Fourth, the substantive consequence is that the AAA WebFile case record now contains an authentication-stripped derivative of Plaintiff's core documentary evidence rather than the native-format originals, while Defendants — having the institutional resources and counsel infrastructure to transmit their excluded production through an off-record password-protected Dropbox channel — preserved their evidence intact outside the WebFile retention framework. The file-type-asymmetry sequence supports the inference that the AAA WebFile system is architecturally configured in a manner that operationally disfavors the production of native-format digital communications evidence — the precise evidence type on which gambling-addiction claimants such as Plaintiff are most likely to rely.

**N.2.2. The Calhoun-Supervised Procurement of the April 23, 2026 Interim Award and the May 8, 2026 Final Award: A Documented Seventeen-Day Race-Past-Federal-Forum Sequence.**

64AA. The April 23, 2026 "Interim Award and Order of Arbitrator" and the May 8, 2026 Final Award imposing $14,159.50 in fees and costs against Plaintiff are the operational product of a documented seven-step procurement architecture personally supervised by George R.

Calhoun, V ("Calhoun"), member of Ifrah PLLC and counsel of record for Defendant Sweepsteaks Limited d/b/a Stake.us. The procurement sequence is anchored at every step to verbatim sworn admissions made by Calhoun himself in his April 29, 2026 Declaration executed under penalty of perjury (the "Calhoun Declaration") and to dated documentary instruments preserved in the AAA WebFile. The sequence operated under the implicit and operationally indispensable institutional assumption — common to the WKS DARVO-delay-tactic pattern pleaded at Sections J through M.3 above — that Plaintiff's documented mental-health, financial, and gambling-addiction vulnerabilities would prevent the truth of the procurement sequence from ever surfacing in a federal forum.

64BB.  Calhoun's Personal Sworn Tie to the Two Operative Instruments. Calhoun executed the Calhoun Declaration on April 29, 2026 under penalty of perjury. The Declaration contains four sworn admissions personally tying Calhoun to both motion responses subsequently used to procure the Interim Award:

64BB.1.  Calhoun Declaration ¶ 1 (April 29, 2026): "I am member of Ifrah PLLC and attorney of record for Sweepsteaks Ltd. d/b/a Stake.us ('Respondent'), which is the Respondent in the above-captioned matter. I have been practicing law since 1997 and serve as leader of Ifrah PLLC's business litigation practice."

64BB.2.  Calhoun Declaration ¶ 2 (April 29, 2026): "I have made an appearance in this case, and I have also supervised the work of Ifrah PLLC associate attorney Steven Hess, who was admitted to practice in 2022."

64BB.3.  Calhoun Declaration ¶ 5 (April 29, 2026): "I was principally responsible for supervising the drafting of and revising Respondent's Recusal Motion Response and Emergency Motion Response."

64BB.4.  Calhoun Declaration ¶ 14 (April 29, 2026): "Attached hereto as Exhibit 4 is a true and correct copy of the Verified Complaint and Petition for Declaratory and Injunctive Relief, Accounting, and Damages, filed by Szymon Zawadzki in the Northern District of Illinois on April 21, 2026."

64BB.5.  The Ifrah PLLC fee chart attached as Exhibit 3 to the Calhoun Declaration further establishes specific dated personal-edit entries: (i) March 16, 2026 — "Review and edit recusal filing; initial review and edit of response to emergency motion" — 1.2 hours, $1,314.00; and (ii) March 17, 2026 — "Final comments to response to emergency motion" — 0.7 hours, $766.50. Calhoun's personal supervision of, and personal financial benefit from, the operative instruments is therefore not inferred — it is sworn under penalty of perjury and contemporaneously billed.

64CC.  The Sworn Citation Error to a Future Date. The Calhoun-supervised Recusal Motion Response, signed by Calhoun and dated March 16, 2026, cites "Preliminary Hearing Scheduling Order # 6 (Dec. 18, 2026) at 4." The cited date — December 18, 2026 — is a future date that did not exist at the time the response was drafted, signed, filed, or sworn to. The actual scheduling order is Preliminary Hearing Scheduling Order No. 6 dated December 18, 2025. The identical error is repeated in the Calhoun-supervised Emergency Motion Response: "Even putting aside the absence of an emergency or any basis to provide emergency 'relief,' Mr. Zawadzki's newest Emergency Motion is untimely, see Preliminary Hearing Scheduling Order # 6 (Dec. 18, 2026)…" The citation-to-a-future-date error is material at four layers: (i) it appears on a sworn fee-supported document supervised by an

attorney who self-identifies as having "been practicing law since 1997" and as "leader of Ifrah PLLC's business litigation practice"; (ii) Calhoun simultaneously characterized Plaintiff's pro se filings as "rambling," "barely comprehensible," and showing "disregard for documentation requirements"; (iii) the error functions as direct documentary projection of Calhoun's own carelessness onto Plaintiff while Calhoun extracts $14,159.50 in fees for the supervision of the work; and (iv) the error appears in the same sequence as the AAA bifurcation of Plaintiff's Emergency Motion and the forced record-scrubbing directive of March 25, 2026.

64DD. Step 1 — March 5, 2026 Setup and March 9-10, 2026 AAA Bifurcation. On March 5, 2026, Plaintiff served a thirteen-page Further Revised Consolidated Emergency Motion identifying fifteen substantive subject-matter sections and seeking nineteen specifically numbered categories of interim protective relief. On March 9, 2026, AAA issued correspondence directing Respondent to respond only to the arbitrator-recusal portion of the Emergency Motion. On March 10, 2026, AAA issued separate correspondence directing Respondent to respond to the remainder. The bifurcation operationally split a single integrated procedural-fraud motion into two artificially narrowed response tracks — each of which Calhoun subsequently treated as a separate fee-billable matter on the April 29, 2026 Calhoun Declaration fee chart, generating cumulative billable time that would not have been generated had the Emergency Motion been responded to as a single integrated motion.

64EE. Step 2 — March 16, 2026 Calhoun-Supervised Recusal Motion Response. On March 16, 2026, Steven Hess of Ifrah PLLC filed the Recusal Motion Response under Calhoun's sworn supervision (Calhoun Declaration ¶ 5). The response framed Plaintiff's Emergency Motion as "a pattern of conduct by Mr. Zawadzki, who has accused everyone involved in this arbitration of some form of misconduct or fraud"; characterized Plaintiff as "using generative AI to produce his long, barely comprehensible motions"; denied that any ex parte communications had occurred; and re-characterized the verbatim "speedy recovery on your back" disclosure as "pleasantries." The response is the first of two operative DARVO instruments supervised by Calhoun.

64FF. Step 3 — March 17, 2026 Calhoun-Supervised Emergency Motion Response. On March 17, 2026, Hess filed the Emergency Motion Response under Calhoun's sworn supervision. The response addressed each of Plaintiff's nineteen requests for interim protective relief seriatim, deploying the same mootness scaffold across nearly every answer: the request was either (a) moot because AAA had "initiated a review," (b) moot because the Arbitrator would address it at the upcoming hearing, or (c) untimely under Scheduling Order No. 6 deadlines. The mootness scaffold appears expressly in Answers 1 ("Accordingly, this request is moot"), 2 ("Accordingly, this request is moot"), 4 ("moot because the arbitrator has already provided"), 5 ("this request is moot"), 13 ("it is moot because Respondent will provide this documentation at trial"), and is incorporated by reference in Answers 10 and 15. The Emergency Motion Response is the second operative DARVO instrument supervised by Calhoun.

64GG. The Six Structural Contradictions in the Calhoun-Supervised Responses. The Calhoun-supervised Recusal Motion Response and Emergency Motion Response are internally and inter-document contradictory at six identifiable layers, each anchored to verbatim Calhoun-supervised text:

64GG.1. Contradiction B-1 — The Mootness Contradiction: The Calhoun-supervised Emergency Motion Response responds to nearly every category of pre-trial protective relief sought by Plaintiff with some variant of the statement "the Arbitrator has already indicated that he would rule on Mr. Zawadzki's motion at the trial." But the relief Plaintiff sought — administrative stay, recusal review, source-ledger production, evidence preservation, anti-retaliation order, status-quo escrow, non-contact order — was procedural and preservation relief designed by definition to be granted before the hearing. Deferring preservation relief to the very hearing that preservation was designed to safeguard renders the relief unavailable to Plaintiff as a matter of operational logic. The mootness scaffold is therefore not a substantive legal objection — it is a circular procedural device that converts every interim protective request into a non-request by routing it to a future event the request was designed to interrupt.

64GG.2. Contradiction B-2 — The Source-Record Asymmetry: On November 13, 2025, Calhoun and Hess objected to Plaintiff's discovery requests for transaction-level ledgers, internal repositories, KYC checks, fraud-risk flags, affiliate-side notes, VIP communications, and internal communications on the ground that the information was "irrelevant, disproportionate, or beyond the scope of the dispute." On February 25, 2026, Calhoun then submitted Respondent's Pre-Trial Brief which relied on the exact internal figures $488,389.73 spent, $619,936.28 redeemed, and $131,546.55 "pocketed" — figures that could only be derived from the same internal records he had three months earlier characterized as "irrelevant" and "beyond the scope." On March 17, 2026, the Calhoun-supervised Emergency Motion Response defended that selective-disclosure asymmetry by stating that Plaintiff has "already had an opportunity to seek document production" and that "Respondent has already provided the records for his purchases and redemptions." The contradiction operates as a one-way ratchet: Respondent uses the internal figures offensively to support fee-shifting against Plaintiff, but Plaintiff cannot subject those figures to audit even when they are the operative basis for a fee-shifting demand against him.

64GG.3. Contradiction B-3 — The Payment-Cutoff Retaliation Admission Reframed as Plaintiff's Fault: The Calhoun-supervised Emergency Motion Response contains the following dispositive verbatim admission at Answer 9: "Respondent ceased making payments to Mr. Zawadzki because Mr. Zawadzki is in the process of suing Respondent. That is a natural, and predictable, response to being sued." The same admission appears in the Recusal Motion Response: "After this arbitration was filed, Respondent identified the continued payments and chose to terminate its commercial relationship with Respondent. That decision was an entirely predictable consequence of Claimant's own decision to bring this action." These verbatim statements establish, in counsel's own words, that (a) Respondent had an ongoing historical revenue stream to Plaintiff before the litigation; (b) Respondent identified and ceased those payments specifically because Plaintiff brought this action; and (c) the cessation was framed as a "natural" and "entirely predictable" consequence of litigation. The verbatim admission supplies the causal-nexus element for retaliation under 815 ILCS 505/2 and 815 ILCS 505/10a and supplies the constructive-coercion element for the FAA § 10(a)(1) "undue means" vacatur ground reserved for the August 10, 2026 motion to vacate. The Calhoun-supervised response then attempts to convert that admission into Plaintiff's fault by stating that Plaintiff "does not even allege otherwise" that the payments were owed — ignoring that the historical pattern of payment, the litigation-linked cessation, and the addiction-context economic pressure together establish the retaliation claim irrespective of any contractual entitlement.

64GG.4.     Contradiction B-4 — The Forum-Control Contradiction: The Calhoun-supervised Emergency Motion Response, at Answer 16, states: "His complaint concerning the administration of the case through the AAA rather than the courts is a complaint that his counsel acted without his authority. That is an issue between Claimant and his former counsel and does not alter the fact that this proceeding is the appropriate and agreed forum for the resolution of disputes. If Claimant's prior counsel committed wrongdoing, Claimant's remedy is against that former counsel, not the AAA or Respondent." The framing is contradicted by the very documentary record that Calhoun himself preserved as Source Exhibits B (August 27, 2024 AAA closure), C (September 12, 2024 AAA confirmation that case remained closed absent claimant confirmation to reopen), D (September 13, 2024 former-counsel reopening email), E (September 20, 2024 AAA protocol-waiver requirement), G (February 4, 2025 AAA abeyance letter), and the November 13, 2025 discovery objections, the February 25, 2026 pre-trial brief, the March 16-17, 2026 motion responses, and the April 29, 2026 fee declaration — all of which were filed by Respondent's counsel through the reopened arbitral posture. Calhoun cannot simultaneously characterize the forum-control issue as a former-counsel-only issue and continue to extract fee sanctions from the reopened forum that the disputed reopening produced.

64GG.5.     Contradiction B-5 — Preservation-as-Late-Discovery: The Calhoun-supervised Emergency Motion Response, at Answer 14, characterizes Plaintiff's preservation and litigation-hold request as untimely "late discovery": "Mr. Zawadzki has provided no explanation why a preservation hold order would be required or beneficial at this stage of the case. Discovery closed and trial is imminent." The characterization is structurally wrong as a matter of law: a litigation-hold duty is triggered by foreseeability of relevant litigation, is independent of the discovery calendar, and operates as a continuing duty regardless of whether the requesting party has propounded contemporaneous discovery. The Calhoun-supervised response also acknowledges that "deleted VIP messaging accounts and ephemeral communication channels are already part of the record" — conceding the very spoliation risk that justifies the preservation order — while simultaneously characterizing the preservation request as procedurally untimely.

64GG.6.     Contradiction B-6 — Conclusory No-Prejudice Denials: The Calhoun-supervised Emergency Motion Response responds to Plaintiff's sanctions and supervisory-corrective-action requests (Answers 17 and 19) with the identical conclusory statement: "Respondent objects to this request because Mr. Zawadzki has not established that he has suffered any procedural or substantive prejudices." The conclusory denial does not engage with: (a) Source Exhibit B (the August 27, 2024 AAA closure letter); (b) Source Exhibit C (the September 12, 2024 AAA closure-confirmation requirement); (c) Source Exhibit E (the September 20, 2024 AAA protocol-waiver letter identifying material due-process deviations); (d) Source Exhibits G and H (the January 14/15, 2025 abeyance imposed without Plaintiff's knowledge); (e) Source Exhibit I (the May 9, 2025 confirmation that Plaintiff "was not told of settlement/abeyance issues and became aware only after his own status inquiry"); (f) Source Exhibit K (the February 25, 2026 Pre-Trial Brief asserting exact internal figures); (g) Source Exhibit O (the Final Award imposing fee liability); (h) Source Exhibit Q (Plaintiff's sworn affidavit); and (i) the $0.00 / Undetermined claim-amount placeholder distortion. A conclusory denial of prejudice without engagement with the documentary record is not a substantive answer — it is a recitation device by which Calhoun procured the Interim Award without ever testing the record on which it rests.

64HH. The Twelve Calhoun-Supervised DARVO / Projection Moves. The Calhoun-supervised Recusal Motion Response and Emergency Motion Response contain twelve identifiable DARVO/projection moves, each anchored to verbatim Calhoun-supervised text and each operating as a documented Deny-Attack-Reverse-Victim-and-Offender device against a pro se gambling-addiction claimant:

64HH.1. Projection Move 1 — The "Generative AI" Slur. Calhoun-supervised Recusal Motion Response, Preliminary Statement (March 16, 2026): "Mr. Zawadzki appears to be using generative AI to produce his long, barely comprehensible 'motions'. Not only does this violate the rules of confidentiality, but it has taken up a considerable amount of Respondent's time on frivolous accusations." Calhoun-supervised Emergency Motion Response, Preliminary Statement (March 17, 2026): "Mr. Zawadzki's Emergency Motion is both untimely and an abuse of the arbitration process. He appears to have used generative AI to provide a poorly organized summary of this proceeding coupled with occasional interdictions that he is upset that Respondent is not paying him money. The rambling declarations of the Emergency Motion are meritless." Calhoun-supervised Emergency Motion Response, Answer 12 (March 17, 2026): "Mr. Zawadzki appears to be using generative AI for all of his responses in this proceeding. Respondent objects to sharing additional (and especially third-party) financial information with Mr. Zawadzki because Respondent's financial information will likely be uploaded into a generative AI system in violation of the confidentiality rules and the rights of those third parties." The "generative AI" characterization weaponizes confidentiality rules against Plaintiff to justify the source-record withholding addressed at Contradiction B-2 above. The slur operates as DARVO "Attack the Victim" by attacking Plaintiff's mental agency in producing the very documents that anchor the procedural-fraud record. The slur is itself projection because the Calhoun-supervised response simultaneously cites the future-dated Scheduling Order # 6 (Dec. 18, 2026) addressed at ¶ 64CC above — a textbook projection of the supervising attorney's own documentary defects onto the pro se claimant.

64HH.2. Projection Move 2 — The "Abuse the Arbitration Process" Framing. Calhoun-supervised Recusal Motion Response, Conclusion (March 16, 2026): "Mr. Zawadzki should not be permitted to continue to abuse the arbitration process. Although he is appearing pro se, his disregard for deadlines, documentation requirements, or any of the procedural issues have considerably increased the time and expense associated with this case." The same conclusion is repeated verbatim in the Calhoun-supervised Emergency Motion Response (March 17, 2026). The "abuse the arbitration process" framing is direct DARVO projection because the actual documentary record establishes the abuse pattern operated against Plaintiff, not by Plaintiff: (a) the August 27, 2024 AAA closure was caused by Respondent's own waiver-and-fee non-compliance; (b) the September 13, 2024 reopening was effected without Plaintiff's informed authorization; (c) the January 14/15, 2025 abeyance was imposed administratively without Plaintiff's notice or consent; (d) the November 21, 2024 settlement offer was concealed from Plaintiff by former counsel under the bilateral counsel-to-counsel "hold off on proceeding" agreement; (e) the November 13, 2025 Hess discovery production transmitted surveillance video of Plaintiff through a password-protected Dropbox folder outside the AAA WebFile retention framework; and (f) the April 22, 2026 Final Hearing was conducted ex parte at 9:08 a.m. CDT on the day after Plaintiff filed his federal forum-control complaint.

64HH.3.     Projection Move 3 — The "Hijack the Arbitration Process" Framing. Calhoun-supervised Emergency Motion Response, Answer 4 (March 17, 2026): "The mere fact that Mr. Zawadzki parted ways with his counsel does not permit him to hijack the arbitration process." The "hijack" framing operates as projection because the Calhoun-supervised Recusal Motion Response itself acknowledges in its preliminary statement that "Mr. Zawadzki and his counsel parted ways." The verb "parted ways" elides what Plaintiff's May 8, 2025 procedural-defect letter establishes: that Plaintiff withdrew his former counsel's representation specifically because of counsel's failure to inform him of the defendants' November 21, 2024 settlement offer, the AAA letters of November 8, December 9, and December 20, 2024, and the case being placed in abeyance. The Calhoun-supervised "hijack" framing characterizes a pro se claimant's lawful exercise of self-representation following counsel's documented non-disclosure as an act of process-abuse.

64HH.4.     Projection Move 4 — The "Paranoia" Characterization Replacing Sworn Disclosure. Calhoun-supervised Emergency Motion Response, Answer 6 (March 17, 2026): "Respondent objects to this request because Claimant's mere paranoia regarding potential ex parte communications does not warrant a response. Nevertheless, as explained in Respondent's Response to the Recusal Motion, Respondent again confirms that its counsel has never communicated, directly or indirectly, with Arbitrator Miller outside of the AAA process." Plaintiff did not request a finding of paranoia; Plaintiff requested a sworn declaration. The relief sought at Plaintiff's Request 6 was specifically: "A sworn declaration from Respondent's counsel stating whether any communications occurred with the Arbitrator outside Claimant's presence, directly or indirectly, and if so identifying the date, time, participants, and subject matter." The Calhoun-supervised response substitutes a footnote disclaimer for a sworn declaration and characterizes the request itself as the product of "mere paranoia" — a textbook DARVO attack on the victim's mental state.

64HH.5.     Projection Move 5 — The "Pleasantries" Re-Characterization of the "Speedy Recovery on Your Back" Disclosure. Calhoun-supervised Recusal Motion Response, Section II.i (March 16, 2026): "As the rescheduled hearing convened, Respondent's counsel made inquiries about Arbitrator Miller's health and recovery while the parties were coming onto the line. Respondent's counsel are unaware whether Mr. Zawadzki had not yet logged onto the hearing, or whether Mr. Zawadzki just did not hear the Arbitrator's statement. At the conclusion of the conference, Respondent's counsel wished Arbitrator Miller a speedy recovery. These pleasantries do not indicate 'unequal access' to the proceeding." The "pleasantries" framing fundamentally mischaracterizes the discrepancy that Plaintiff identified: the written scheduling chain shared with Plaintiff in August 2025 identified only "surgery" with no body part; during the September 3, 2025 hearing, Respondent's counsel stated near-verbatim "speedy recovery on your back" — the word "back" (the specific body part) was not in the written scheduling chain available to Plaintiff. The Calhoun-supervised response does not identify how counsel knew the body-part information; does not produce the asynchronous communication record by which the body-part information was transmitted; does not produce a sworn declaration; and simply restates the disclosure as "pleasantries" — a textbook minimization device that does not address the specific evidentiary discrepancy raised.

64HH.6.     Projection Move 6 — The Timeliness-Projection Inversion. Calhoun-supervised Recusal Motion Response, Section I (March 16, 2026): "Despite being made aware of the

February 26 deadline, Mr. Zawadzki waited until March 5 to file his rambling motion and offered no explanation for his delay." Calhoun-supervised Emergency Motion Response, Answer 3 (March 17, 2026): "As noted in Respondent's Request for an Extension of the Trial Date (Feb. 20, 2026), Respondent requests an extension of at least two weeks, until a date after Wednesday April 8, 2026, and which would be agreeable to the arbitrator and Mr. Zawadzki. Respondent notes that Mr. Zawadzki has still not provided any comment on Respondent's Request for an Extension…" The Recusal Motion Response attacks Plaintiff's March 5, 2026 filing as untimely under the February 25, 2026 deadline; the Emergency Motion Response one day later admits that Respondent itself requested a trial-date extension on February 20, 2026 — five days before the February 25, 2026 motions deadline that Plaintiff is said to have violated — because Respondent's own witnesses were unavailable. Calhoun simultaneously: (a) sought his own continuance because of Respondent witness scheduling; (b) attacked Plaintiff's motion as untimely under the same deadline-architecture; and (c) characterized any further delay caused by Plaintiff as "material prejudice."

64HH.7.        Projection Move 7 — The "Witness Prejudice" Inversion. Calhoun-supervised Emergency Motion Response, Answer 3 (March 17, 2026): "Respondent and the witnesses who are currently scheduled to appear at the March 25 hearing (despite their vacation schedule and the drastic time difference) are currently left in limbo, uncertain whether the date of the hearing will be updated. Claimant's Emergency Motion, which was submitted after the Request for an Extension, materially prejudices Respondent's witnesses by preventing those witnesses from finalizing their schedules." Plaintiff is the gambling-addiction claimant whose career as a Twitch streamer collapsed and who has experienced documented suicidality. Respondent's "witnesses" are Stake.us employees and contractors based in Melbourne, Australia who have institutional support, scheduled-out vacation plans, and corporate logistics support. The Calhoun-supervised response frames Respondent's witnesses' scheduling uncertainty as "material prejudice" while characterizing Plaintiff's documented insolvency, suicidality, and career-collapse as having produced "no procedural or substantive prejudices."

64HH.8.        Projection Move 8 — The "Money Demand" Re-Characterization. Calhoun-supervised Emergency Motion Response, Answer 9 (March 17, 2026): "Respondent objects to this request. This request is little more than an assertion that Respondent should pay him money. Respondent owes no money to Mr. Zawadzki, and he does not even allege otherwise." Calhoun-supervised Emergency Motion Response, Answer 4 (March 17, 2026): "The crux of his complaint appears to be that he is upset that Respondent terminated his account, and that he would like Respondent to pay him money." The "money demand" re-characterization operates as DARVO by reducing Plaintiff's integrated procedural-fraud, retaliation, and irreparable-harm record to a simple monetary complaint. The Emergency Motion sought, among other things: an administrative stay, recusal review, a sworn declaration regarding ex parte communications, a sworn explanation regarding the "speedy recovery on your back" disclosure, a no-contact order targeting VIP gambling-inducement channels to a known addict during active litigation, evidence preservation orders, source-record production, and supervisory institutional corrective action. None of these requests is reducible to a request that "Respondent should pay him money."

64HH.9.        Projection Move 9 — The Restrictive Retaliation-Doctrine Argument. Calhoun-supervised Emergency Motion Response, Answer 9 (March 17, 2026): "Under Illinois law, a claim of retaliation requires three elements: '(1) [Claimant] was engaged in a protected activity;

(2) [Claimant's] employer committed a material adverse act against [him]; and (3) a causal nexus existed between the protected activity and the adverse act.' Spencer v. Ill. Human Rights Comm'n, 2021 IL App (1st) 170026, ¶ 40 (2021)." Calhoun cites Spencer v. Illinois Human Rights Commission — a state-employment discrimination case construing the Illinois Human Rights Act — to defeat Plaintiff's request for an anti-retaliation order. The case is non-controlling on Plaintiff's actual retaliation theory, which arises under (a) the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 and 815 ILCS 505/10a (which prohibits retaliation against consumers who pursue claims); (b) the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (which classifies gambling disorder as a covered disability when accompanied by the documented impairments Plaintiff has disclosed); and (c) the federal common-law doctrine of bad-faith litigation conduct under FAA § 10(a)(1). Calhoun selects the narrowest possible retaliation doctrine, applies it to a context to which it does not apply, and uses the resulting analytical failure as a basis to deny the request.

64HH.10.    Projection Move 10 — The "Pro Se Misunderstanding" Characterization. Calhoun-supervised Emergency Motion Response, Conclusion (March 17, 2026): "His misunderstanding of the arbitration process is not a reason to extend this litigation." Calhoun-supervised Emergency Motion Response, Answer 4 (March 17, 2026): "Thus, the Claimant's request, like many of the other requests included in the Emergency Motion, would be easily addressed if Mr. Zawadzki were to familiarize himself with the rules governing the arbitration. Pro se litigants are typically offered more leniency. However, Mr. Zawadzki has abused his status as a pro se party…" The "pro se misunderstanding" characterization attempts to convert Plaintiff's documented procedural-fraud record into the product of Plaintiff's own non-familiarity with the rules; inverts the canonical pro se leniency principle by characterizing Plaintiff's pro se status as itself a procedural abuse; and ignores that Plaintiff's pro se posture was caused by documented non-disclosure by former counsel followed by AAA-side imposition of the asymmetric cc-protocol on April 21, 2025 (¶ 64F above).

64HH.11.    Projection Move 11 — The Confidentiality-Rule Weaponization. Calhoun-supervised Emergency Motion Response, Answer 12 (March 17, 2026): "Respondent objects to sharing additional (and especially third-party) financial information with Mr. Zawadzki because Respondent's financial information will likely be uploaded into a generative AI system in violation of the confidentiality rules and the rights of those third parties." The confidentiality-rule weaponization functions as projection of Defendants' own confidentiality conduct onto Plaintiff. The November 13, 2025 Hess Discovery Production transmitted Stake-internal surveillance video of Plaintiff through a password-protected Dropbox folder (password "Ifrah123") outside the AAA WebFile retention framework — a configuration that itself raises serious confidentiality, chain-of-custody, and retention-control concerns. The Calhoun-supervised response objects to source-record discovery to Plaintiff on confidentiality grounds, while Respondent's own out-of-WebFile productions to Plaintiff did not generate the same confidentiality concern when the production direction was reversed.

64HH.12.    Projection Move 12 — The Conclusory "No Prejudice" Refrain. The Calhoun-supervised Emergency Motion Response responds to multiple substantive procedural-fraud requests with the identical conclusory statement: "Respondent objects to this request because Mr. Zawadzki has not established that he has suffered any procedural or substantive prejudices." This is the operative DARVO closing device: a categorical denial of prejudice on a documentary

record that affirmatively establishes career-interruption, documented suicidality, $318,042.98 minimum direct account-loss floor, $2,597,042.64 Kraken outbound transfer volume, litigation-linked cutoff of historical affiliate revenue, and $14,159.50 fee liability imposed on a documented insolvency claimant.

64II.    Step 4 — March 25, 2026 Forced Record-Scrubbing Directive. On March 25, 2026, AAA Director of ADR Operations Barbara Phariss issued a directive requiring Plaintiff to remove portions of his consolidated filings under threat of administrative non-action. The forced record-scrubbing directive operationally aligned the AAA institutional record with the Calhoun-supervised mootness framing. After this directive, the documentary record on which the Arbitrator and subsequent reviewing tribunals would rely was an institutionally curated record that no longer contained the full substance of Plaintiff's pre-curation submissions.

64JJ.    Step 5 — April 21-22, 2026 Federal Filing Followed by Ex Parte Final Hearing. On April 21, 2026, Plaintiff filed the Verified Complaint and Petition for Declaratory and Injunctive Relief in this Court (Case No. 1:26-cv-04478). Notwithstanding the federal forum-control filing, on April 22, 2026 at 9:08 a.m. CDT — less than twenty-four hours later — the AAA held the Final Hearing in this matter without Plaintiff's personal attendance, on Arbitrator-side correspondence transmitted from a personal Microsoft Hotmail account. The temporal proximity eliminates the possibility that the Arbitrator and Respondent's counsel could have been unaware of the federal filing: Calhoun annexed a true and correct copy of the federal complaint as Exhibit 4 to his April 29, 2026 fee declaration (Calhoun Declaration ¶ 14 quoted at ¶ 64BB.4 above), establishing that he had reviewed the complaint. The Final Hearing therefore proceeded with full notice that Plaintiff had filed a federal forum-control action.

64KK.    Step 6 — April 23, 2026 Interim Award on a Curated Record. On April 23, 2026 — one day after the ex parte Final Hearing and approximately forty-eight hours after Plaintiff filed his federal forum-control complaint — Arbitrator Richard L. Miller II issued the "Interim Award and Order of Arbitrator" that the Calhoun Declaration would later identify as the authorizing instrument for Respondent's fee application. The Interim Award was therefore entered on a record stripped of: (a) Plaintiff's native-format Wasim Telegram .json/.html exports (excluded by AAA WebFile architectural file-type limitation pleaded at ¶¶ 64X–64Z); (b) Plaintiff's pre-record-scrubbing Emergency Motion materials; (c) Plaintiff's personal testimony; and (d) Plaintiff's opportunity to respond to the Calhoun-supervised characterizations of "rambling," "barely comprehensible," "generative AI," "abuse," "hijack," "paranoia," and "misunderstanding." The Interim Award is therefore not the product of an adversarial process on a complete record; it is the operational consequence of a documented procurement sequence in which Calhoun: personally supervised the documentary instruments that produced the no-prejudice findings; benefitted from the AAA bifurcation of Plaintiff's motion; benefitted from the forced record-scrubbing directive; benefitted from the ex parte Final Hearing posture; and then within six days of the Interim Award executed under penalty of perjury a $14,159.50 fee declaration drawing the precise fees authorized by the Interim Award itself.

64LL.    Step 7 — April 29, 2026 Calhoun Fee Declaration and May 8, 2026 Final Award. Calhoun executed the Fee Declaration on April 29, 2026 — six days after the Interim Award and eight days after Plaintiff's federal forum-control complaint. Arbitrator Miller entered the

Final Award on May 8, 2026 — fifteen days after the Interim Award and seventeen days after Plaintiff's federal filing. The fee imposed in the Final Award is the precise $14,159.50 amount declared in the Calhoun Fee Declaration. The procurement sequence is therefore complete: Calhoun personally supervised the responses; the Arbitrator authorized fees; Calhoun declared the fees; the Arbitrator entered the Final Award assessing the declared fees. The seventeen-day window from Plaintiff's federal forum-control filing to the Final Award is the documented seventeen-day-race-past-federal-forum sequence.

64MM.    The Seven-Keystone Coercive-Control Sequence Surrounding the Procurement. The Calhoun-supervised procurement of the Interim Award and the Final Award is the institutional product of a longer coercive-control sequence anchored to the verbatim documentary record at seven keystones:

64MM.1.    Keystone 1 — Concealed November 21, 2024 Bilateral Off-Record "Hold-Off" Agreement. The May 9, 2025 AAA confirmation/ready-to-proceed email chain preserves the verbatim Ifrah PLLC letter that Plaintiff quoted back into the record on May 9, 2025: "We last conveyed an offer to you on November 21, 2024, after which we agreed to inform the AAA that we would hold off on proceeding while the parties engaged in further discussion." The plural pronoun "we agreed" establishes a bilateral counsel-to-counsel agreement between Ifrah PLLC (Calhoun and his colleagues) and Wade Kilpela Slade LLP (Plaintiff's former counsel) to suspend the AAA proceedings without informing Plaintiff. This off-record bilateral agreement was the operative predicate for the January 14/15, 2025 administrative abeyance pleaded at ¶ 60 above, which Plaintiff did not learn of until his February 4, 2025 status-inquiry call to AAA.

64MM.2.    Keystone 2 — The November 19-20, 2025 Settlement-Call and VIP-Outreach Sequence. On November 19, 2025, a 25-minute settlement call took place between Plaintiff and Respondent's counsel through 1(202) 524-4147. On November 20, 2025 — the very next day — a Stake-linked VIP Telegram account identified as @dunjaVIP made first contact with Plaintiff. The @dunjaVIP account subsequently appeared as "Deleted Account." The 24-hour sequencing between the settlement call and the VIP Telegram outreach, followed by the ephemeral deletion of the VIP account, supports the inference that the November 20 contact was operationally coordinated with the November 19 settlement posture. The @dunjaVIP communication is therefore not random platform outreach — it is a documented contact made the day after Plaintiff raised litigation-abuse concerns in a 25-minute settlement call, directed at a person whose underlying claim is gambling-addiction harm.

64MM.3.    Keystone 3 — Litigation-Linked Cessation of Historical Affiliate Revenue Stream. The Calhoun-supervised verbatim admissions quoted at Contradiction B-3 (¶ 64GG.3 above) establish that immediately after Plaintiff brought this action: (a) Plaintiff was contacted by an ephemeral VIP Telegram account (Keystone 2); (b) Plaintiff's historical affiliate revenue stream of approximately $2,000 to $4,000 per month was cut off; and (c) Respondent's counsel candidly admitted on the record that the cessation was caused by the litigation. The combined effect is a documented economic-pressure mechanism imposed on a gambling-addiction claimant during active litigation.

64MM.4.    Keystone 4 — March 5, 2026 Account-Access and Cyber-Integrity Disruption. Plaintiff's March 5, 2026 notice identifying account-access and security disruption affecting his ability to access digital evidence in proximity to the procedural-fraud filings (cross-referenced to the ten-layer cyber-tampering corroboration pleaded at ¶¶ 42-43D above and to the Stage 2 Item

1G VirusTotal Supplement four-file malware cluster filed contemporaneously herewith) establishes that the procurement sequence was operationally coordinated with computer-tampering activity directed at Plaintiff's ability to participate in the proceeding. The Calhoun-supervised Emergency Motion Response does not engage with the access-disruption notice, characterizing the underlying motion as "poorly organized" and "rambling" rather than addressing the substantive cyber-integrity allegations.

64MM.5.　　　Keystone 5 — November 13, 2025 Out-of-WebFile Surveillance-Video Production. On November 13, 2025, Hess of Ifrah PLLC transmitted to Plaintiff Respondent's discovery responses, document production materials, and "a video of communications that [Plaintiff] had with the Respondent" through a password-protected Dropbox folder with the password "Ifrah123" — outside the AAA WebFile retention system. The out-of-WebFile production architecture establishes that Defendants had access to comprehensive Plaintiff-communications surveillance archives developed through Stake-internal monitoring, and that those archives were transmitted to Plaintiff in a password-protected channel that placed the surveillance materials outside the regulated case-management retention framework. The architecture itself is a coercive-control instrument: Defendants control the surveillance archive, Defendants control which portions are produced, and Defendants control the production channel.

64MM.6.　　　Keystone 6 — April 22, 2026 Ex Parte Final Hearing on the Day After Federal Filing. The temporal proximity between Plaintiff's April 21, 2026 federal forum-control filing and the April 22, 2026 ex parte Final Hearing — re-pleaded at ¶ 64JJ above — is the documentary apex of the coercive-control sequence.

64MM.7.　　　Keystone 7 — The Closing Loop: Federal Filing → Ex Parte Hearing → Interim Award → Fee Declaration → Final Award. The closing seventeen-day loop is: April 21, 2026 (Plaintiff files federal complaint) → April 22, 2026 (AAA holds ex parte Final Hearing on day after federal filing) → April 23, 2026 (Interim Award entered) → April 29, 2026 (Calhoun Fee Declaration annexing federal complaint as Exhibit 4) → May 8, 2026 (Final Award imposing $14,159.50 fee against Plaintiff). The loop is a documented seventeen-day sequence during which the AAA proceeding raced past Plaintiff's federal forum-control action and concluded with a fee award against Plaintiff specifically tied to Plaintiff's prior procedural-fraud filings. The coercive-control architecture is the imposition of a $14,159.50 fee on a documented gambling-addiction claimant who had filed a federal forum-control action seventeen days earlier and who has been granted in forma pauperis status by this Court on April 22, 2026 (Dkt. 6).

64NN. Six Categories of Irreparable Harm Established by the Documentary Record. The Calhoun-supervised Emergency Motion Response repeatedly characterized Plaintiff's harm record as "no procedural or substantive prejudices." The documentary record establishes the opposite at six anchored categories:

64NN.1.　　　Career Interruption — Twitch Streaming and Content-Creation Profession. Plaintiff's pre-litigation career was online content creation and livestreaming through twitch.tv/the_dent and x.com/simonzawa, together with related public-facing social profiles. Plaintiff's last consistent streaming schedule collapsed because the gambling addiction became severe enough that he isolated from his community and could not function reliably. Plaintiff attempted to stream again in September 2024 after a suicidal episode and fell back into the addiction; he attempted to stream again in December 2024 and that effort also ended in relapse. Career interruption is per se irreparable harm under settled Seventh Circuit doctrine.

64NN.2. Documented Suicidality. Plaintiff's May 20, 2025 email to Ifrah PLLC counsel (pleaded at ¶ 63D above) constitutes a direct suicidality disclosure to Defendants' counsel of record. Plaintiff's February 6, 2025 "Two Suicide Attempts" email to Wade Kilpela Slade LLP establishes the suicidality disclosure to former counsel forty-three days before the March 21, 2025 WKS withdrawal pleaded at ¶ 60B above. Plaintiff's September 2024 streaming attempt after a "suicidal episode" is independently documented. The suicidality record is itself a category of irreparable harm and is the human-cost dimension of the coercive-control sequence.

64NN.3. Minimum Direct Account-Loss Floor of $318,042.98. Plaintiff's Emergency Motion at Section IX identifies a present minimum direct stablecoin net-loss floor of $193,042.98 across three accessible crypto-casino accounts, with a fourth inaccessible account reflecting approximately $125,000 of additional losses verifiable through platform-side records. The combined minimum direct account-loss floor is $318,042.98 — conservative, because it excludes non-stablecoin losses, the fifth unaccounted-for account, statutory multipliers, punitive damages, mental anguish, and lost-income categories.

64NN.4. $2,597,042.64 Kraken Outbound Transfer Volume. Plaintiff's Emergency Motion at Section IX identifies $2,597,042.64 in Kraken outbound transfers during the statement period reviewed, with approximately 90% directed to crypto-casino destinations, producing a provisional gross outbound-to-casino transfer volume of approximately $2,337,338.38 from Kraken alone. The figure independently corroborates the scale of gambling-directed outbound funding and the inadequacy of Respondent's selective $488,389.73 / $619,936.28 / $131,546.55 framing.

64NN.5. Litigation-Linked Cutoff of Historical Affiliate Revenue Stream. The Calhoun-supervised verbatim admission at Contradiction B-3 (¶ 64GG.3 above) establishes the litigation-linked cessation of the historical $2,000–$4,000 monthly affiliate revenue stream. The cessation operates as ongoing irreparable harm because the foregone monthly payments cannot be reconstructed retroactively if the Court ultimately finds in Plaintiff's favor on the merits.

64NN.6. Imposition of $14,159.50 Fee Liability on a Documented Insolvency Claimant. The May 8, 2026 Final Award imposes $14,159.50 in fees and costs on Plaintiff. Plaintiff is a documented insolvency claimant for whom this Court has granted in forma pauperis status on April 22, 2026 (Dkt. 6). The imposition of fee liability on a documented IFP claimant is itself a category of irreparable harm: the fee award operates as an ongoing collection threat against a person whose career has been interrupted, whose affiliate revenue stream has been cut off, who has experienced documented suicidality, and whose underlying claim involves gambling-addiction harms.

64OO. The Calhoun Procurement Sequence Supports the Reserved FAA § 12 Vacatur Grounds. The documentary record at ¶¶ 64AA–64NN supports each of the reserved vacatur grounds for the August 10, 2026 FAA § 12 motion. Under FAA § 10(a)(1), the procurement sequence at ¶¶ 64DD–64LL and the coercive-control sequence at ¶¶ 64MM.1–64MM.7 establish that the Final Award was "procured by corruption, fraud, or undue means." Under FAA § 10(a)(2), the forced record-scrubbing, the personal-Hotmail arbitrator-correspondence pattern, and the day-after-federal-filing ex parte Final Hearing establish "evident partiality." Under FAA § 10(a)(3), the twelve verbatim DARVO/projection moves at ¶ 64HH.1–64HH.12 and the source-record asymmetry at Contradiction B-2 (¶ 64GG.2) establish "misbehavior by which the rights of any party have been prejudiced." Under FAA § 10(a)(4), the arbitrator

"exceeded [his] powers, or so imperfectly executed them" by entering the Interim Award and Final Award on the curated record produced by the documented procurement sequence. The procurement sequence further supports manifest-disregard relief to the extent available in the Seventh Circuit under Wise v. Wachovia Securities, LLC, 450 F.3d 265 (7th Cir. 2006).

64PP.   Reserved Sanctions Theories Against Counsel of Record. The documentary record at ¶¶ 64AA–64NN further supports reserved sanctions theories against Calhoun and Ifrah PLLC under: (a) Illinois Supreme Court Rules of Professional Conduct 3.3 (candor toward the tribunal), 3.4 (fairness to opposing party and counsel), and 8.4 (misconduct, including conduct involving dishonesty, fraud, deceit, or misrepresentation); (b) 28 U.S.C. § 1927 (multiplying proceedings unreasonably and vexatiously); (c) Federal Rule of Civil Procedure 11 (frivolous filings); and (d) the Court's inherent authority to sanction bad-faith conduct under Chambers v. NASCO, Inc., 501 U.S. 32 (1991). Each potential sanctions theory is anchored to a specific dated documentary instrument supervised, edited, or sworn to by Calhoun.

### N.3. Consolidated Verbatim Documentary Record: Verbatim Quotations from the Preserved Email, Discord, Telegram, and AAA Correspondence Anchoring the Allegations Above.

64QQ. The verbatim quotations compiled below are extracted directly from Plaintiff's preserved Gmail, Discord, and Telegram archives and from the verbatim AAA correspondence record. Each quotation is presented in standout indented italic format with a bold attribution line identifying sender, recipient, date, and time of transmission. The quotations are organized chronologically and are cross-referenced to the substantive paragraphs of this First Amended Complaint at which each event is pleaded. This section preserves the verbatim documentary record without paraphrase and is intended to support production, authentication, and impeachment without further argumentative framing.

### Subsection N.3.1 — The March 6, 2024 Plaintiff Disclosure to Edelson PC (Pre-WKS Engagement Baseline).

64RR.  On March 6, 2024, Plaintiff transmitted to Edelson PC intake specialist Adrienne Graham at `agraham@edelson.com` a comprehensive disclosure email titled "Re: Following Up On Your Potential Case Inquiry." The verbatim disclosures preserved in that email are:

**Plaintiff to Edelson PC (Adrienne Graham) — Re: Following Up On Your Potential Case Inquiry — March 6, 2024:**

> the compensation I am seeking includes Vindictive damages resulting in an attempted suicide attempted due to crippling gambling caused from the Casino (which can be proven via texts/files sent to family and friends, along with their testimonies, also which I am going to be talking about with my Doctor on 3/6/2024)

**Plaintiff to Edelson PC — March 6, 2024:**

> Willingful Gross Negligence from my Stake 'manager, named Wasim' resulting in a crippling gambling addiction which lead to my inability to stream content which was my main source of income (I had notified my 'Stake Manager' on December 23, 2023 that I was gambling as a coping tool due to past traumas and it developed into something and currently obligations I have, which included being a caretaker for my none verbal Autistic Brother and requested his

> assistance/guidance to stop.) I have all logs between me and him saved and they are still viewable as he hasn't attempted to delete them yet. He responded to me that he was on 'vacations' and will return 'tomorrow' only to further reply 26 days LATER from the date in which I originally contacted him!

**Plaintiff to Edelson PC — March 6, 2024:**

> During this time I had wired $70k more out of my bank + any Crypto I had left and gambled it away Stake (which ironically Stake.US/Stake.com has a clause in their Terms of Service which states they are not responsible for any losses you incur BEYOND 30 days if taken to Arbitration)

**Plaintiff to Edelson PC — March 6, 2024:**

> I have most if not all of the crucial information and evidence saved in original JSON, HTML, PNG, and screenshot formats in which all the metadata is completely Original and un-altered.

### Subsection N.3.2 — The May 21, 2024 Slade Forward to the Wade Kilpela Slade LLP Team.

64SS.  On May 21, 2024 at 5:29 PM, attorney David F. Slade (then operating from `slade@wh.law`) forwarded Plaintiff's March 6, 2024 Edelson PC disclosure email to the WKS team (Edwin Kilpela `ek@waykayslay.com`; James LaMarca `jlamarca@waykayslay.com`; Kristy Graham `kkg@waykayslay.com`; and Slade's own `slade@waykayslay.com`). The verbatim text of Slade's forward at Gmail message identifier 18f9d46a78e0e876 reads:

**David Slade (Wade Kilpela Slade LLP) to WKS team — Day-One disclosure forward — May 21, 2024, 5:29 PM:**

> And I'll spare Szymon the trouble of having to recount everything again, as he just sent me the attached emails, which he'd sent to Edelson (and which prompted them to reach out to us)

### Subsection N.3.3 — The November 1, 2024 LaMarca Call Summary (WKS Knowledge of Continuing Losses).

64TT.  On November 1, 2024, following a phone call earlier that morning between Plaintiff and James LaMarca / Edwin Kilpela, LaMarca emailed Plaintiff a "Stake Arbitration: Call Summary" at Gmail message identifier 192e853b1c281bff. The verbatim text reads:

**James LaMarca (Wade Kilpela Slade LLP) to Plaintiff — Stake Arbitration: Call Summary — November 1, 2024:**

> While you have lost approximately $500,000 this year, only roughly $250,000-300,000 occurred before the filing of the arbitration. We are going to pursue settlement talks with Stake and will counter their $10,000 opening offer with $225,000 and see where it goes from there.

64UU. The November 1, 2024 LaMarca admission is dispositive on the knowledge prong of every claim asserted in this First Amended Complaint. By WKS's own contemporaneous documentation, the firm understood that Plaintiff had lost roughly $250,000–$300,000 in additional gambling activity on Defendants' platforms during the five months after the June 24, 2024 arbitration filing — a continuing-loss pattern observable to counsel through Plaintiff's Stake account interface and through Stake's settlement-negotiation responses —

and treated that continuing-loss activity not as a trigger to seek a temporary restraining order, a duty-of-care intervention, or a referral for crisis support, but as a settlement-leverage frame.

### Subsection N.3.4 — The December 19–28, 2024 Plaintiff Disclosure / WKS Scope-Narrowing Sequence.

64VV. On December 19, 2024 at 01:55 UTC, Plaintiff transmitted to LaMarca at Gmail message identifier 193dca0bd7526848 the following mental-health-decline-and-bereavement disclosure:

**Plaintiff to James LaMarca (Wade Kilpela Slade LLP) — Mental-health disclosure — December 19, 2024:**

> Hey James, just checking in for the month. Unrelated and not to burden my mental health, but it's been on a bit of a steep decline lately after losing my Partner of 4 years. Guess I'm just holding out, hoping for a bit of light to shine through and lighten the weight of everything.

64WW. On December 20, 2024, Plaintiff transmitted to the WKS team a follow-up disclosure that Plaintiff was a victim of "malignant covert narcissistic abuse" from a former partner who was "exploiting a gambling addiction with relentless gifts and false claims, entrapping, and threatening with false claims of POTENTIAL legal action." Plaintiff explicitly sought guidance on intentional infliction of emotional distress and tort-of-negligence theories.

64XX. On December 23, 2024, Edwin Kilpela responded with the WKS scope-narrowing communication:

**Edwin Kilpela (Wade Kilpela Slade LLP) to Plaintiff — Scope-narrowing reply — December 23, 2024:**

> we cannot serve as counsel with regard to the issues you describe below and our representation of you will remain confined to your claims against Stake. I'm sorry we cannot be of more help.

64YY. On December 28, 2024, Kilpela reiterated the scope-narrowing posture with the verbatim statement that "our representation of you will need to remain strictly confined to your claim against Stake." WKS's scope-narrowing — issued in direct response to Plaintiff's December 2024 disclosures of acute mental-health vulnerability — is the operative DARVO-as-delay-tactic pattern: when confronted with the client's increasing vulnerability, counsel responded by tightening the formal scope of representation, refusing collateral assistance, deferring substantive engagement, and continuing to pursue settlement maximization under conditions where the client's deteriorating mental state predictably compromised informed decision-making.

### Subsection N.3.5 — The January 13–14, 2025 WKS Discovery Refusal and Settlement-Disclosure Sequence.

64ZZ. On January 13, 2025, Plaintiff transmitted to WKS the verbatim statement "This streaming platform [Kick.com], which we, as 'Stake Partners,' were instructed by our 'Stake Managers' (aka 'Wasim') to help grow and stream, is ironically owned by Ed Craven." Plaintiff thereby confirmed the Stake.com / Stake.us / Kick.com / Easygo ecosystem linkage formally pleaded at Count VII.

64AAA.　　　On January 14, 2025, within the same email thread, Kilpela admitted verbatim:

**Edwin Kilpela (Wade Kilpela Slade LLP) to Plaintiff — Settlement counteroffer admission — January 14, 2025:**

> in response to our demand of 225k they came up to 25k and that I [thought] I could get them to somewhere around 100k (between 75 and 125).

64BBB.　　　When Plaintiff requested transcripts of the settlement back-and-forth conversations with Stake's counsel, Kilpela refused, stating verbatim: "no, I cannot transcribe phone conversations. Doing so would violate laws regarding recording conversations." The refusal to provide written-record continuity of the settlement-negotiation process — by counsel who had themselves taken those calls — confirms that Plaintiff's information access was being systematically constricted.

## Subsection N.3.6 — The February 4, 2025 Kilpela "Summary of Action and Discussion Items" Post-Withdrawal-Threat Admissions.

64CCC.　　　On February 4, 2025 at 20:48 UTC — approximately three and a half hours after Plaintiff's contemporaneous documentation of the February 3, 2025 Withdrawal-Threat Zoom at Gmail message identifier 194d1f7cc4cc8577 — Edwin Kilpela transmitted to Plaintiff at Gmail message identifier 194d2b919472d795 the "Summary of Action and Discussion Items" letter containing two admissions of dispositive significance:

**Edwin Kilpela (Wade Kilpela Slade LLP) to Plaintiff — Admission of no formal written retainer — February 4, 2025:**

> I have since confirmed that is not the case and that our representation of you has not been pursuant to a retainer agreement

**Edwin Kilpela (Wade Kilpela Slade LLP) to Plaintiff — Admission of misrepresentation to client — February 4, 2025:**

> On our call earlier this week, I mistakenly said Stake had 'offered' 50k, when, in fact, that was only something that Stake's counsel informally suggested to me on the phone.

64DDD.　　　The February 4, 2025 Kilpela admissions are dispositive on four issues: (i) the WKS engagement was conducted across ten calendar months without a formal written retainer agreement, in violation of ABA Model Rule 1.5 and Illinois RPC 1.5; (ii) the $50,000 settlement number that Kilpela had communicated to Plaintiff as a Stake-side "offer" during the February 3, 2025 Withdrawal-Threat Zoom was not in fact an offer but an informal off-record suggestion from Stake's counsel; (iii) the misrepresentation of an informal suggestion as an offer was the leverage device by which the withdrawal-threat was structured; and (iv) the contemporaneous correction of the misrepresentation within hours of Plaintiff's contemporaneous documentation establishes that the misrepresentation was knowingly made on February 3, 2025 and only retracted when Plaintiff's preserved documentary record of the misrepresentation foreclosed continued reliance on the false framing.

**Subsection N.3.7 — The February 6, 2025 Plaintiff "Two Suicide Attempts" Disclosure to WKS.**

64EEE.　　　On February 6, 2025 at 1:23 PM Central Time, after Kilpela had informed Plaintiff that he was "not available until next week" for the requested follow-up Zoom call, Plaintiff transmitted to WKS the verbatim disclosure:

**Plaintiff to Edwin Kilpela (Wade Kilpela Slade LLP) — "Two Suicide Attempts" disclosure — February 6, 2025, 1:23 PM:**

> This case has caused immense harm, including two suicide attempts. I had to call the police to my house to ask for some sort of guidance.., after the Zoom call, where you didn't let me make the decision to go into arbitration without constantly threatening me. You apologized, claimed you would do the case for free, then backtracked on that. There's no clear legal contract in place, and you knew I was in a bad place in my life, as I relayed to you multiple times to simply give them our offer, if they don't accept, we begin arbitration. And that was back in October.

64FFF. The February 6, 2025 "Two Suicide Attempts" disclosure documents — in Plaintiff's own pen and addressed directly to Plaintiff's then-counsel — that (a) Plaintiff had attempted suicide twice; (b) the February 3, 2025 Zoom Call had been so distressing that Plaintiff had called the police to his home for safety; (c) Kilpela had threatened Plaintiff during that Zoom Call to compel a settlement decision; (d) Kilpela had verbally promised free representation and then retracted that promise; (e) no formal written retainer existed; and (f) Plaintiff had previously communicated his vulnerability "multiple times" beginning "back in October." WKS's response to receiving this written disclosure of two suicide attempts from a client was not to escalate the matter to a partner-level safety review, not to immediately refer Plaintiff to crisis services, not to file a TRO motion against Defendants' continuing inducement infrastructure, and not to withdraw immediately. WKS continued representation for another forty-three days until March 21, 2025, while concealing from Plaintiff the January 15, 2025 administrative abeyance of the AAA proceeding.

**Subsection N.3.8 — The Jay Discord Direct-Message Thread (Knowing Inducement and the $3,700 Tip-Feature Transfer).**

64GGG.　　　Plaintiff has preserved his Discord direct-message thread with the Kick.com streamer "Jay" (Stake referral code "ufos," operator of the "Jay's Alien Crew" Discord server). The preserved thread documents Plaintiff's affirmative disclosures of his vulnerability to Jay, and Jay's knowing continuation of inducement notwithstanding those disclosures:

**Plaintiff (The_Dent) to Jay on Discord — Vulnerability disclosure — September 30, 2024:**

> There's nothing to be sorry about, Brother... I'm a broken individual, all I've done the past 2 years isolate / sabotage myself constantly, ruin any chance at normalcy in my life almost as if on purpose. Everything's felt numb, grey and meaningless since I stopped creating content and isolating from people in my life. Turning to gambling as my outlet always felt like the final nail in the coffin, and yesterday was just that.... when I reached out to my 'Affiliate Manager' on Telegram asking for loss-back and for some help/guidance, they self-excluded my account, turned off all my withdraws and ability to get affiliate money, 0 lossback. Basically told me to fuck off, this was last December, 6-7 months into my Streaming break so I wasn't under contract anymore

**Jay to Plaintiff on Discord — Stake affiliate-manager culture admission — October 2, 2024:**

> wasim isnt bad... akhil is much harder.. but both of them just play the card "you're paid to do this" nobody makes you bet that way ect... as i havent cashed out for 3 months

**Jay to Plaintiff on Discord — Stake RNG admission against interest — October 2, 2024:**

> some of the seeds that are generated i swear are just so rigged / the amount of limbo 2x seeds ive checked... and they are instantly -100 units / is disgustingly suspicious

**Plaintiff (The_Dent) to Jay on Discord — Continuing addiction disclosure — November 21, 2024:**

> this shit is killing me and I need to chill tf out on it... brother... thought you were an addict, in pain.. like I was / dumb thought... I just realized I had it / and the reason I can't control the gambling when I'm (in that deep zone)... it's dark shit / and your Brain literally / decides what you feel or do.. day by day / b/c it can't produce Dopamine / itself / unfortunately we found gambling / and MAN / does it give our Brain's that Dopamine fix it needs

**Plaintiff (The_Dent) to Jay on Discord — Account-creation admission demand — December 19, 2024:**

> well, reach out to Richie and get it situated for me... considering you guys are the ones making these accounts for players. Got 1k reloads on there getting wasted on top of my own money I can't withdraw. Not gonna let that fly.

**Jay to Plaintiff on Discord — January 11, 2025 Tip-feature $3,700 transfer — January 11, 2025, 6:52 AM:**

> Gotchu, sent $3700 / 100% when ur host comes back get them to relook cuz you should get everything back... thats not right

64HHH. The Stake.com internal Tip feature is the subject of pending federal RICO class action litigation in Ridley v. Sweepsteaks Limited et al., No. 1:25-cv-02511 (E.D. Va. filed 2025), alleging that Stake-affiliated personnel use the Tip feature to channel value to selected players, streamers, and affiliates in a manner that evades wagering accounting, tax reporting, and anti-money-laundering controls. The January 11, 2025 $3,700 Tip transfer from Jay to Plaintiff is a direct documentary instance of the Tip-feature pattern alleged in Ridley.

**Subsection N.3.9 — The Intercom Conversation 86106 Three-Agent Recovery Thread Verbatim Statements (December 19, 2024 – January 4, 2025).**

64III. The Stake-side recovery process operated through Intercom Conversation 86106 (gzw2ro6m / SparkPost MTA 192.174.84.0/24, DKIM-signed by `@stake.com`) involved three named Stake.com Account Recovery agents. The verbatim recovery instructions and the "Nari NEGI"-aliased third-party response are:

**Dusan from Stake.com Account Recovery (recovery@stake.com) — Reactivation instruction — January 3, 2025, 2:43 PM Central; Message ID d40c095b-10adad6b-1735936989-86106-2157138@outbound.intercom.stake.com:**

> In order to fully reinstate access to your account, we kindly request that you log in and activate two-factor authentication, as well as update your password. After completing the aforementioned steps, kindly notify us and we will proceed to unlock your account.

Third-party operator of dentedone3@gmail.com under display-name "Nari NEGI" to recovery@stake.com — Reactivation confirmation 25 minutes after Dusan's instruction —

January 3, 2025, 3:08 PM Central; Message ID CAOs8sp2-J+AbrAWx9vzue0tei39sY7UKQFdO2_fB4Mi0FDxeKw@mail.gmail.com; "From" header configured as "Nari NEGI <dentedone3@gmail.com>":

Aforementioned steps completed, password updated / 2fa enabled. Thanks, again.

**MilanR from Stake.com Account Recovery (recovery@stake.com) — Reactivation confirmation — January 3, 2025, 6:24 PM Eastern; Message ID 2628efa1-20f284de-1735950277-86106-2157138@outbound.intercom.stake.com; DKIM signature header.b=Cm+nqy9t:**

Please ignore the previous message, it was not intended for you. I am pleased to inform you that the restrictions have been removed and that you may again use your account as you usually would. Please just be more careful in the future as maintaining the safety of your account is only your responsibility.

**Jay to Plaintiff on Discord — "Sony came through" admission corroborating MilanR reactivation — January 3, 2025:**

yep, just cleared all the confusion, they reactivated the account in full today finally (edited) took a while, but Sony came through.

**Jay to Plaintiff on Discord — Host-reload coordination — January 3, 2025, 8:25 PM Eastern:**

Make sure you message your host and get all the reloads and everything you missed.

64JJJ.  The contemporaneous documentary correlation between MilanR's Stake-side reactivation confirmation and Jay's Discord-side "Sony came through" admission establishes a three-actor coordinated recovery operation: Jay (Kick.com streamer / inducement entry point), Sonyvaio (Telegram-side intermediary / documentation handler operating dentedone3@gmail.com under the "Nari NEGI" alias), and MilanR (Stake.com Account Recovery agent / formal approver). The three-actor coordination establishes — at the most granular documentary level — the operational substrate of the civil conspiracy pleaded at Count VII below.

**Subsection N.3.10 — Richie's October 1, 2024 Public Discord Account-Creation Offer in Jay's Alien Crew Server.**

64KKK.        Stake-affiliated Discord moderator Richie (`richiebara` / "Richie S" / "Stake Manager," active on Discord and on the "Jay's Alien Crew" Discord server) made a publicly visible account-creation offer in the "Jay's Alien Crew" Discord on October 1, 2024:

**Richie (Stake-affiliated Discord moderator) — Public account-creation offer in "Jay's Alien Crew" Discord server — October 1, 2024:**

ATTENTION: Regarding the Email sent out today, you have 90 days to KYC level 2 on your Stake.com account. Stake is turning into KYC only Jan 1st, 2025. If you need help making a Stake account, Please open a #) create-a-ticket and I can help you out! ... PLEASE don't think of these bonuses as a way to make money. Eddie always wins, they are just some added extras so you can get more bang for your buck.

64LLL.        Richie's reference to "Eddie always wins" identifies co-defendant Medium Rare N.V.'s principal Edward Craven as the operational principal whose interests the affiliate-tracking infrastructure is designed to advance. The verbatim public statement, made by a Stake-affiliated moderator in a Stake-ecosystem Discord server, is admissible against

Defendants under Federal Rule of Evidence 801(d)(2)(D) as a statement by an agent within the scope of the agency relationship.

**Subsection N.3.11 — The April 19–21, 2025 Plaintiff First Independent AAA Outreach and the AAA April 21, 2025 First Abeyance Disclosure.**

64MMM.    On April 19, 2025 at 1:11 PM, Plaintiff transmitted to AAA case manager Shannon Hurley his first direct independent communication with AAA in a deliberately conciliatory tone:

**Plaintiff (Szymon Zawadzki) to Shannon Hurley (AAA) — First independent AAA outreach — April 19, 2025, 1:11 PM:**

> Hi Shannon, I hope you're having a great Easter. I was hoping to schedule a time to briefly speak with you regarding a few questions I have about the case/proceeding. Please let me know a convenient time for you to connect. Much love, Szymon

64NNN.    AAA did not respond for two days. On April 21, 2025 at 10:45 AM Central, AAA case manager Shannon Hurley (operating through Laura Giammarino, on behalf of Shannon Ruble) responded — but did not propose a time for the phone call Plaintiff had requested. Instead, the AAA response imposed an asymmetric cc-protocol and disclosed for the first time to Plaintiff the January 15, 2025 administrative abeyance:

**Laura Giammarino on behalf of Shannon Ruble (AAA) — Asymmetric cc-protocol admonition — April 21, 2025:**

> Please be reminded that unless otherwise directed, parties are to copy each other on all correspondence. As such, I have copied the Respondent's counsel on this email. If any party fails to share communications with the other party, the AAA or the arbitrator might not act on any requests or objections contained within those communications, as stated in the Rules.

**Laura Giammarino on behalf of Shannon Ruble (AAA) — First abeyance disclosure to Plaintiff (96 days after imposition) — April 21, 2025:**

> Please be advised, this matter was placed in abeyance administratively on January 15, 2025 as no response was received to our letters dated November 8, 2024, December 9, 2024, and December 20, 2024.

**Laura Giammarino on behalf of Shannon Ruble (AAA) — Next-step procedural-election demand — April 21, 2025:**

> The next administrative step is to invite an arbitrator to serve, at which time the Business will incur the Case Management Fee and arbitrator compensation deposit according to the applicable Costs of Arbitration section of the Consumer Rules.... We will not appoint an arbitrator unless one of the parties advises they are ready to proceed.

**Subsection N.3.12 — Plaintiff's May 8–9, 2025 Formal Procedural-Fraud Complaint to AAA.**

64OOO.    On May 5, 2025, Plaintiff transmitted to AAA the seven-word capitulation "I want to proceed in the case." On May 8, 2025 at 11:21 PM Central, Plaintiff transmitted to AAA and to Ifrah Law his formal procedural-defect documentation letter:

**Plaintiff to AAA and Ifrah Law — May 8, 2025 procedural-defect letter:**

> For the record, I was never made aware of these letters or that my case had been placed in abeyance until February 4th, when I was informed by the law firm that had been representing me, Edwin J. Kilpela, Jr. of WADE KILPELA SLADE LLP. This only came to my attention after I proactively contacted the AAA myself. As a result, I requested that the firm no longer represent me in this case due to their failure to inform me in a timely manner of the defendants' offer(s), the previously mentioned letters, or the case being placed in abeyance.

**Plaintiff to AAA and Ifrah Law — May 8, 2025 procedural-defect letter:**

> I also reached out to the defendants' law firm, Ifrah Law (ifrahlaw.com), seeking clarification and answers, but I never received a response.

64PPP. On May 9, 2025 at 6:28 AM Central, Plaintiff escalated with a formal procedural-fraud complaint to AAA and Ifrah Law. The verbatim text reads:

**Plaintiff to AAA and Ifrah Law — Formal procedural-fraud complaint — May 9, 2025, 6:28 AM:**

> I am writing to formally address significant procedural issues in the matter of Zawadzki v. Sweepsteaks Ltd. Specifically, the decision to place the matter in abeyance — without any direct communication with me and apparently based solely on the inaction of my former counsel — was taken without my knowledge, understanding, or consent. This administrative action, predicated on incomplete and one-sided information, has materially prejudiced my position and undermined my ability to participate meaningfully in the resolution of this matter.

**Plaintiff to AAA and Ifrah Law (continued) — May 9, 2025:**

> At no point between November 22, 2024, and February 2025 was I notified — by email, phone, or in writing — of Stake's settlement offer dated November 21, 2024. The only reason I became aware of this offer and the current status of the case was because I created an account on ADR.org and submitted a status inquiry on February 4, 2025.

**Plaintiff to AAA and Ifrah Law (continued) — May 9, 2025:**

> Without telling me, emailing, or calling or saying anything, you simply requested further 'continuations' without my knowledge or consent.

**Plaintiff to AAA and Ifrah Law (continued) — May 9, 2025:**

> For the record, I did not authorize my former counsel to withdraw from representation until I had received a full explanation of the case status and procedural developments. No such explanation was ever provided, including any clarification regarding the abeyance status or instructions on next steps.

64QQQ. AAA's response to Plaintiff's May 9, 2025 procedural-fraud complaint — transmitted approximately two and three-quarter hours later at 9:10 AM Central — is dispositive on AAA's institutional ratification of underlying procedural fraud through non-investigation:

**Laura Giammarino on behalf of Shannon Ruble (AAA) — May 9, 2025, 9:10 AM AAA response (non-engagement):**

> This will confirm receipt of the below communications. Please see the attached communications dated March 21, 2025 as well as the communications confirming the Notice of Recusal from Claimant's counsel. As Claimant has advised they are ready to proceed, we will proceed with the administrative appointment of an arbitrator. Once an arbitrator has accepted our invitation to serve

> on the case, we will provide their appointment documents, including resume, Oath, and Notice of Compensation Arrangements to you for review.

64RRR. AAA's May 9, 2025 response, in its entirety, did three things: (a) confirmed receipt; (b) attached the WKS withdrawal correspondence; and (c) proceeded immediately to the administrative appointment of an arbitrator. AAA did not (i) acknowledge the documented procedural-fraud allegations; (ii) investigate the abeyance-without-consent issue; (iii) inquire into the documented failure to transmit Stake's November 21, 2024 settlement offer to Plaintiff; (iv) advise of any process by which Plaintiff could obtain such investigation; or (v) consider whether the documented procedural irregularities required referral to AAA supervisory personnel. AAA proceeded to arbitrator appointment as if the disputed status had been administratively settled. This is institutional ratification of underlying procedural fraud, achieved through administrative non-investigation.

**Subsection N.3.13 — The November 14–17, 2025 AAA Five-Excuse Evidence-Integrity Blocking of the Wasim Telegram .json and .html Files.**

64SSS. On November 14, 2025 at 12:58 AM Central, Plaintiff served discovery responses and document production on AAA and Ifrah Law. The transmittal email read:

**Plaintiff to Ifrah Law and Shannon Hurley (AAA) — November 14, 2025, 12:58 AM transmittal:**

> Please find attached Claimant Szymon Zawadzki's discovery responses and accompanying document production in AAA Case No. 01-24-0006-1550. Also attached are communications with Respondent's 'affiliate manager,' with preserved metadata in both JSON and HTML format. Kindly confirm receipt at your convenience.

64TTT. The transmittal contained four attachments: (i) Discovery Response in DOCX format; (ii) Requests for Production in DOCX format; (iii) `Wasim Communication Telegram.html` (the Wasim Telegram evidence in HTML-export format, approximately 489 KB); and (iv) `Wasim Communication Telegram.json` (the same evidence in native JSON-export format, with preserved metadata). The JSON and HTML files were specifically transmitted to preserve the metadata-integrity of the Day-One Wasim Telegram Evidence pleaded at Sections A through B.1 above.

64UUU. AAA's response sequence is documented at five mutually-inconsistent verbatim excuses transmitted by Shannon Ruble within a forty-three-minute window (Excuses 1–4) plus a fifth excuse three days later (Excuse 5):

**Shannon Ruble (AAA) — Excuse 1 ("could not be uploaded") — November 14, 2025, 1:26 PM Eastern:**

> This confirms receipt of the attached. Both The Discovery Response and the Requests for Production have been uploaded to the case file. Please note the .html and .json documents could not be uploaded.

**Plaintiff to Shannon Ruble (AAA) — Plaintiff demand for rule citation — November 14, 2025, 2:03 PM:**

> Please identify the specific reason the original formats were not accepted for upload, and cite any applicable arbitration rules or laws governing that determination. Please also confirm whether this Word version (attached below) is sufficient for inclusion in the official case file and may be used as a reference to the originally submitted materials for the time being.

**Shannon Ruble (AAA) — Excuse 2 ("system cannot expect") — November 14, 2025, 2:36 PM:**

> We cannot upload certain files. Our system cannot expect .zip .html, etc. The document has now been uploaded.

**Shannon Ruble (AAA) — Excuse 3 (correction one minute later) — November 14, 2025, 2:37 PM:**

> My apologies for the typing error. Our system cannot accept .zip .html, etc.

**Plaintiff to Shannon Ruble (AAA) — Plaintiff demand for full file-type listing — November 14, 2025, 3:45 PM:**

> Could you please: 1. Identify all specific file types that are accepted by your system (e.g., .pdf, .docx, .xlsx, .png, .msg, etc.); 2. Clarify exactly which formats are included in your reference to '.zip, .html, etc.' so that 'etc.' is not left ambiguous; and 3. Advise whether there is an alternative method for submitting native-format files that contain important metadata (for example, secure file transfer, encrypted media, or direct transmission to the case administrator or tribunal), so that the integrity and evidentiary value of those materials can be preserved.

**Shannon Ruble (AAA) — Excuse 4 (size-based) — November 14, 2025, 4:01 PM:**

> Please see the attached. You may directly upload documents to the webfile. Note, your .html may have just been too large for me to upload as we have our own restrictions.

**Plaintiff to Shannon Ruble (AAA) — Plaintiff rebuttal showing 489 KB file size — November 14, 2025, 5:51 PM:**

> Respectfully, that does not appear to be the case, as the previously attached HTML file I uploaded is only 489 KB (approximately 0.48 MB), which is well within normal size limits. In light of this, please upload that previously submitted document to the case file and kindly confirm once this has been completed. For your convenience, I have attached the document to this email, with a title that accurately reflects its contents.

**Plaintiff to Shannon Ruble (AAA) — False Claims Act preservation invocation — November 14, 2025:**

> For the avoidance of doubt, please also be advised that inaccurate statements of this nature will be documented and may be raised for potential appeal purposes, to ensure compliance with applicable procedural and evidentiary standards, and, where appropriate, in connection with any potential claims (including under the federal False Claims Act) so that all relevant evidence is preserved.

**Shannon Ruble (AAA) — Excuse 5 (three days later, "error" / burden-shifting to Plaintiff, transmitting AAA WebFile Electronic Case Filing Guidelines.pdf) — November 17, 2025, 8:08 AM:**

> Thank you for your submission. AAA requires parties to upload pleadings and other case documents directly through AAA WebFile® for secure filing and immediate access by all case participants. I am able to upload documents on your behalf in most cases; however, I am currently receiving an error when attempting to upload the attached file. Please log in to your WebFile account and upload this document directly. If you experience any issues, you may reach out to AAA Customer Service for assistance at customerservice@adr.org.

64VVV. AAA's five mutually-inconsistent excuses for blocking Plaintiff's native-format Day-One Wasim Telegram Evidence — "could not be uploaded," "system cannot expect .zip .html, etc.," "system cannot accept .zip .html, etc.," "too large for me to upload as we have our own restrictions," and "I am currently receiving an error" — are mutually inconsistent and were directly contradicted by Plaintiff's demonstration that the .html file was only 489

KB. The pattern indicates not a technical-systems problem but an institutional unwillingness to admit the metadata-preserved native-format evidence — the same evidence Plaintiff had preserved in native JSON format since February 2024 and disclosed to Edelson PC on March 6, 2024 (¶ 64RR above) and to all five WKS attorneys on May 23, 2024 (Item 1H Anchor 2).

### Subsection N.3.14 — The November 21, 2025 AAA Preliminary-Hearing Deferral-to-Writing Mechanism.

64WWW.     On November 21, 2025, the parties participated in the Preliminary Hearing with Arbitrator Richard L. Miller II. During that hearing, Plaintiff raised concerns about the underlying procedural posture of the arbitration. AAA's contemporaneous documentation of those concerns reads:

**Shannon Ruble (AAA) to all parties — Preliminary Hearing deferral-to-writing — November 21, 2025, 2:48 PM:**

> During the Preliminary Hearing, the Claimant expressed concerns regarding this case. To ensure these concerns are properly addressed, we kindly request that the Claimant provide them in writing at their earliest convenience.

64XXX.     The deferral mechanism operated between November 21, 2025 and the April 22, 2026 ex parte Final Hearing as the precise procedural device by which every substantive concern Plaintiff raised was channeled into a "submit it in writing" loop in which (i) AAA would acknowledge receipt; (ii) AAA would solicit Respondent's response; and (iii) AAA would punt substantive determination to the arbitrator, who declined to grant the relief Plaintiff sought.

### Subsection N.3.15 — The March 5–10, 2026 AAA Supervisory-Demand Sequence and the Barbara Phariss "Administrative Role" Dodge.

64YYY.     On March 5, 2026 at 9:11 AM Central, Plaintiff transmitted to AAA leadership his Formal Notice titled "Formal Notice — AAA Case No. 01-24-0006-1550: Documented Procedural Fraud, Administrative Misconduct, and Demand for Immediate Stay, Recusal Review, Record Preservation, and Release to Court." The Formal Notice was directed to four AAA recipients (Sara Faulkingham at `sarafaulkingham@adr.org`; Consumer Filing at `ConsumerFiling@adr.org`; Case Filing at `casefiling@adr.org`; and Shannon Hurley at `shannonhurley@adr.org`), with Ifrah Law copied. Of the four AAA recipients, only one responded — and that response was an out-of-office auto-reply:

**Sara Faulkingham (AAA) — Out-of-office auto-reply — March 5, 2026, 9:15 AM:**

> Thank you for your email. I am currently out of the office. If you require assistance, please contact Sophia Parra at SophiaParra@adr.org.

64ZZZ.     On March 9, 2026 at 10:48 AM, Plaintiff transmitted his Final Supervisory Demand to AAA leadership with eight specific informational and procedural requests, each requiring written response by March 10, 2026 at 5:00 PM Central. The verbatim text includes:

**Plaintiff's Final Supervisory Demand to AAA Leadership — March 9, 2026, 10:48 AM:**

> (2) Whether AAA acknowledges that: (a) the case was closed; (b) AAA later stated it would remain closed absent confirmation from me; and (c) the matter was thereafter treated as reopened through a disputed counsel communication that I never knowingly authorized.

**Plaintiff's Final Supervisory Demand (continued) — March 9, 2026:**

> (4) Whether all merits activity, deadlines, hearings, and further proceedings are stayed while these threshold issues remain unresolved.

**Plaintiff's Final Supervisory Demand (continued) — March 9, 2026:**

> (6) Whether AAA will release the full non-privileged AAA file requested in my March 5 submission, and if not, precisely what is being withheld and on what basis. (7) Whether this matter has actually been elevated beyond the case-manager level for supervisory review

64AAAA.    AAA's March 9, 2026 response at 2:20 PM was a one-paragraph procedural acknowledgment containing no substantive engagement with any of the eight numbered requests:

**Shannon Ruble (AAA) — Procedural-acknowledgment response — March 9, 2026, 2:20 PM:**

> Good afternoon, This message confirms that we have received your correspondence. Please be advised that your concerns have been forwarded to appropriate management for review. Best regards, Shannon Ruble.

64BBBB.    AAA's substantive response was transmitted on March 10, 2026 at 3:42 PM Central, signed by Barbara Phariss (Director of ADR Operations) and Shannon Ruble (Manager of ADR Services). The Phariss response contains three dispositive verbatim segments:

**Barbara Phariss & Shannon Ruble (AAA) — Concession of irregularity — March 10, 2026:**

> We regret that your experience during case initiation was not smoother and appreciate you raising those concerns.

**Barbara Phariss & Shannon Ruble (AAA) — THE "ADMINISTRATIVE ROLE" DODGE — March 10, 2026:**

> Regarding prior representation, AAA received notice on March 21, 2025 that your counsel withdrew. Before that withdrawal, AAA was entitled to rely on communications from counsel of record, which included a request to reopen this matter. Questions about whether former counsel acted consistent with your wishes are not matters AAA can determine in its administrative role.

**Barbara Phariss & Shannon Ruble (AAA) — THE $0.00 PLACEHOLDER ADMISSION — March 10, 2026:**

> Regarding the claim amount reflected in WebFile, your Demand sought compensatory damages 'in an amount to be proven at arbitration.' Because no specific dollar amount was stated, the system reflects $0.00 as a placeholder.

**Barbara Phariss & Shannon Ruble (AAA) — Jurisdictional deferral — March 10, 2026:**

> The remaining issues you raise are within the authority of the arbitrator to determine under the applicable arbitration agreement and Consumer Arbitration Rules.... AAA will continue to administer this matter in accordance with the governing agreement and rules.

64CCCC.	The March 10, 2026 Phariss response is dispositive on AAA's procedural-fraud pattern at three distinct levels. First, AAA's Director of ADR Operations conceded — in AAA's institutional voice — that Plaintiff's "experience during case initiation was not smoother." Second, AAA expressly stated it "cannot determine in its administrative role" whether former counsel acted consistent with Plaintiff's wishes — meaning AAA was refusing to investigate the disputed-reopening question notwithstanding Plaintiff's documented, contemporaneously-served allegations. Third, AAA admitted that the WebFile docket reflected "$0.00 as a placeholder" for Plaintiff's claim throughout the entire arbitration — meaning the arbitration was administered on a fundamental administrative-record defect that AAA never corrected.

### Subsection N.3.16 — The March 27, 2026 AAA Forced Record-Scrubbing Demand.

64DDDD.	On March 27, 2026 at 1:13 PM Eastern, AAA transmitted to Plaintiff the verbatim record-scrubbing demand:

**Barbara Phariss (Director ADR Operations) via Shannon Ruble (AAA) — Forced record-scrubbing demand — March 27, 2026, 1:13 PM:**

> As you are aware, the arbitrator challenge has been resolved and the arbitrator has been reaffirmed. The hearing is currently scheduled for April 22. At this stage, the primary administrative item remaining is the claim amount reflected in WebFile.... With respect to your additional submissions, if you would like them provided to the arbitrator, please resubmit any materials without reference to the arbitrator challenge if you have not already done so. As that issue has been resolved, materials submitted for the arbitrator must exclude references to the arbitrator challenge.

64EEEE.	AAA's March 27, 2026 demand required Plaintiff to re-submit materials to the arbitrator with references to the resolved-but-disputed arbitrator-challenge removed. The demand is itself a documented act of procedural-record manipulation. The underlying materials Plaintiff sought to have considered by the arbitrator necessarily included the procedural-fraud allegations developed during the arbitrator-challenge process. AAA's instruction to scrub those allegations before presenting the materials to the arbitrator created a falsified record for the arbitrator's consideration — a record in which AAA's own documented procedural irregularities, the disputed reopening, and the underlying counsel-fraud history were absent.

### Subsection N.3.17 — The April 21–22, 2026 Ex Parte Final Hearing and Post-Hearing-Start Link Transmission.

64FFFF.	On April 21, 2026 at 1:45 PM Central — the day before the scheduled Final Hearing — Ifrah Law's Steven Hess transmitted to AAA case manager Shannon Hurley a procedural-coordination request:

**Steven Hess (Ifrah Law) to Shannon Hurley (AAA) — Pre-hearing procedural-coordination — April 21, 2026, 1:45 PM:**

> Good afternoon, Case Manager Ruble, In anticipation of tomorrow's trial at 9 AM CDT (10 AM EST), please let us know if there is anything further that is needed from the Parties. As requested, the meeting link and relevant information is provided in the email below. As mentioned, because of the time zone changes, Respondent intends to call its witnesses as soon as possible.

64GGGG.    AAA case manager Shannon Hurley forwarded the Hess email to Arbitrator Miller. Arbitrator Miller confirmed at 3:06 PM Central the same day with the verbatim record-status admission:

**Arbitrator Richard L. Miller II to AAA and all parties — Final Hearing confirmation — April 21, 2026, 3:06 PM:**

> Regarding Zawadzki v. Sweepsteaks Limited d/b/a Stake.Us, as the Arbitrator, I am hereby confirming that the evidentiary hearing ('Trial') will take place tomorrow at 9:00 a.m. Chicago time. It will be conducted remotely, using the link provided below.

**Arbitrator Miller — Record-status admission — April 21, 2026:**

> In terms of trial related submissions, the Arbitrator has located the following documents using the AAA portal: (a) Witness List For Respondent; (b) Respondent, Sweepsteaks, Its. d/b/a Stake.US's Pre-Trial Brief; (c) seven exhibits (which appear to be exhibits to Respondent's pre-trial brief and trial exhibits); and (d) the Affidavit of Szymon Zawadski (submitted 12-18-25). The documents found using the AAA portal do not appear to include: (a) a witness list for Claimant; or (b) a pre-trial brief for Claimant. If Claimant has any further Trial related submissions, they can be uploaded using the AAA portal and the Arbitrator will review them.

64HHHH.    The Miller April 21, 2026 confirmation is dispositive on the cumulative effect of AAA's evidence-integrity blocking, supervisory-demand scrubbing, and record-management practices. On the eve of the Final Hearing, the AAA portal reflected (a) Respondent's witness list; (b) Respondent's pre-trial brief; (c) seven of Respondent's exhibits; and (d) only one document from Plaintiff (the December 18, 2025 Affidavit). The native-format Wasim Telegram .html and .json files were not in the case file; Plaintiff's March 5 and March 9, 2026 procedural-fraud documentation was not in the case file (per the March 27, 2026 scrubbing demand at ¶ 64DDDD); and Plaintiff's earlier discovery responses had been administratively rejected through the five-excuse sequence at ¶¶ 64SSS–64VVV. The Final Hearing was therefore set to proceed on a record substantially curated by AAA's own administrative practices.

64IIII.  On April 22, 2026 at 9:08 AM Central — approximately eight minutes after the scheduled 9:00 AM CDT Final Hearing start time — AAA case manager Shannon Hurley transmitted to Plaintiff the meeting-access link:

**Shannon Hurley (AAA) to Plaintiff — Meeting-access link TRANSMITTED AFTER HEARING BEGAN — April 22, 2026, 9:08 AM CDT:**

> Good morning, Please be advised the Final Hearing is currently being held with the arbitrator via Zoom. Mr. Zawadzki, please join the hearing using the following information: How to Join the Proceeding: Click the link below to join the proceeding from your PC, Mac, iOS or Android device. https://uslegalsupport.remotecounsel.com/meetings/UdfTf1oFn9A/join

64JJJJ. The April 22, 2026 email is dispositive on AAA's procedural-fraud pattern. AAA transmitted the meeting-access link to Plaintiff — for a Final Hearing scheduled to begin at 9:00 AM CDT — at 9:08 AM CDT. By the email's own verbatim language, the hearing was "currently being held with the arbitrator via Zoom" at the time of transmission. Plaintiff had no prior access to the U.S. Legal Support `remotecounsel.com` platform, no prior confirmation of meeting access credentials, no prior knowledge that the hearing would be conducted through a third-party reporting service rather than through standard AAA Zoom

infrastructure, and no realistic ability to join a hearing in progress. The Final Hearing therefore proceeded ex parte against Plaintiff, on a record from which Plaintiff's substantive evidence had been administratively excluded, before an arbitrator whose appointment Plaintiff had contemporaneously challenged.

### Subsection N.3.18 — The April 23, 2026 Interim Award Transmittal.

64KKKK.    On April 23, 2026 at 11:31 AM — one calendar day after the ex parte Final Hearing and approximately forty-eight hours after Plaintiff's federal forum-control filing — AAA case manager Shannon Hurley transmitted the Interim Award to all parties:

**Shannon Hurley (AAA) — Interim Award Transmittal — April 23, 2026, 11:31 AM (attached: "2026-04-23 Interim Award Transmittal.pdf" and "2026-04-23 Interim Award.pdf"):**

> Please review the attached correspondence regarding the above-referenced case. Feel free to contact me with any questions, comments or concerns you have related to this matter. Thank you.

64LLLL.    The April 23, 2026 Interim Award and its subsequent May 8, 2026 Final Award conclusion completed the AAA procedural-fraud pattern: a ninety-seven-day silent abeyance; a documented refusal to investigate procedural-fraud allegations; five inconsistent excuses blocking metadata-preserved native-format evidence; an institutional "administrative role" dodge by AAA's Director of ADR Operations; a forced record-scrubbing demand; an ex parte Final Hearing with eight-minute-late link transmission; and a next-business-day Interim Award issued on a record substantially curated by AAA's administrative practices.

### Subsection N.3.19 — The Easygo BI Dashboard Sharing and the "ankit0692" Multi-Campaign Affiliate Tracking Infrastructure.

64MMMM.    On November 15, 2024, an individual identified as `m.akshaya@easygo.io` — operating from the corporate Google Workspace tenant of Defendant Easygo Group Holdings Pty Ltd — shared with Plaintiff's `dentedone3@gmail.com` Gmail account a Google Sheets document titled "ankit0692 Affiliate (Stake.com) | Wager Race Statistics | Auto Update Current & Past Month." The Drive file metadata, preserved by Plaintiff in PNG screenshot format, confirms ownership "Owned by Easygo" (corporate Workspace tenant attribution).

64NNNN.    The Google Sheets document contains a live IMPORTDATA formula pulling business-intelligence data from Easygo's internal Trevor.io workspace under share-token `75d879ea-985e-4fd1-8d01-1f6c845192f8`. The downloaded native XLSX (37.5 KB) for the May 1–25, 2026 reporting period discloses that the affiliate "Ankit0692" operates nine simultaneous campaign codes (`ankir`, `AtxGaming`, `4373dbf7ce`, `ace777`, `67x`, `Harsh260`, `ankidc`, `Y1tube`, `O1bQrKcK`), with aggregate Stake.com wager volume of approximately $1.2 million across at least sixty-two distinct user accounts during that twenty-four-day window. The single top wagerer (`xBonBonxx`, operating under code `ankir`) wagered $611,721.39 in that twenty-four-day window alone.

64OOOO.    The Easygo BI Dashboard establishes that Defendant Easygo Group Holdings Pty Ltd operates a centralized affiliate-tracking infrastructure permitting real-time per-affiliate wager-volume monitoring across the Stake.com platform. The fact that this dashboard was shared on November 15, 2024 with `dentedone3@gmail.com` — an account through which

Plaintiff and his Telegram-side intermediary Sonyvaio communicated with the Stake-ecosystem affiliate apparatus — establishes operational connection between Easygo's affiliate-operations function and the DentedOne Account and supports the inference that Plaintiff was being affiliate-tracked notwithstanding his disclosed addiction history and prior Stake.us suspension.

64PPPP.　　　Closing Statement on the Compiled Verbatim Documentary Record. The verbatim quotations compiled in Subsections N.3.1 through N.3.19 above represent the complete documentary substrate on which the substantive allegations of Sections A through N.2.2 above rest. Each verbatim quotation is preserved in Plaintiff's Gmail, Discord, Telegram, and AAA-correspondence archives in original format with intact metadata. The verbatim record establishes — at the most granular documentary level — that the DARVO-as-delay-tactic pattern operated against Plaintiff by Wade Kilpela Slade LLP (May 2024 – March 2025), the AAA procedural-fraud pattern (March 2025 – April 2026), and the Calhoun-supervised procurement of the Interim Award and Final Award (March – May 2026) are not argumentative characterizations but documented events anchored at every operational node to verbatim text preserved by Plaintiff and producible upon appropriate process. The verbatim record factually rebuts the operational predicate of every DARVO-pattern actor identified herein — the implicit institutional assumption that Plaintiff's documented mental-health, financial, and gambling-addiction vulnerabilities would prevent the truth of the procurement sequence from ever surfacing in a federal forum. The additional Timeline Tree audit compiled at Paragraphs 64QQQQ through 64WWWW supplies the chronological and civil-conspiracy attribution spine for that documentary substrate.

**O. Timeline-Tree Audit and Keystone Civil-Conspiracy Connectors.**

64QQQQ.　　　Plaintiff incorporates the attached Timeline Tree audit as a chronological synthesis of the documentary record. The audit does not replace the detailed factual allegations above; it compiles the same evidence into a date-by-date map showing how recruitment, addiction notice, KYC/jurisdiction circumvention, counsel-channel routing, AAA record management, cyber-environmental disruption, retaliation, sovereign enforcement, and post-Illinois-withdrawal inducement converge into Count VII.

64RRRR.　　　The Timeline Tree audit resolves the principal organizational issue in the pleading presentation: the documentary record existed in dense event clusters, but the civil-conspiracy theory required a visible chronological spine. Accordingly, Paragraph 64TTTT below preserves all 70 dated timeline entries from the Timeline Tree, identifies the event classification, preserves exhibit and system identifiers, and attributes each entry to the relevant civil-conspiracy or FAA-vacatur connector.

64SSSS.　　　For readability and evidentiary preservation, verbatim language that appears in the Timeline Tree is separately displayed in shaded quotation blocks beneath the relevant date entry. Those quote blocks are intended to make the operative admissions, inducements, contradictions, and procedural notices visually distinct from Plaintiff's explanatory allegations.

**64TTTT. Chronological Keystone Timeline Preserved From the Timeline Tree.**

**PHASE 1 — Recruitment & Inducement (July 2022 – December 2023)**

**64TTTT.1.      Jul 13, 2022 - Plaintiff–Wasim Khan Telegram comms begin (WK-1).** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: 970 preserved messages Jul 2022 – Apr 2024 with Stake-affiliated manager Wasim Khan. Connector significance: Insider witness foundation. Count VII civil conspiracy — direct platform-side recruitment of Plaintiff via affiliate-manager channel. Foundation of FAA Lane 4 (consent-predicate evidence) and Count V (responsible-gaming notice).

**64TTTT.2.      Aug 16, 2022 - Wasim writes to Plaintiff: "Stake compliance team asked if you'd be able to do Level 2/3 KYC from non-restricted jurisdiction".** *Timeline classification: Significant evidentiary anchor.* Record / brief: Stake compliance team actively coordinating with Wasim re Plaintiff's KYC/jurisdictional status. Connector significance: Documentary conspiracy element: agreement + knowledge + jurisdiction-circumvention coordination at corporate level. Direct Count VII anchor. Schlunk: corporate-counsel discovery target for compliance-team comms.

> **Verbatim record preserved for Paragraph 64TTTT.2:**

> "Stake compliance team asked if you'd be able to do Level 2/3 KYC from non-restricted jurisdiction"

**64TTTT.3.      Aug 17, 2022 - Plaintiff's first Stake.us purchase.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Confirmed by Sweepsteaks's own Pre-Trial Brief Exhibit C (W-2). Connector significance: Timeline anchor; pre-dates Urdan (Aug 2022) and Boyle (Nov 29, 2022) account creation. Plaintiff is the earliest documented IL claimant.

**64TTTT.4.      Aug 2022 - Brayden Urdan begins playing Stake (parallel-claimant temporal alignment).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Per Urdan complaint ¶71 (1:25-cv-03736). Connector significance: Comparator. Same general onboarding period — but Urdan has zero insider-witness documentation, no addiction-disclosure record, no responsible-gaming undertaking from Stake.

**64TTTT.5.      Nov 29, 2022 - Dennis Boyle creates Stake.us account.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Per Selna order in C.D. Cal. 8:25-cv-00302. Connector significance: Comparator. Boyle becomes the Stake T&C MTC-arbitration test case.

**PHASE 2 — Crisis & Suspension (December 2023 – February 2024)**

**64TTTT.6.      Dec 23, 2023 - Plaintiff to Wasim: "hit rock bottom," lost "over 200k" in past two months, used four accounts (Stake.com + Stake.us + two friends' Stake.us under his code).** *Timeline classification: Significant evidentiary anchor.* Record / brief: Direct disclosure of addiction crisis + multi-account/account-switching to platform agent (WK-1). Connector significance: Actual notice triggering responsible-gaming duty. Forecloses any future "no-knowledge" defense. Count V negligence + Lane 4 + Count VII (knowledge element documented at platform layer).

> **Verbatim record preserved for Paragraph 64TTTT.6:**

> "hit rock bottom,"
>
> "over 200k"

**64TTTT.7.      Jan 10, 2024 - Plaintiff to Wasim: "$900 left to my name" vs "$260k I had just a few months ago, all of which I gambled away" (M-2152).** *Timeline classification: Significant evidentiary anchor.* Record / brief: Continued addiction disclosure; same message Sweepsteaks later selectively quotes. Connector significance: Sweepsteaks's Nov 13, 2025 Discovery Response selectively quotes M-2152 omitting the $260K disclosure = fraud on tribunal by material omission (Count VI; Lane 2).

**Verbatim record preserved for Paragraph 64TTTT.7:**

> "$900 left to my name"
>
> "$260k I had just a few months ago, all of which I gambled away"

**64TTTT.8.** **Jan 18, 2024 - Stake.us suspension letter via Wasim's personal Telegram — indefinite, "in view of his welfare and best interests".** *Timeline classification: Significant evidentiary anchor.* Record / brief: Institutional acknowledgment of addiction status; transmitted via affiliate-personal Telegram channel. Connector significance: Sweepsteaks's institutional acknowledgment of addiction. Count V keystone (undertaken responsible-gaming duty). Later confirmed in Nov 13, 2025 Discovery Response 3. Schlunk: forces discovery on internal addiction-flag protocols.

**Verbatim record preserved for Paragraph 64TTTT.8:**

> "in view of his welfare and best interests"

**PHASE 3 — Edelson Referral & Counsel Pipeline (February – May 2024)**

**64TTTT.9.** **Feb 29, 2024 - Plaintiff outreach to Edelson PC (Logan / Balabanian) — Gmail 18df508ffd75632f (ED-1).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Plaintiff's initial counsel-seeking. Edelson is top social-casino class-action firm ($200M+ prior wins).. Connector significance: Edelson had Plaintiff's case from outset. Conspiracy/referral-architecture starting point.

**64TTTT.10.** **Mar 5, 2024 - Adrienne Graham (Edelson) conducts intake — Gmail 18e10c8fc4cf3a7e (ED-2).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Edelson takes substantive intake of Plaintiff's case. Connector significance: Edelson had Plaintiff's full case (addict status, $260K, Wasim relationship, multi-account) at intake.

**64TTTT.11.** **May 14, 2024 - ED-3 KEYSTONE: David Slade (dual-domain slade@wh.law / slade@waykayslay.com) outreach to Plaintiff with David Mindell (Edelson, dmindell@edelson.com) CC'd — Gmail 18f78a27171fce8c.** *Timeline classification: Significant evidentiary anchor.* Record / brief: Edelson PC → Mindell → Slade → Wade Kilpela Slade procurement chain established. Connector significance: Edelson routes Plaintiff's strong case OUT of class litigation INTO private counsel → AAA arbitration. Lane 4 § 10(a)(4) defective consent predicate. Count VII civil conspiracy — Edelson as procurement node. IL RPC 5.4 (fee-sharing), 1.7 (conflicts), 1.5(d) implicated. Stage 3 subpoena target.

**64TTTT.12.** **May 23, 2024 14:17:25 UTC - Plaintiff transmits Wasim Telegram archive (messages.html + result.json) to LaMarca + CCs Kilpela, Graham, Slade ×2 (slade@waykayslay.com AND slade@wh.law) — Gmail 18fa5d05a3cfe3fe; thread 18f9d3bdfd254f7b.** *Timeline classification: Significant evidentiary anchor.* Record / brief: WKS receives addiction-disclosure record 32 days before AAA Demand filed Jun 24, 2024. Connector significance: Forecloses "we didn't know about addiction" position by firm or arbitrator. Civil conspiracy: WKS aware of insider-evidence trail; chose AAA forum anyway. Five-recipient cc list documents shared awareness.

**PHASE 4 — AAA Demand & Forced Closure (June – August 2024)**

**64TTTT.13.** **Jun 24, 2024 - AAA Demand for Arbitration filed (Ex. B, WF 34932254).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Represented-claimant status established despite no formal retainer (per later EK-3 admission). Connector significance: Forum locked-in via WKS. Lane 4 consent-predicate failure compounds from this date forward.

**64TTTT.14.** **Jun 24, 2024 - Demand Exhibit A — Stake.us T&C / Arbitration Clause § 24.2(a) 30-day damages cap (Ex. B-1, WF 34932253).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Pre-arbitration notice given to Sweepsteaks; 30-day damages cap is structurally unconscionable. Connector significance: Unconscionability anchor (Count II; Lane 4). Pre-Arbitration Notice + Response (Ex. B-2) defeats Calhoun's later "failed to comply / premature" defense.

**64TTTT.15.** **Aug 27, 2024 - AAA closes case — Sweepsteaks failed to provide required waiver/fee materials (Ex. C, WF 35417650). 18-month electronic-records destruction timer commences..** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: AAA states court option open; warns AAA "may decline future consumer arbitrations involving" Sweepsteaks; requests removal of AAA name from arbitration clause.. Connector significance: Forum-control predicate. Sweepsteaks's noncompliance opened court-option door — which Plaintiff now uses. Preservation urgency predicate (18-month timer).

> **Verbatim record preserved for Paragraph 64TTTT.15:**
>
> "may decline future consumer arbitrations involving"

**64TTTT.16.** **Aug 29, 2024 - Ifrah PLLC enters Notice of Appearance for Sweepsteaks (Ex. D, WF 35538054) — 2 days post-closure.** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: First Ifrah appearance in AAA matter. Connector significance: Schlunk-paradigm U.S. counsel of record begins. Corroborates anticipated post-closure reopening posture.

**64TTTT.17.** **Aug 30, 2024 - Calhoun objects to closure on "premature" + "standing" grounds (Ex. E, WF 35538084).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Defense framing established. Connector significance: Later "demonstrably incorrect" per Kilpela response — first link in documentary contradiction chain.

> **Verbatim record preserved for Paragraph 64TTTT.17:**
>
> "premature"
>
> "standing"

**PHASE 5 — Reopening Choreography (September 2024)**

**64TTTT.18.** **Sep 2, 2024 - Kilpela response refuting Calhoun's premature-arbitration argument (Ex. F, WF 35538111).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Documentary contradiction established with supporting evidence. Connector significance: Lane 2 anchor — prior position vs later positions; sets up the within-24-hour contradiction pattern later in March 2026.

**64TTTT.19.** **Sep 10, 2024 10:08 AM EDT - CALHOUN VOICEMAIL TO AAA. Calls from (202) 524-4147; RingCentral-captured. Verbatim: "Hi, this is George Calhoun. I am counsel for Sweepstakes Limited. We were the defendant in case number 01-24-0006-1550. The correspondence from the AAA was sent to Cyprus and then routed to Australia. So we did not receive it on a timely basis... I have requested a payment link, but never received it." (Ex. G, WF 35537998).** *Timeline classification: Dispositive keystone.* Record / brief: Three independent admissions captured in one recording — voicemail preserved on AAA RingCentral. Connector significance: DISPOSITIVE TRIPLE-ANCHOR: (1) Cyprus→Australia routing = direct corporate-linkage admission Sweepsteaks (Cyprus) ↔ Easygo/Kick (Australia) = JURISDICTIONAL ARCHITECTURE PROOF for civil conspiracy + Schlunk/Rule 4(f)(3) basis; (2) Defense counsel was the moving force seeking reopening (refutes later positions); (3) "We can reopen the matter again" = internal communications corroborated at corporate level. Count VII keystone.

> **Verbatim record preserved for Paragraph 64TTTT.19:**
>
> "Hi, this is George Calhoun. I am counsel for Sweepstakes Limited. We were the defendant in case number 01-24-0006-1550. The correspondence from the AAA was sent to Cyprus and then routed to Australia. So we did not receive it on a timely basis... I have requested a payment link, but never received it."
>
> "We can reopen the matter again"

**64TTTT.20.** **Sep 13, 2024 - LaMarca communication purporting to speak for Plaintiff re reopening — without documented authorization from Plaintiff; without direct claimant confirmation AAA specifically required.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief:

Unauthorized claimant-confirmation surrogate. Connector significance: Lane 4 § 10(a)(4) defective consent predicate. Plaintiff's sworn affidavit denies authorization. Count I declaratory judgment foundation.

**64TTTT.21.    Sep 20, 2024 - AAA identifies three protocol-deviation waivers (Source J).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Procedural defects documented by administering forum. Connector significance: Lane 4 § 10(a)(4) anchor. Documents the procedural defects in reopening Plaintiff's case.

**PHASE 6 — Retainer Chain Failure & Weaponization (February – May 2025)**

**64TTTT.22.    Feb 4, 2025 - EK-5 — Kilpela to Plaintiff verbatim: "Please do not contact AAA directly again.".** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: Affirmative forum-control instruction. Connector significance: Lane 4 § 10(a)(4); Lane 5 public-policy; Illinois RPC 1.4 violation. Forum-control / EM-4 anchor. Affirmative isolation of client from administering forum.

> **Verbatim record preserved for Paragraph 64TTTT.22:**
>
> "Please do not contact AAA directly again."

**64TTTT.23.    Feb 5, 2025 - EK-4 — Kilpela verbatim: "There are no other email or written communications regarding settlement discussions, which have occurred by phone between George Calhoun and I.".** *Timeline classification: Significant evidentiary anchor.* Record / brief: Settlement structurally off-record between Kilpela + Calhoun by phone only. Connector significance: DIRECT CIVIL-CONSPIRACY EVIDENCE — communication infrastructure designed to avoid documentary trail. Schlunk discovery target: phone records, billing records, Ifrah/WKS internal comms. Count VII keystone.

> **Verbatim record preserved for Paragraph 64TTTT.23:**
>
> "There are no other email or written communications regarding settlement discussions, which have occurred by phone between George Calhoun and I."

**64TTTT.24.    Feb 6, 2025 - EK-3 — Kilpela verbatim: "All good, Szymon — it was an oversight not to have you enter into a formal retainer agreement. I have a draft on my desk to review and will get it to you. Nothing about your case will be jeopardized by us taking the time to do this correctly.".** *Timeline classification: Significant evidentiary anchor.* Record / brief: No formal retainer ever existed during AAA representation. Connector significance: Lane 4 § 10(a)(4) KEYSTONE. Illinois RPC 1.5(d)(2) (contingent fee writing), 1.4 (communication), 1.14 (client with diminished capacity) violations. Count I declaratory invalidity foundation.

> **Verbatim record preserved for Paragraph 64TTTT.24:**
>
> "All good, Szymon — it was an oversight not to have you enter into a formal retainer agreement. I have a draft on my desk to review and will get it to you. Nothing about your case will be jeopardized by us taking the time to do this correctly."

**64TTTT.25.    Mar 21, 2025 - Wade Kilpela Slade LLP withdraws from representation.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Forced pro se status begins. Connector significance: Procedural posture marker. Continues representation gap into FAC v3 filing.

**64TTTT.26.    Apr 7, 2025 - Brayden Urdan v. Sweepsteaks filed (1:25-cv-03736 N.D. Ill.) by Edelson PC — J. Eli Wade-Scott, Michael Ovca, Hannah Hilligoss, Ari J. Scharg.** *Timeline classification: Significant evidentiary anchor.* Record / brief: SAME Edelson PC that referred Plaintiff to WKS in May 2024 now files class action with DIFFERENT named plaintiff (Urdan: $15K loss, Aug 2022 start, no insider witness). Connector significance: SCATTER CHAIN INSIDE PLAINTIFF-SIDE ARCHITECTURE. Edelson chose generic-fact plaintiff over Plaintiff's stronger case (earlier start, $260K loss, Wasim archive, addiction-disclosure record, responsible-gaming admission). Lane 4 + Lane 5 + Count VII. Edelson intake subpoena target (Stage 3 item 3).

**64TTTT.27.** **Apr 18, 2025 - Sweepsteaks files MTC arbitration in Boyle (C.D. Cal. 8:25-cv-00302).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Telegraphs the playbook Stake will use against any consumer challenger with T&C agreement. Connector significance: Procedural marker. Demonstrates standard Stake response to consumer challenge.

**64TTTT.28.** **May 8, 2025 - EK-6 — WKS reasserts: "we will not continue to represent you absent such a formal agreement".** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Corroborates EK-3 — no retainer ever existed during entire WKS representation period. Connector significance: Lane 4 corroboration. Bonus admission from same carrier .eml as EK-3 cluster.

> **Verbatim record preserved for Paragraph 64TTTT.28:**

> "we will not continue to represent you absent such a formal agreement"

**64TTTT.29.** **May 16, 2025 - Calhoun-supervised settlement communication conditioning settlement on Plaintiff's enrollment in addiction-services programming ("Birches Health").** *Timeline classification: Significant evidentiary anchor.* Record / brief: Weaponizing disclosed addiction status against Plaintiff in negotiation. Connector significance: Lane 5 public-policy ANCHOR. Defense counsel uses Plaintiff's vulnerability against him in negotiation. Count V (responsible-gaming undertaking failure); Count VII (continued enterprise conduct).

> **Verbatim record preserved for Paragraph 64TTTT.29:**

> "Birches Health"

**64TTTT.30.** **May 20, 2025 - Plaintiff communication documenting acute suicidality, transmitted to Defendants' counsel.** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: Known to counsel; not acted upon within Defendants' undertaken responsible-gaming functions. Connector significance: Lane 5 anchor. Demonstrates Defendants' failure even after explicit suicidality disclosure within the responsible-gaming duty Sweepsteaks itself undertook (per Nov 13, 2025 Discovery Response 3).

**64TTTT.31.** **May 22-29, 2025 - Judge James V. Selna (C.D. Cal.) grants Sweepsteaks's MTC arbitration in Boyle. Finds no procedural unconscionability; case sent to AAA; stayed pending arbitration outcome..** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: Consumer-facing T&C arbitration clause holds against private-consumer plaintiff under Prima Paint / Buckeye delegation doctrine. Connector significance: Boyle precedent — telegraphs Urdan vulnerability. Plaintiff's case is structurally different (post-arbitration vacatur posture, not pre-arbitration merits run).

**64TTTT.32.** **May 25–26, 2025 - Google Workspace Security Tickets 7-3246000038746 + 1-9860000039032 (GG-1).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Sworn unauthorized 'Mac OS' device on szymonfitness@gmail.com "within minutes" of opening prior-counsel attachment marked "scanned for viruses". Connector significance: Cyber-environmental record predicate. Begins documented compromise sequence. Count IX preservation anchor.

> **Verbatim record preserved for Paragraph 64TTTT.32:**

> "within minutes"
>
> "scanned for viruses"

**PHASE 7 — Sovereign Enforcement Emergence (August 2025)**

**64TTTT.33.** **Aug 28, 2025 - People v. Sweepstakes Ltd. d/b/a Stake.Us, et al. filed in LA Sup. Ct. (No. 25STCV25304) by LA City Attorney Hydee Feldstein Soto + Susman Godfrey LLP co-counsel (Bryan Caforio, Krysta Kauble Pachman, Erik L. Wilson, Julian Schneider).** *Timeline classification: Significant evidentiary anchor.* Record / brief: 22 named defendants: Sweepsteaks + Easygo Group Holdings (PARENT — same entity as Plaintiff's case) + Medium Rare + Kick + Craven + Tehrani + Veriff + 2 Pragmatic + 10

Evolution + 4 Hacksaw. UCL + FAL. Permanent injunction + restitution + civil penalties to $7,500/violation w/ § 3345 trebling.. Connector significance: Sovereign enforcement — structurally immune to T&C arbitration (EEOC v. Waffle House; McGill; Cruz); non-removable (Nevada v. BoA). 22-defendant enterprise scope establishes the corporate architecture. ENABLER-defendant naming (Veriff KYC + Evolution/Pragmatic/Hacksaw game suppliers) = scatter-chain accelerant. Confirms Easygo Group Holdings (Plaintiff's named entity) is correct corporate parent.

**64TTTT.34.      Sep 2, 2025 - Stake spokesperson statement to Gaming Intelligence: "We have not been served at this time. However, we reject allegations... and will vigorously defend.".** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Public defensive posture; Stake's contemporaneous claim re service status. Connector significance: Procedural marker. Relevant to Rule 4(f)(3) record — Stake publicly committed to defending while contesting service.

> **Verbatim record preserved for Paragraph 64TTTT.34:**

> "We have not been served at this time. However, we reject allegations... and will vigorously defend."

**PHASE 8 — Scatter Chain Onset & Arbitration Escalation (September 2025 – January 2026)**

**64TTTT.35.      Sep 3, 2025 - Respondent's counsel "speedy recovery on your back" remark concerning information not shared in the written scheduling chain.** *Timeline classification: Significant evidentiary anchor.* Record / brief: Unequal access between Respondent's counsel and arbitrator about Plaintiff's medical status. Connector significance: Lane 3 § 10(a)(2) EVIDENT-PARTIALITY ANCHOR. Information not shared in written disclosure chain. Schlunk discovery: who communicated what, when, to whom, outside the written record.

> **Verbatim record preserved for Paragraph 64TTTT.35:**

> "speedy recovery on your back"

**64TTTT.36.      Sep – Dec 2025 - Evolution Defendants + Pragmatic Play withdraw content from Stake.us following LA filing.** *Timeline classification: Significant evidentiary anchor.* Record / brief: Enabler defendants protecting individual interests over enterprise cohesion. Connector significance: SCATTER CHAIN ALREADY IN MOTION. Each withdrawal generates discoverable comms about prior coordination. Confirms enterprise theory — once one actor defects under pressure, the rest follow. Hacksaw notably did NOT withdraw — different sub-cohort dynamics.

**64TTTT.37.      Nov 13, 2025 - Sweepsteaks supervised arbitral Discovery Response signed by Calhoun + Hess. Response 3 admits Jan 18, 2024 suspension was "to ensure his health and safety" + Sweepsteaks "also provided Claimant with counseling resources." Response 6 contains position later contradicted by Feb 4, 2026 IGB-1 letter. (Ex. N).** *Timeline classification: Significant evidentiary anchor.* Record / brief: Sworn institutional admissions on responsible-gaming undertaking; selective-quotation of Plaintiff's Jan 10, 2024 M-2152 disclosure. Connector significance: Count V negligence FOUNDATION (undertaken responsible-gaming duty). Response 6 becomes basis for Lane 1 § 10(a)(3) refusal-to-hear after Sweepsteaks fails to supplement post-IGB-1 within 83 days. Selective quotation = Count VI fraud on tribunal by material omission.

> **Verbatim record preserved for Paragraph 64TTTT.37:**

> "to ensure his health and safety"
>
> "also provided Claimant with counseling resources."

**64TTTT.38.      Nov 14, 2025 - Source N — Interrog Response 6.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Lane 1 architecture trigger. Connector significance: Lane 1 § 10(a)(3) IGB-suppression anchor. Once IGB-1 lands Feb 4, 2026, failure to supplement = refusal to hear.

**64TTTT.39.      Nov 20, 2025 - @dunjaVIP reload outreach to Plaintiff within 12 hours of Nov 19, 2025 settlement call.** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: Direct platform-side reactivation campaign immediately after settlement event. Connector significance: Count VII civil conspiracy continuing-course; Count V negligence; Lane 5 public-policy. Documentary evidence of post-settlement inducement-targeting of documented addict.

**64TTTT.40.      Dec 18, 2025 - Plaintiff Emergency Motion filed.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Later "orally denied" after Plaintiff's April 22, 2026 non-appearance — never substantively decided. Connector significance: Lane 4 § 10(a)(4) deferral defect.

> **Verbatim record preserved for Paragraph 64TTTT.40:**

> "orally denied"

**PHASE 9 — Documentary Contradictions Chain (February – March 2026)**

**64TTTT.41.      Feb 1, 2026 - Plaintiff disclosure to Stake VIP host Andy: "last year from December to January I couldn't access my account because my 2FA was compromised".** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: 43 days before Mar 16, 2026 "no explanation for delay" representation. Connector significance: Documentary refutation LAYER (a) of Mar 16 Calhoun-supervised Recusal Motion Response.

> **Verbatim record preserved for Paragraph 64TTTT.41:**

> "last year from December to January I couldn't access my account because my 2FA was compromised"
>
> "no explanation for delay"

**64TTTT.42.      Feb 4, 2026 - IGB-1 — Illinois Gaming Board cease-and-desist letter to Sweepsteaks at Larnaka Cyprus address (7 Patrikiou Loumoumba, Block A, Office A13, 7560 Perivolia). Multi-agency cc: IGB Legal, IGB Field Ops, IL State Police Statewide Gaming Cmd, IL AG. FRE 902(5) / 803(8) self-authenticating..** *Timeline classification: Dispositive keystone.* Record / brief: Verified current Sweepsteaks registered address (replaces stale Limassol). Establishes Stake.us was operating illegal online casino in Illinois during arbitration period.. Connector significance: DISPOSITIVE for Lane 1 § 10(a)(3) IGB SUPPRESSION. Sweepsteaks fails to supplement Nov 13, 2025 Discovery Response 6 within 83 days = refusal to hear material evidence by withholding from arbitrator. Count III (Loss Recovery Act); Count IV (ICFA). Provides verified service address for Rule 4(f)(3) Hague Article 10(a).

**64TTTT.43.      Feb 15, 17, 2026 - PayPal unauthorized-use notices.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Third-party authenticated breach data. Connector significance: Cyber-environmental record predicate. Documentary refutation layer (d) of Mar 16 Recusal Response.

**64TTTT.44.      Feb 26, 2026 - BingX "account features restricted" security event.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Third-party authenticated security event. Connector significance: Cyber-environmental record predicate. Refutation layer (d) continued.

> **Verbatim record preserved for Paragraph 64TTTT.44:**

> "account features restricted"

**64TTTT.45.      Mar 5, 2026 - Plaintiff serves Formal Notice on AAA + Ifrah counsel + AAA supervisory personnel (sarafaulkingham@adr.org) (T-1, WF 40034040).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Documents access-barrier explanation contemporaneously to all parties. Connector significance: Lane 1 + Lane 4 anchor — administrative-misconduct record preservation.

**64TTTT.46.      Mar 5, 2026 - SAME DATE — Ifrah PLLC billing chart records Calhoun 0.8 hrs ($876) "Review and analyze claimant's motion for sanctions and other relief" + Hess 0.2 hrs ($119) "Review**

**Claimant's renewed sanctions motion".** *Timeline classification: Significant evidentiary anchor.* Record / brief: Both timekeepers personally reviewed Plaintiff's Formal Notice on Mar 5. Connector significance: CIVIL-CONSPIRACY REFUTATION: same supervising counsel personally reviewed access-barrier explanation 11 days before representing in Mar 16 filing that Plaintiff "offered no explanation for his delay." Self-impeaching on the face of same supervised filing's own billing record. Lane 2 § 10(a)(3) keystone.

> **Verbatim record preserved for Paragraph 64TTTT.46:**

> "Review and analyze claimant's motion for sanctions and other relief"
>
> "Review Claimant's renewed sanctions motion"
>
> "offered no explanation for his delay."

**64TTTT.47.       Mar 9, 2026 - AAA March 9, 2026 Order limits response to "only arbitrator objection" (Ex. T). 18 specific Plaintiff requests ignored; arbitrator not copied on disclosure correspondence..** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Procedural restriction on Plaintiff's filings. Connector significance: Lane 4 § 10(a)(4) procedural defect.

> **Verbatim record preserved for Paragraph 64TTTT.47:**

> "only arbitrator objection"

**64TTTT.48.       Mar 9, 2026 - Plaintiff Final Supervisory Demand and Notice of Nonresponse (T-1, WF 40034040).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Formal supervisory escalation to AAA. Connector significance: Preserves administrative-misconduct record. Lane 1 + Lane 4 architecture.

**64TTTT.49.       Mar 16, 2026 - Respondent Recusal Motion Response — Calhoun-supervised (Ex. U, WF 40114281). p.3 VERBATIM: "Despite being made aware of the February 26 deadline, Mr. Zawadzki waited until March 5 to file his rambling motion and offered no explanation for his delay.".** *Timeline classification: Dispositive keystone.* Record / brief: Materially incorrect on face of same filing's own billing record (Mar 5 Calhoun/Hess review entries). Connector significance: REFUTED AT FIVE INDEPENDENT DOCUMENTARY LAYERS plus the same supervised filing's own billing chart: (a) Feb 1, 2026 Andy disclosure; (b) Jan 15, 2025 Jovan screenshot — Stake institutional admission "considering your account was restricted, we don't have any record of you on our Monthly Top Bonus list" (14 months pre-representation); (c) Stake.com Raffles entry-count week-over-week decline ~89% Dec 14–21, 2024 (841 → 91 entries); (d) PayPal/BingX/BoA breach notifications; (e) May 25, 2025 Google Mac OS device incident. Lane 2 § 10(a)(3) ANCHOR + Count VI fraud.

> **Verbatim record preserved for Paragraph 64TTTT.49:**

> "Despite being made aware of the February 26 deadline, Mr. Zawadzki waited until March 5 to file his rambling motion and offered no explanation for his delay."
>
> "considering your account was restricted, we don't have any record of you on our Monthly Top Bonus list"

**64TTTT.50.       Mar 17, 2026 - WITHIN 24 HOURS — Respondent Emergency Motion Response (Calhoun-supervised, Ex. V). MATERIALLY CONTRADICTS Mar 16 on same operative facts: (a) commercial relationship — Mar 16 admitted "continued to receive referral commissions" + "chose to terminate its commercial relationship"; Mar 17 asserted "no affiliate or referral contract with Respondent" and "no legal entitlement to payment." (b) cause of cessation — Mar 16 "entirely predictable consequence of Claimant's own decision to bring this action"; Mar 17 "Respondent ceased making payments to Mr. Zawadzki because Mr. Zawadzki is in the process of suing Respondent. That is a natural, and predictable, response to being sued.".** *Timeline classification: Dispositive keystone.* Record / brief: Direct documentary evidence of retaliatory motive + same-counsel inconsistent positions on operative facts. Connector significance: Lane 5 PUBLIC-POLICY ANCHOR — retaliatory affiliate-funds cutoff

documented in defendants' own verbatim words. R.3 Melbourne witnesses admission = Easygo/Kick jurisdiction predicate. R.9 "no affiliate contract" contradicts R.16 refuted by Sep 10, 2024 Calhoun voicemail. CIVIL CONSPIRACY DIRECT: same supervising counsel advances inconsistent positions to evade liability.

**Verbatim record preserved for Paragraph 64TTTT.50:**

> "continued to receive referral commissions"
>
> "chose to terminate its commercial relationship"
>
> "no affiliate or referral contract with Respondent"
>
> "no legal entitlement to payment."

**64TTTT.51.** **Mar 19, 2026 - Arbitrator Challenge Outcome (Ex. W, WF 40142174).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Procedural disposition of recusal motion. Connector significance: Lane 3 marker.

**64TTTT.52.** **Mar 21, 2026 - DD-1 — Easygo Disclaimer Email #1 — andy@stake.com "Stake VIP Host" sent to Plaintiff.** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: Embedded Easygo-specific corporate disclaimer language in text/plain MIME parts; routed Mimecast Australia AS136792. Connector significance: Direct source-level evidence linking Easygo to Stake.com VIP-host email infrastructure. Schlunk vector for Rule 4(f)(3) Method 4 (Mimecast Australia gateway). Count VII civil conspiracy.

**Verbatim record preserved for Paragraph 64TTTT.52:**

> "Stake VIP Host"

**64TTTT.53.** **Mar 21, 2026 - BoA fraud-claim email re $5,100 transaction.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Third-party financial breach notification. Connector significance: Cyber-environmental record predicate. Layer (d) continued.

**64TTTT.54.** **Mar 27–28, 2026 - BGPD Report BGP26-A00023; FBI IC3 ID fe6154d7906c45baacee75cf0a4e11e5.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Local law enforcement + federal law enforcement preservation predicates. Connector significance: Third-party authenticated records. Count IX preservation; Rule 4(f)(3) belt-and-suspenders justification (environmental obstructions on docket).

**64TTTT.55.** **Mar 28, 2026 - DD-2 — Easygo Disclaimer Email #2 — "Stake benfits".** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: Same MIME-disclaimer architecture as DD-1; continued use of email channel after Plaintiff's documented dispute. Connector significance: Count V negligence — defendants continued inducement outreach after notice. Count VII continuing-course. Rule 4(f)(3) Method 4.

**Verbatim record preserved for Paragraph 64TTTT.55:**

> "Stake benfits"

**PHASE 10 — Trial, Awards, Convergence (April – May 2026)**

**64TTTT.56.** **Apr 22, 2026 9:00 AM CST - AAA final evidentiary hearing via Zoom. Sweepsteaks appears via Calhoun + Hess. Witnesses: Jarrod Febbraio + WASIM KHAN (same Wasim Khan from Plaintiff's preserved Telegram archive). Observers: Stake in-house attorneys Vik Pillay + Aishwarya Balachander. Plaintiff did not appear (access-barrier reasons per Mar 5 Formal Notice)..** *Timeline classification: Dispositive keystone.* Record / brief: Plaintiff's INSIDER WITNESS testifies for RESPONDENT. Connector significance: WITNESS COORDINATION EVIDENCE — same Wasim Khan whose archive establishes Plaintiff's addiction-disclosure record now testifies for Sweepsteaks. Count VII civil conspiracy MAJOR ANCHOR. Lane 2 misbehavior. Vik Pillay + Aishwarya Balachander as Stake in-house

counsel observers = direct corporate involvement in arbitration outcome. Schlunk: forces discovery on internal corporate-counsel comms.

**64TTTT.57.     Apr 22, 2026 - Plaintiff's federal action Zawadzki v. Sweepsteaks Limited, et al. filed (1:26-cv-04478 N.D. Ill.); IFP granted same date (Dkt. 6).** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: Federal action commencement SAME DATE as AAA trial. Connector significance: Parallel-track posture established. Plaintiff commenced federal vehicle on the very date AAA proceeded without him. Procedural defense to any "failure to exhaust" or "awaiting award" theory.

**64TTTT.58.     Apr 23, 2026 - Interim Award and Order of Arbitrator (Ex. X, WF 40564235). Facial contradiction: "having reviewed Respondent's pre-trial brief and witness list; having noted Respondent did not submit a pre-trial brief or witness list...".** *Timeline classification: Relevant to civil-conspiracy / service / vacatur architecture.* Record / brief: Record-integrity error on face of official arbitral award; arbitrator's intended recitation was likely "Claimant did not submit" (access-barrier consequence) but substituted "Respondent". Connector significance: Lane 3 § 10(a)(2) evident-partiality and Lane 4 anchor. Award denies Plaintiff's claims without consideration of: Sep 10 Calhoun voicemail; IGB-1; within-24-hour Calhoun contradictions; Easygo MIME discrepancy; VirusTotal findings; Dec 18 Emergency Motion.

> **Verbatim record preserved for Paragraph 64TTTT.58:**

> "having reviewed Respondent's pre-trial brief and witness list; having noted Respondent did not submit a pre-trial brief or witness list..."
>
> "Claimant did not submit"
>
> "Respondent"

**64TTTT.59.     Apr 29, 2026 - CALHOUN DECLARATION under penalty of perjury submitted to AAA (Ex. Y, WF 40648782). ¶¶ 4-5 verbatim: "I have reviewed Ifrah PLLC's billing records in this matter related to the preparation and filings of Respondent's (1) Recusal Motion Response, submitted on March 16, 2026, and Respondent's (2) Emergency Motion Response, submitted on March 17, 2026... I was principally responsible for supervising the drafting of and revising Respondent's Recusal Motion Response and Emergency Motion Response." EXHIBIT 4 TO THE DECLARATION = PLAINTIFF'S FEDERAL COMPLAINT IN THIS ACTION (No. 1:26-cv-04478)..** *Timeline classification: Dispositive keystone.* Record / brief: Defendants' counsel selected, exhibited, authenticated Plaintiff's federal complaint as part of sworn declaration directed to arbitral forum. Connector significance: SCHLUNK-PARADIGM ANCHOR. Establishes actual documentary engagement (not just notice) by Ifrah PLLC with this federal action 5 weeks before amended pleading due, 3+ months before § 12 deadline, 3+ months before any service. Also: sworn supervision attestation for BOTH Mar 16 + Mar 17 filings means Calhoun OWNS the within-24-hour contradictions for fee-procurement purposes. Lane 2 § 10(a)(3) KEYSTONE.

> **Verbatim record preserved for Paragraph 64TTTT.59:**

> "I have reviewed Ifrah PLLC's billing records in this matter related to the preparation and filings of Respondent's (1) Recusal Motion Response, submitted on March 16, 2026, and Respondent's (2) Emergency Motion Response, submitted on March 17, 2026... I was principally responsible for supervising the drafting of and revising Respondent's Recusal Motion Response and Emergency Motion Response."

**64TTTT.60.     May 6, 2026 - Hearing closed.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: 30-day window for award commences. Connector significance: Procedural marker.

**64TTTT.61.     May 7, 2026 - AAA Close of Hearing Letter (Ex. Z, WF 40733010).** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Procedural marker. Connector significance: Sets up May 8 award date.

**64TTTT.62.      May 8, 2026 - FINAL AWARD — $14,159.50 to Respondent (Ex. AA, WF 40749337). AAA Award Transmittal (Ex. AA-1) includes 18-month electronic-records destruction warning..** *Timeline classification: Dispositive keystone.* Record / brief: Plaintiff ordered to pay $14,159.50 fee assessment. Connector significance: TRIGGERS FAA § 12 90-DAY WINDOW. Operative deadline August 10, 2026 (FRCP 6(a)(1)(C) carry-forward from Saturday August 8). Seventh Circuit strict-construction. 18-month destruction warning = preservation urgency predicate for refiled TRO.

**64TTTT.63.      May 19, 2026 - THE CONVERGENCE: (a) Stake.us announces moving Illinois user accounts to "Redeem Only" mode citing compliance — apparently responsive to IGB-1 (IGB-3); Illinois AG coordinated broader enforcement; multiple gaming-industry publications cover withdrawal (Gaming Intelligence, Gaming America, Pokerfuse, Sportsline, igamingfuture, Yahoo Finance). (b) SAME DATE: Defendants' customer-retention CRM transmits to Plaintiff's preserved dentedone3@gmail.com address "Comeback VIP rewards are waiting!" email addressed "Hi DentedOne" (DD-4). Routed via SendGrid subaccount u19205057 + Optimove CRM segmentation. Body contained tracked redirect URL on stake.ac domain..** *Timeline classification: Dispositive keystone.* Record / brief: Same calendar day Stake.us withdraws from Illinois for compliance, Defendants target documented Illinois resident with "Comeback VIP" reactivation. Connector significance: DIRECT DOCUMENTARY EVIDENCE of intersection between stated compliance posture and continuing inducement course. Count V negligent undertaking; Lane 5 public-policy; Count VII civil conspiracy continuing-course. Independently corroborates materiality and accuracy of IGB-1 (Lane 1 anchor).

> **Verbatim record preserved for Paragraph 64TTTT.63:**

> "Redeem Only"
>
> "Comeback VIP rewards are waiting!"
>
> "Hi DentedOne"
>
> "Comeback VIP"

**PHASE 11 — Federal Action Operational Posture (Late May 2026 – August 2026)**

**64TTTT.64.      May 22, 2026 - Stage 1 working chat: Master Cover Sheet v4 produced; EK-3/4/5/6 extracted from email evidence zip; May 23, 2024 keystone thread verified; Stage 1 Steps 1, 3, 4, 6 closed.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Working evidence integration. Connector significance: Foundation for FAC v3 and Rule 4(f)(3) motion.

**64TTTT.65.      May 23, 2026 - Stage 2 Items 1A (Edit Memo v1) and 1B (FAC v3 evidence-integrated) closed; Stage 2 Item 2 (Rule 4(f)(3) motion v1) drafted with five concurrent methods.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Current posture. Connector significance: Methods: (a) Schlunk on Ifrah PLLC; (b) Schlunk on Susman Godfrey — REVISED post-LA-complaint review (Susman is plaintiff-side in CA action, not defense counsel — Method 2 needs replacement); (c) email support@stake.us; (d) Mimecast Australia gateway; (e) Hague Article 10(a) postal. Dallas TX office (13101 Preston Road, Suite 110-5027) emerges as new Schlunk vector from CA complaint ¶21.

**64TTTT.66.      Jun 3, 2026 - DEADLINE — Amended Complaint filing as separate docket entry per Dkt. 18.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Hard deadline. Connector significance: Court-ordered.

**64TTTT.67.      ~Jun 3–10, 2026 - Concurrent: Rule 4(f)(3) alternative-service motion; refiled preservation TRO with recalibrated predicate.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Stage 2 Items 2 and 3. Connector significance: Schlunk + preservation track.

**64TTTT.68.      Jul 27, 2026 - Internal benchmark: confirm AAA certified service-of-award date before relying on Aug 10.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Operational check. Connector significance: Confirms § 12 clock anchor.

**64TTTT.69.** **Aug 8, 2026 (Sat) - Statutory 90-day FAA § 12 deadline from May 8, 2026 Final Award.** *Timeline classification: Chronology / comparator / procedural marker.* Record / brief: Saturday — carries forward. Connector significance: FRCP 6(a)(1)(C) carry-forward.

**64TTTT.70.** **Aug 10, 2026 (Mon) - OPERATIVE FAA § 12 DEADLINE.** *Timeline classification: Dispositive keystone.* Record / brief: Treat as jurisdictional — Seventh Circuit strict-construction line. Connector significance: HARD JURISDICTIONAL DEADLINE.

## 64UUUU. Count VII Civil-Conspiracy Element Map From the Timeline Tree.

64UUUU.1.    Knowledge. The knowledge element is anchored by the August 16, 2022 Stake compliance-team KYC-circumvention message, the December 23, 2023 and January 10, 2024 addiction and financial-collapse disclosures to Wasim Khan, the January 18, 2024 Stake.us welfare-and-best-interests suspension, and the May 23, 2024 WKS receipt of the native Wasim archive.

64UUUU.2.    Agreement / substantial assistance. The agreement and substantial-assistance element is anchored by the May 14, 2024 Edelson-to-WKS referral chain, the February 5, 2025 phone-only settlement infrastructure, the March 21 and March 28, 2026 Easygo-disclaimer / Mimecast Australia routing records, the April 22, 2026 Respondent-side use of Wasim Khan as a witness, and the April 29, 2026 Calhoun supervision attestation for the March 16 and March 17 filings.

64UUUU.3.    Corporate infrastructure. The corporate-infrastructure element is anchored by the September 10, 2024 Calhoun voicemail admitting Cyprus-to-Australia routing, the Easygo Google Workspace / Trevor.io dashboard, the Intercom 86106 DKIM-authenticated recovery chain, the SendGrid / Optimove Comeback VIP CRM message, and the August 28, 2025 California 22-defendant sovereign-enforcement complaint.

64UUUU.4.    Retaliation / public-policy non-enforcement. The continuing-conduct element is anchored by the March 17, 2026 statement that payments stopped because Plaintiff was suing, the May 16, 2025 Birches Health settlement-conditioning communication, the May 20, 2025 suicidality disclosure and non-pause response, the November 20, 2025 @dunjaVIP reload outreach, and the May 19, 2026 Illinois Redeem-Only / Comeback VIP convergence.

64UUUU.5.    Procedural-fraud / award procurement. The procedural-fraud element is anchored by the March 5, 2026 Formal Notice and same-date Calhoun/Hess billing entries, the March 16, 2026 'no explanation for delay' statement, the March 17, 2026 contradictory response, the April 29, 2026 Calhoun Declaration, the April 22, 2026 ex parte hearing, and the May 8, 2026 $14,159.50 Final Award.

## 64VVVV. FAA Lane Cross-Reference Preserved From the Timeline Tree.

64VVVV.1.    Lane 1 - FAA § 10(a)(3) refusal to hear / IGB suppression: November 13, 2025 Discovery Response 6, February 4, 2026 IGB-1, Sweepsteaks's 83-day non-supplementation, and the May 19, 2026 convergence independently corroborating IGB-1 materiality.

64VVVV.2.    Lane 2 - FAA § 10(a)(3) misbehavior / Calhoun fee procurement: March 5, 2026 Formal Notice and billing entries, March 16, 2026 'no explanation' statement, March 17, 2026 contradictory response, and April 29, 2026 Calhoun sworn-supervision attestation.

64VVVV.3.    Lane 3 - FAA § 10(a)(2) evident partiality: September 3, 2025 'speedy recovery on your back' information asymmetry and the April 23, 2026 Interim Award internal contradiction regarding Respondent's pre-trial brief and witness list.

64VVVV.4.    Lane 4 - FAA § 10(a)(4) defective due-process / consent predicate: May 14, 2024 Edelson-to-WKS referral, June 24, 2024 AAA Demand without a formal retainer, September 13 and September 20, 2024 reopening deviations, February 4-6, 2025 EK-3 / EK-4 / EK-5 admissions, May 8, 2025 EK-6 reassertion, and April 7, 2025 Edelson Urdan filing.

64VVVV.5.    Lane 5 - public-policy non-enforcement: March 17, 2026 retaliation admission, May 16, 2025 Birches Health settlement-conditioning, May 20, 2025 suicidality disclosure and non-response, November 20, 2025 @dunjaVIP reload outreach, and the May 19, 2026 Comeback VIP message sent the same day Stake.us moved Illinois accounts to Redeem Only mode.

**64WWWW. Schlunk / Rule 4(f)(3), Scatter-Chain, and Preservation Connectors.**

64WWWW.1. Primary service vector. The Timeline Tree identifies Ifrah PLLC, 1717 Pennsylvania Avenue N.W., Suite 650, Washington, D.C. 20006, as the strongest Schlunk vector because Ifrah was counsel of record in AAA Case No. 01-24-0006-1550 and Calhoun's April 29, 2026 Declaration annexed Plaintiff's federal complaint as Exhibit 4.

64WWWW.2. Secondary domestic vector. The Timeline Tree identifies a Sweepsteaks Dallas, Texas office at 13101 Preston Road, Suite 110-5027, Dallas, Texas 75240, as a domestic office vector derived from People v. Sweepstakes Ltd. paragraph 21, subject to verification and service-motion presentation.

64WWWW.3. Electronic and Hague vectors. The Timeline Tree preserves support@stake.us, Mimecast Australia AS136792, the Larnaka Cyprus address supplied by IGB-1, Curaçao for Medium Rare, and Melbourne, Australia for Easygo and Kick as service / preservation vectors.

64WWWW.4. Scatter chain. The Timeline Tree identifies the August 28, 2025 California sovereign-enforcement action as the pressure event; Evolution and Pragmatic Play as reported withdrawal/defection indicators from September through December 2025; Stake.us's May 19, 2026 Illinois Redeem-Only withdrawal as a corporate posture shift; and the same-day Comeback VIP message to Plaintiff as the retained civil-conspiracy contradiction.

64WWWW.5. Discovery targets. The Timeline Tree identifies WKS firm members, AAA administrative staff, Arbitrator Miller, Stake in-house observers Vik Pillay and Aishwarya Balachander, and Wasim Khan as preservation and discovery targets. These are pleaded as discovery targets and evidence-preservation connectors, not as adjudicated findings of liability against non-parties.

64WWWW.6. Deadline preservation. The Timeline Tree preserves August 8, 2026 as the Saturday 90th day from the May 8, 2026 Final Award and August 10, 2026 as the operative FAA § 12 deadline under the calendar-carry-forward rule. Plaintiff pleads these dates to preserve the vacatur posture and prevent any argument that the arbitral record destruction window should lapse without preservation relief.

## V. CLAIMS FOR RELIEF

### COUNT I — Illinois Loss Recovery Act, 720 ILCS 5/28-8

65. Plaintiff incorporates Paragraphs 1 through 64WWWW, including all subparagraphs and the Timeline Tree audit at Paragraph 64TTTT, by reference.

66. Defendants Sweepsteaks Limited and Medium Rare N.V. operated and operate online gambling platforms in Illinois without licensure. Plaintiff lost in excess of $500,000 on those platforms during the operative period. The Illinois Loss Recovery Act permits recovery of three times the amount lost where the loss exceeds $50.

### COUNT II — Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

67. Plaintiff incorporates Paragraphs 1 through 64WWWW, including all subparagraphs and the Timeline Tree audit at Paragraph 64TTTT, by reference.

68. Each Defendant engaged in unfair and deceptive practices in the conduct of trade in Illinois.

### COUNT III — Negligent Undertaking (Voluntary Assumption of Duty)

69. Plaintiff incorporates Paragraphs 1 through 64WWWW, including all subparagraphs and the Timeline Tree audit at Paragraph 64TTTT, by reference.

70. Defendants voluntarily undertook a duty to protect Plaintiff's health and safety when Sweepsteaks suspended Plaintiff's Stake.us account on January 18, 2024 'to ensure his health and safety.' Defendants thereafter breached that duty.

### COUNT IV — Intentional Infliction of Emotional Distress

71. Plaintiff incorporates Paragraphs 1 through 64WWWW, including all subparagraphs and the Timeline Tree audit at Paragraph 64TTTT, by reference.

72. Defendants engaged in extreme and outrageous conduct including: (a) twenty-six-day abandonment of an addict-disclosed self-exclusion request; (b) operational facilitation of the makeshift KYC-bypass DentedOne account-creation pipeline; (c) knowing acceptance of identity-laundered KYC documents; (d) targeted inducement communications to the DentedOne Account during the AAA arbitration including the Jovan VIP cashback-on-loss 'all-time-low' gating mechanism; (e) Tip-feature value distribution targeted at the DentedOne Account paralleling Ridley v. Sweepsteaks Limited; (f) March 21, 2026 retaliatory characterization of Plaintiff's federal filing; (g) May 14, 2025 through July 25, 2025 weaponization of AAA-payment-deadline mechanics in the declining-offer sequence; and (h) deferral of substantive settlement engagement until after Plaintiff's former counsel withdrew and after Plaintiff disclosed two suicide attempts directly to Defendants' counsel on May 20, 2025.

### COUNT V — Computer Fraud and Abuse Act, 18 U.S.C. § 1030 / Illinois Computer Tampering, 720 ILCS 5/17-51

73. Plaintiff incorporates Paragraphs 1 through 64WWWW, including all subparagraphs, the Timeline Tree audit at Paragraph 64TTTT, and the synchronized-event-connector framework at Section I.1, by reference.

74. Defendants and their agents transmitted to Plaintiff and to Plaintiff-linked accounts the 12.21 KB HTML payload at SHA-256 a15b6042f82313b2cbbcfd4e64dfb09ef777ab9e31948bb993b75eb3ccd50584 between January 16, 2026 and March 25, 2026 through SendGrid subaccount u19205057, Optimove campaign tenant 00777, SparkPost MTA 192.174.84.0/24, and Mimecast Australia AS136792 infrastructure. The payload's behavior maps to MITRE ATT&CK techniques T1055 (Process Injection), T1071 (Application Layer Protocol), and T1573 (Encrypted Channel) with AutoIt3 directory access, thirteen distinct TLS JA3 digests, and an obfuscation-by-overlap contacted-IP architecture, causing damage exceeding the $5,000 jurisdictional threshold of 18 U.S.C. § 1030(c)(4)(A)(i)(I).

### COUNT VI — Breach of Fiduciary Duty

75. Plaintiff incorporates Paragraphs 1 through 64WWWW, including all subparagraphs and the Timeline Tree audit at Paragraph 64TTTT, by reference.

76. Each Defendant owed Plaintiff duties of loyalty, care, and good-faith disclosure. Each breached those duties.

### COUNT VII — Civil Conspiracy / Coordinated Misconduct (Against All Defendants)

77. Plaintiff incorporates Paragraphs 1 through 64WWWW, including all subparagraphs and the Timeline Tree audit at Paragraph 64TTTT, by reference.

78. Defendants Sweepsteaks Limited, Medium Rare N.V., Kick Streaming Pty Ltd, and Easygo Group Holdings Pty Ltd, together with affiliated personnel, agents, counsel-channel actors, platform managers, VIP hosts, and corporate-infrastructure operators, joined a common course of conduct whose object and effect was to recruit Plaintiff into restricted-jurisdiction gambling channels, continue inducing Plaintiff after Defendants had actual notice of addiction and suicidality, preserve Defendants' control over source ledgers and account-linkage records, isolate Plaintiff procedurally in AAA Case No. 01-24-0006-1550, and use inconsistent counsel-supervised positions and record-management asymmetries to procure litigation leverage and a fee award.

79. The Timeline Tree audit pleaded at Paragraphs 64QQQQ through 64WWWW identifies the civil-conspiracy overt acts by date, exhibit code, actor, and lane. For pleading clarity, Plaintiff attributes those acts to five element groups: knowledge, agreement/substantial assistance, corporate infrastructure, retaliation/continuing course, and procedural-fraud/award procurement.

79A.    Knowledge element. The knowledge record includes, without limitation: the July 13, 2022 beginning of the Wasim Khan Telegram relationship; the August 16, 2022 Stake.com compliance-team KYC-circumvention sequence; the December 23, 2023 'hit rock bottom' and

'over 200k' addiction-disclosure message; the January 10, 2024 '$900 left' / '$260k' financial-collapse disclosure; the January 18, 2024 Stake.us welfare-and-best-interests suspension; and the May 23, 2024 transmission of the full Wasim Telegram archive to WKS. These events establish actual notice at both platform and counsel-channel levels.

79B.     Agreement and substantial-assistance element. The agreement/substantial-assistance record includes the May 14, 2024 Edelson-Mindell-Slade-WKS referral chain, the June 24, 2024 AAA Demand filed without a formal retainer, the September 10, 2024 Calhoun voicemail admitting Cyprus-to-Australia routing, the February 5, 2025 phone-only settlement infrastructure, the March 21 and March 28, 2026 Easygo-disclaimer / Mimecast Australia email records, the April 22, 2026 use of Wasim Khan as Respondent's witness, and the April 29, 2026 Calhoun Declaration sworn-supervision attestation for the March 16 and March 17 contradiction filings.

79C.     Corporate-infrastructure element. The corporate-infrastructure record includes the Easygo Google Workspace and Trevor.io BI dashboard, Stake.com Intercom 86106 DKIM-authenticated account-recovery messages, SendGrid / Optimove CRM segmentation for the May 19, 2026 Comeback VIP email, Mimecast Australia routing for Easygo-disclaimer emails, and the California sovereign-enforcement complaint identifying a 22-defendant enterprise architecture involving Sweepsteaks, Easygo, Medium Rare, Kick, Veriff, Evolution, Pragmatic, Hacksaw, and individual enterprise principals.

79D.     Retaliation and continuing-course element. The continuing-course record includes the May 16, 2025 Birches Health settlement-conditioning communication, the May 20, 2025 suicidality disclosure to Defendants' counsel followed by no operational pause, the November 20, 2025 @dunjaVIP reload outreach within 12 hours of the November 19 settlement call, the March 17, 2026 statement that Respondent ceased payments because Plaintiff was suing Respondent, and the May 19, 2026 Illinois Redeem-Only / Comeback VIP convergence.

79E.     Procedural-fraud and award-procurement element. The procedural-fraud record includes the August 27, 2024 AAA closure and 18-month electronic-record destruction warning, the September 13 and September 20, 2024 reopening-defect chain, the January 15, 2025 concealed abeyance, the March 25 and April 21, 2025 AAA abeyance-disclosure failures and asymmetric cc-protocol, the November 14-17, 2025 WebFile evidence-integrity blocking of native Wasim Telegram files, the March 5-17, 2026 Calhoun/Hess billing and contradiction sequence, the March 27, 2026 forced record-scrubbing demand, the April 22, 2026 ex parte final hearing, the April 29, 2026 Calhoun Declaration, and the May 8, 2026 Final Award imposing $14,159.50.

80. Plaintiff was injured through (a) induced gambling losses exceeding $500,000; (b) two documented suicide attempts; (c) mental-health, emotional, and physical-safety harms; (d) loss of court-forum rights to develop evidence; (e) arbitration-suppression of the documentary convergence now pleaded; (f) source-record asymmetry; (g) a $14,159.50 fee/cost award entered after the disputed arbitration; (h) cessation of Plaintiff's residual affiliate-commission income stream in retaliation for protected litigation; and (i) deprivation of fair procedural rights through AAA's documented procedural-fraud pattern.

## COUNT VIII — Accounting

81. Plaintiff incorporates Paragraphs 1 through 64WWWW, including all subparagraphs and the Timeline Tree audit at Paragraph 64TTTT, by reference.

82. Plaintiff seeks an accounting from each Defendant of all wager-level, deposit-level, withdrawal-level, reload-level, VIP-host-grant-level, affiliate-payment-level, and internal-Tip-feature-transaction-level records associated with Plaintiff and with the DentedOne Account during the operative period.

## VI. EXPEDITED DISCOVERY AND IRREPARABLE-HARM SHOWING

### O. Need for Expedited Discovery Under Rule 26(d)(1) and Showing of Irreparable Harm.

83A.    The documentary convergence pleaded at Sections E through N.3.19 above, taken together with the synchronized-event-connector framework at Section I.1, satisfies the Seventh Circuit standard for expedited discovery. Under Vendetti v. Compass Environmental, Inc., No. 06 C 3401, 2006 WL 3694852, at 2 (N.D. Ill. Dec. 14, 2006), and Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor, 194 F.R.D. 618, 624 (N.D. Ill. 2000), this Court applies a 'good cause' standard considering specificity, need, breadth, and burden. Under Lukis v. Whitepages, Inc., 535 F. Supp. 3d 775, 779 (N.D. Ill. 2021), expedited discovery is appropriate where a substantial risk of evidence loss exists and where the discovery is narrowly tailored. The Stake-side and AAA-side records pleaded throughout are uniquely and exclusively within Defendants', AAA's, and third-party institutional custodians' control and subject to ordinary-course deletion.

83B.    Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 386 (7th Cir. 1984), establishes the foundational irreparable-harm framework: irreparable harm need not be 'ineradicable' but must be such that no later award of damages could fully compensate. Ferrell v. United States Department of Housing & Urban Development, 186 F.3d 805, 811 (7th Cir. 1999), confirms that harms to mental health and personal safety satisfy the irreparable-harm requirement. Plaintiff has documented in his own pen, in contemporaneous emails preserved at Paragraphs 63D and 63J above, two suicide attempts and continuing crisis-level harm.

83C.    Defendants' own supervised arbitral admission pleaded at Paragraph 64C — 'Respondent ceased making payments to Mr. Zawadzki because Mr. Zawadzki is in the process of suing Respondent. That is a natural, and predictable, response to being sued' — establishes, in writing, that protected litigation activity triggered retaliatory conduct directed at Plaintiff's income stream. The irreparable-harm element under Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008), is established at the threshold.

83D.    Goldhamer v. Nagode, 621 F.3d 581, 584 (7th Cir. 2010), reaffirms the Seventh Circuit four-factor framework for preliminary injunctive relief. The documentary record — DKIM-signed Intercom 86106 messages, Easygo Trevor.io BI dashboard, $3.18M DentedOne wager-volume, preserved Discord with Jay's $320k acknowledgment, ten-layer cyber-tampering corroboration, preserved Gmail message identifiers for every operational event — establishes substantial likelihood of success.

83E.  Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 439 (1974), permits a TRO without notice where immediate irreparable injury would result. The TRO sought is narrowly tailored to preservation — not merits relief — and meets the Granny Goose temporal-tailoring requirement.

83F.  Federal Rule of Civil Procedure 4(f)(3) authorizes alternative service on foreign defendants through any means not prohibited by international agreement and consistent with constitutional notice. Volkswagenwerk AG v. Schlunk, 486 U.S. 694, 705 (1988), and Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006), authorize email service on foreign defendants through their known U.S. counsel of record. The four named foreign Defendants maintain known U.S. counsel of record at Ifrah PLLC.

83G.  On the FAA § 12 motion to vacate reserved for August 10, 2026, Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008), confirms FAA § 10 grounds remain the exclusive statutory bases. The procedural-fraud record at Sections N.2 through N.3.18 maps to: (a) FAA § 10(a)(1) (silent abeyance, asymmetric cc-protocol, settlement-coercion letter, ex parte transmittal); (b) FAA § 10(a)(2) (forced record-scrubbing, personal-Hotmail arbitrator); (c) FAA § 10(a)(3) (evidence-segregation admission, internally contradictory admissions); (d) FAA § 10(a)(4) (administrative-role dodge, $0.00 placeholder). Smith v. Spizzirri, 144 S. Ct. 1173, 1178 (2024), confirms a district court must stay rather than dismiss an action subject to a valid arbitration agreement.

83H.  The relief sought through expedited discovery, the TRO and preliminary injunctive relief sought through the contemporaneously filed Rule 65 motion, and the alternative service authorized through the contemporaneously filed Rule 4(f)(3) motion are necessary in combination to preserve the documentary basis for the FAA § 12 motion to vacate.

83I.  The AAA procedural-fraud pattern independently satisfies the life-and-health prong of irreparable harm. The arbitration that proceeded to the ex parte Final Hearing was a proceeding in which Plaintiff had documented two suicide attempts to his then-counsel on February 6, 2025; AAA was on contemporaneous notice through Plaintiff's May 8-9, 2025 communications of the procedural-fraud circumstances; AAA refused to investigate; and AAA proceeded to a $14,159.50 Final Award against Plaintiff on a record from which Plaintiff's substantive native-format evidence had been administratively excluded. Each continuing enforcement action, collection notice, or credit-reporting event arising from the Final Award compounds the documented life-and-health risks.

83J.  The AAA procedural-fraud pattern independently satisfies the evidentiary-loss prong of irreparable harm. The November 14-17, 2025 evidence-integrity blocking and the March 27, 2026 forced record-scrubbing eliminated Plaintiff's Day-One Wasim Telegram metadata evidence and procedural-fraud challenge materials from the AAA case file considered at the April 22, 2026 Final Hearing. Third-party preservation subpoenas to AAA, U.S. Legal Support, Ifrah PLLC, WKS, Google, Telegram, Discord, Kraken/Payward, and other institutional custodians are necessary to reconstruct the suppressed record.

83K.  The AAA procedural-fraud pattern independently satisfies the continuing-conduct prong of irreparable harm. Defendants' inducement-communication infrastructure, affiliate-payment controls, account-recovery controls, and Tip-feature value-distribution mechanics operated contemporaneously with the AAA enforcement infrastructure. Without preservation and

injunctive relief, the inducement infrastructure and enforcement infrastructure compound each other in parallel and impair Plaintiff's ability to preserve the record for the FAA § 12 motion to vacate.

## VII. PRAYER FOR RELIEF

84. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants on each Count above, and grant the following relief: (A) compensatory damages; (B) exemplary and punitive damages; (C) treble damages under the Illinois Loss Recovery Act; (D) statutory damages and reasonable attorney's fees where authorized; (E) entry of the temporary restraining order and preliminary injunctive relief sought in the contemporaneously filed Rule 65 motion; (F) an order granting expedited discovery under Rule 26(d)(1) and authorizing Rule 45 third-party subpoenas, including subpoenas to the American Arbitration Association for (i) the complete administrative file in AAA Case No. 01-24-0006-1550, (ii) WebFile-system audit logs, upload-attempt logs, rejection logs, access logs, and file-type limitation records for the November 14-17, 2025 .html and .json upload-attempt period, (iii) internal AAA communications regarding the disputed January 15, 2025 abeyance, the September 2024 disputed reopening, the March 5-10, 2026 supervisory-demand response, the March 27, 2026 record-scrubbing directive, and the April 22, 2026 Final Hearing link transmission, (iv) U.S. Legal Support communications, logs, and transmission records regarding the April 22, 2026 Final Hearing meeting-access link, and (v) all internal AAA communications regarding Plaintiff's case among Shannon Hurley, Shannon Ruble, Laura Giammarino, Barbara Phariss, Sara Faulkingham, Sophia Parra, and any supervisory personnel; (G) Rule 45 third-party subpoenas to Ifrah PLLC, Wade Kilpela Slade LLP, U.S. Legal Support, Kraken / Payward Inc., regulated cryptocurrency-exchange custodians identified in the DentedOne ledgers, Telegram Messenger Inc., Discord, Google, Intercom, SparkPost, SendGrid, Optimove, Cloudflare, Microsoft/Azure, AT&T Mobility, PayPal, BingX, Bank of America, Proton Mail, and the additional institutional custodians identified herein; (H) a preservation order directed to all Defendants, AAA, counsel-of-record custodians, and third-party institutional custodians preserving native-format files, metadata, audit logs, WebFile records, email headers, DKIM/SPF/DMARC authentication fields, account-recovery logs, KYC records, affiliate-tracking records, VIP-host communications, Tip-feature records, device/security logs, and all communications concerning Plaintiff or the DentedOne account; (I) an order declaring the AAA Final Award void or unenforceable as procured through the misconduct pleaded herein, or alternatively reserving disposition of enforceability until the August 10, 2026 FAA § 12 motion to vacate; (J) an accounting from each Defendant of all wager-level, deposit-level, withdrawal-level, reload-level, VIP-host-grant-level, affiliate-payment-level, internal-Tip-feature-transaction-level, account-recovery, KYC, and responsible-gaming records associated with Plaintiff and the DentedOne account; (K) authorization of alternative service on the four foreign Defendants through their known U.S. counsel of record at Ifrah PLLC pursuant to Rule 4(f)(3); and (L) such further relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

85. Plaintiff demands trial by jury on all issues so triable.

### IX. VERIFICATION UNDER 28 U.S.C. § 1746

I, Szymon Zawadzki, declare under penalty of perjury under the laws of the United States of America that the foregoing Verified First Amended Complaint is true and correct to the best of my personal knowledge, information, and belief, except as to those matters alleged on information and belief, which I believe to be true; that the verbatim email quotations identified herein by Gmail message identifier are extracted from preserved Gmail records; that the verbatim Telegram, Discord, Intercom, and contact-list quotations identified herein by Google Drive file identifier are extracted from preserved native-format Drive records; that the Wasim Khan Telegram archive identified at Sections A through B.1 above is preserved in native JSON and HTML exports (Drive files 1LjHuxxwW9A8K_GbOvdOy8N7HinmeT2fg and 1COtDCbTOUjxDzqvJ4l6vOJTZZD3xcCP8) consisting of 970 messages with sequential per-chat message IDs 316 through 2537; that the same native JSON and HTML files were transmitted to Wade Kilpela Slade LLP on May 23, 2024 at 14:17 UTC as documented at Gmail message identifier 18fa5d05a3cfe3fe; that the cryptographic signature, SparkPost MTA, SPF, DKIM, and DMARC fields identified at Section F.1 are accurately transcribed from the headers of the preserved native PDF and .eml exports; that the MITRE ATT&CK technique identifiers, JA3 digests, contacted-IP addresses, AutoIt3 directory access, and SHA-256 hash identified at Sections I and I.1 are accurately transcribed from the preserved VirusTotal sandbox-behavior export; and that all third-party-held records identified herein are within the custody and control of the third-party institutional custodians identified.

Executed on this __3rd__ day of June, 2026, in Buffalo Grove, Illinois.

_____

Szymon Zawadzki, Plaintiff Pro Se

Respectfully submitted,

_____

Szymon Zawadzki
Plaintiff Pro Se
301 Lincoln Terrace
Buffalo Grove, Illinois 60089
(773) 680-1177
szymonfitness@gmail.com
Dated: June _03_, 2026

Signed - 06/03/2026
Szymon Zawadzki, Plaintiff Pro Se
Case No. 1:26-cv-04478

### CERTIFICATE OF SERVICE

I, Szymon Zawadzki, certify that on the date below I caused the foregoing PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT to be filed with the Clerk of Court using the Court's CM/ECF system, and served concurrently on Defendants' United States counsel of record Ifrah PLLC (george@ifrahlaw.com, michelle@ifrahlaw.com, jbriggs@ifrahlaw.com, shess@ifrahlaw.com) by electronic mail.

Dated: June _03_, 2026

_____

Szymon Zawadzki, Plaintiff Pro Se